**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DONNA L. WHITAKER, *individually and on behalf* )
*of all others similarly situated*, )
                                       )
             Plaintiff, )
v. )**Civil Action No.: 1:09-cv -02288-RDB**
                                         )
NAVY FEDERAL CREDIT UNION, )
*a federal credit union,* )
                                         )
             Defendant. )
_____ )

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL**

       Plaintiff, Donna L. Whitaker, an individual ("Ms. Whitaker"), on behalf of herself and all

others similarly situated, pursuant to Rule 105, Local Rules of the United States District Court

for the District of Maryland, and Rule 23, Fed.R.Civ.P., files this her Memorandum of Law in

Support of Joint Motion for Preliminary Approval of Class Settlement:

## I.  INTRODUCTION

### *A.  SYNOPSIS OF COMPLAINT ALLEGATIONS*

       The instant action was brought by Ms. Whitaker against Navy Federal for violation of

Article IX, Part VI of the Uniform Commercial Code ("UCC"), with respect to the repossession

sale of automobiles. According to the allegations of the Amended Complaint, on or about

October 24, 2007, Ms. Whitaker entered into a finance agreement to finance the purchase of a

used 2006 Acura automobile ("Vehicle") for her personal and household use (Amended

Complaint - ¶¶7-9). On or about March 18, 2008, Navy Federal repossessed the Vehicle

(Amended Complaint - ¶10). On the same day as the repossession, Navy Federal sent to Ms.

Whitaker a notice advising her of its intent to dispose of the Vehicle in purported compliance with Article IX of the UCC ("Notice of Sale") (Amended Complaint - ¶11). A copy of the Notice of Sale is attached to the Amended Complaint as Exhibit "B" (Amended Complaint - ¶12).

It is the position of Ms. Whitaker that the Notice of Sale failed to comply with the UCC in the following respects:

A.    <u>Statement Concerning Intended Method of Disposition</u> - Navy Federal failed to specify if it intended to dispose of the Vehicle by private or public sale and, if by public sale, the time and place of such sale, as required by §§9-614(1)(A) and 9-613(1)(B) and (E) of the UCC;

B.    <u>Accounting</u> - Navy Federal did not disclose that Ms. Whitaker and the other class members were entitled to an accounting of the unpaid indebtedness and the charge, if any, for an accounting, as required by §§9-614(1)(A) and 9-613(1)(D) of the UCC;

C.    <u>Right to redemption</u> - Navy Federal failed to disclose to Ms. Whitaker and the other members of the class the correct time period for redemption as required by §9-623 of the UCC.

As a result of the business practices of Navy Federal with respect to post-repossession notices of consumers, Ms. Whitaker filed the instant action on behalf of herself and all others similarly situated seeking statutory damages and other relief against Navy Federal under the civil remedies provision of the UCC, §9-625.

Navy Federal has denied liability and has raised defenses, including but not limited to, that the Notice complies with the relevant sections of the U.C.C.  Further, Navy Federal claims that it is entitled to a setoff and in certain instances a judgment against Class Members for deficiencies that remain after the commercially reasonable sale of the encumbered vehicles.  The

Court has not made a decision concerning the merits of these claims.

## B.   OVERVIEW OF SETTLEMENT

### 1.   Description of Negotiation Process

As detailed in the Declaration of Robert W. Murphy filed in support hereof ("Murphy Declaration"), counsel for Ms. Whitaker has conducted a significant and time-consuming investigation of the factual and legal matters in the action (Murphy Declaration - ¶3).  After initial discovery and motion practice, the parties were engaged in settlement negotiations that lasted several months.  In conjunction with these negotiations, the parties exchanged information and documents relevant to the discussions to allow counsel to acquire sufficient knowledge and information to adequately assess the merits of the settlement.  After reaching a settlement in principal, the parties negotiated the detailed final terms of the Settlement Agreement presently before the Court (Murphy Declaration - ¶¶ 4-6).

### 2.   Terms of Settlement

The terms of the Settlement Agreement presented to the Court for preliminary approval are:

Settlement Class:  The parties seek approval of the Settlement Class consisting of all individuals in the United States, including without limitation individuals who serve abroad in the Armed Forces of the United States, who during the four (4) year period preceding the filing of this Action on July 7, 2009: (a) have or had a Finance Agreement held by Navy Federal; (b) had the Motor Vehicle pledged by the Finance Agreement repossessed; (c) were sent a post-repossession notice under UCC Article 9 with respect to a Motor Vehicle pledged by the Finance Agreement; and (d) have not, before Final Approval of the Settlement and with respect to a

Finance Agreement that meets requirements of (a), (b), and (c), (i) obtained a discharge in bankruptcy, (ii) filed a bankruptcy petition, (iii) entered into a post-repossession repayment agreement, (iv) had a final judgment entered in a collection action, or (v) been involved in a dispute in which they are represented by counsel [Settlement Agreement - ¶ 8s].

Waiver of Deficiency: Navy Federal shall waive deficiencies arising from the finance contracts of the respective class members for the financing of motor vehicles.  The aggregate balance of the deficiencies of the Class Members is in excess of Fifty Million ($50,000,000.00) Dollars in principal and interest ("Waived Deficiencies")[Settlement Agreement -  ¶¶ 7; 15a].

Notification to Credit Reporting Agencies: Navy Federal shall request that the credit reporting agencies ("CRAs") delete the tradelines related to the finance agreements at issue in this matter from the credit reports of the Settlement Class Members. [Settlement Agreement - ¶ 15b].

Relief Payment: Navy Federal shall pay the sum of Fifty Thousand ($50,000.00) Dollars to the Army Emergency Relief ("Relief Payment"), an organization that provides financial assistance to members of the armed forces [Settlement Agreement - ¶ 15c].

Attorney's Fees, Costs and Expenses: Class Counsel shall submit a request for reasonable attorney's fees in the amount of Three Hundred Eighty-Five Thousand ($385,000.00) Dollars and for an incentive award to the Class Representative in the amount of Five Thousand ($5,000.00) Dollars.  Navy Federal has agreed not to oppose or object to said application [Settlement Agreement - ¶ 18a].

Cost of Settlement Administration: The cost of settlement administration, including but not limited to the cost of printing and mailing the notices to Class Members shall be paid by

-4-

Navy Federal, subject to approval of the Court [Settlement Agreement - ¶ 11a].

## II.  STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

Courts consistently favor settlement of disputed claims. *See Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976).  Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

*See Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions).

"[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra*, ¶92,414 (quoting *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,994 at 90,676 (S.D.N.Y. 1971)). Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits."  *In re Saxon Securities Litigation, supra*, ¶92,414 at 92,525 (quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982)).

### III.  LEGAL ARGUMENT

#### A.  THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF CERTIFICATION UNDER RULE 23, FEDERAL RULES OF CIVIL PROCEDURE.

#### 1.  Review of Prerequisites for Class Certification

##### a.  The Class Definition is Appropriate

Under Rule 23, Fed.R.Civ.P., a class should be certified when the plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b). Amchem  Products, Inc. v. Windsor, 521 U.S. 591, 117 F.Ct. 2231, 2245-2248, 138 L.Ed. 2d 689 (1997)["in settlement only class certifications, a district court need not inquire whether the case, if tried, would present intractable management problems"]. Rule 23(a) provides:

> One or more members of the class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

In the instant case, the proffered class is alleged to consist of: all individuals in the United States, including without limitation individuals who serve abroad in the Armed Forces of the United States, who during the four (4) year period preceding the filing of this Action on July 7, 2009: (a) have or had a Finance Agreement held by Navy Federal; (b) had the Motor Vehicle pledged by the Finance Agreement repossessed; (c) were sent a post-repossession notice under UCC Article 9 with respect to a Motor Vehicle pledged by the Finance Agreement; and (d) have not, before Final Approval of the Settlement and with respect to a Finance Agreement that meets requirements of (a), (b), and (c), (i) obtained a discharge in bankruptcy, (ii) filed a bankruptcy petition, (iii) entered into a post-repossession repayment agreement, (iv) had a final judgment

entered in a collection action, or (v) been involved in a dispute in which they are represented by counsel [Settlement Agreement - ¶ 8s].

The above described group of persons can easily be identified.  The books and records of the Defendant will provide the identity of all persons who received the offensive communication. Thus, Plaintiff has adequately described the class.

### b.   Numerosity is established to the extent that joinder is impractical.

Courts have noted that the requirement of numerosity is more adequately described as the "impracticality of joinder" requirement. See, generally, Miles v. America On Line, Inc., 202 F.R.D 297 (M.D. Fla. 2001); Walco Investments v. Thesen,168 F.R.D.315,324 (S.D. Fla.1998). That is to say that joinder of all class members must be impractical does not mean that joinder must be impossible. Instead, it only means that the Court must find that the difficulty or in convenience of joinder of all members makes class litigation desireable. Singer, 185 F.R.D. at 687. In making this finding, the Court may consider relevant facts other than the numbers of class members. See, America On Line, 202 F.R.D. at 302 [stating "there is no yardstick that measures the minimum class members necessary to satisfy the requirements of numerosity."]; see, CV v. Reit, Inc. v. Levy, 144 F.R.D. 690 , 696 (S.D. Fla. 1992)[stating that "there is no definite standard as to how many members a class must have."] The Court should consider " the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." Walco, 168 F.R.D. at 324; America On Line, 202 F.R.D. at 302.

The proposed class in the instant action easily satisfies the numerosity requirement as the estimated class size exceeds five thousand (5,000) persons.  As such, the proposed Settlement

Class is inescapably so numerous to make individual joinder of class members extremely impractical. <u>See</u>, e.g., <u>America On Line</u>, 202 F.R.D. at 303 [proposed class of 4,700 subscribers satisfied the requirement]; <u>C.V. Reit</u>, 144 F.R.D. 690 [500 class members sufficient]; <u>Powers v.Stewart-James Company, Inc.</u>, 707 F.Supp. 499, 501-502 (M.D. Fla. 1989)[500 investor class members satisfied numerosity requirement.]

### c.   The Class Representative Asserted Questions of Law and Fact Common to the Class.

*i.     Review of commonality element.*

Under Rule 23(a)(2), the Court must find the existence of questions of law and fact that are common to all class members before the matter may be certified as a class action. No qualitative or quantitative task will determine commonality; it is only necessary to find at least one issue common to all class members. <u>Pottinger v. City of Miami</u>, 720 F.Supp 955, 958 (S.D. Fla. 1989); <u>Walco</u>, 168 F.R.D. at 325; <u>Singer</u>, 185 F.R.D. at 687.

Not all factual legal questions raised in the litigation need to be common so long as at least one issue is common to all class members. <u>Armistead</u>, 629 F.Supp. at 280; <u>Pottinger</u>, 720 F.Supp 955, 958 (S.D. Fla. 1989). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." <u>Kornburg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984), cert denied, 471 U.S. 1004 (1985). "The fact that there is some factual variation among the class grievances will not defeat a class action … a common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23 (a)(2)." <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1017-18 (7th Cir. 1992), *cert denied* , 506 U.S. 1051, 113 S.Ct.972 (1993); <u>See</u>, also, <u>Keele v. Wexler</u>, 149 F.3d 589, 594 (7th Cir. 1990).

<em>ii.   "Commonality" in UCC Class Actions.</em>

(1).   Systematic Conduct of Defendant.

In the instant action, each prospective class member was sent a letter in the form substantially similar to the Notice of Sale set forth as Exhibit "B" to the Amended Complaint. "To establish commonality, it is sufficient that plaintiff allege that all class members received the same collection letter." <u>Swanson v. MidAm, Inc.</u>, 186 F.R.D. 665, 668 (M.D. Fla. 1999).["The very definition of this class logically involves common questions, such as whether the subject collection letter violates 15 U.S.C. §1692g"]. <u>Macarz v. Transworld Systems, Inc.</u>, 193 F.R.D. 46, 49 (D. Conn.2000).

The repossession activities of Navy Federal - like most large lenders - are systemicized. Given the confluence of form documents and uniform statutory damages, cases involving defective repossession notices, like this one, are routinely certified as class actions. See, e.g., <u>Jenkins v. Hyundai Motor Financing Co.</u>, 2008 WL 781862 (S.D. Ohio March 24, 2008); <u>Walczak v. Onyx Acceptance Corp.</u>, 850 N.E.2d 357, 366-372 (Ill.App.2d Dist.2006); <u>Middleton v. Sunstar Acceptance Corp.</u>, 2000 WL 33385388, *3-*8 (S.C.Com.Pl.Jan. 13, 2000); <u>Chisolm v. TranSouth Financial Corp.</u>, 194 F.R.D. 538, 557-569 (E.D.Va. 2000); <u>Car Now Acceptance Co. v. Block</u>, 2002 WL 32001272 (Ohio. Com. Pl. Nov.25, 2002), affirmed, <u>North Shore Auto Financing, Inc. v. Block</u>, 2003 WL 21714583 (8th Dist. July 24, 2003), appeal not allowed, 800 N.E.2d 47 (Ohio 2003); <u>Moye v. CAC</u>, 2001 WL1098259 (Conn.Super. 2001); <u>Mortera v. Ford Motor Credit</u>, 2003 Calif. Super LEXIS 4433117 (June 23, 2003). To be sure, cases involving the use of form documents are particularly appropriate for class treatment. <u>Orloff v. Syndicated Office Systems, Inc.</u>, 2004 WL 870691 at *3-4 (E.D. Pa. Apr.22, 2004).

(2).   No Requirement of Reliance by Class Members

Whether Ms. Whitaker or any other class member were mislead by the improper Notice

of Sale is not an element of the cause of action brought herein under the UCC.  Indeed, when a

creditor violates Article IX, Part 6, if the collateral is a consumer good, the consumer is entitled

to the greater of the consumer's actual damages or the statutory damages set forth in UCC

Section 9-625(c)(2).  See, Atlantic Coast Federal Credit Union v. Delk, 526 S.E. 2d 425 (Georgia

1999)[even if debtor cannot prove monetary loss, consumer debtor is entitled to recover statutory

damages]. As stated in the Comments to the civil remedies provision of Article IX:

> **4.   Minimum Damages in Consumer-Goods Transactions.**   Subsection (c)(2)
> provides a minimum, statutory, damage recovery for a debtor and secondary
> obligor in a consumer-goods transaction. It is patterned on former Section 9-
> 507(1) and is designed to ensure that **every noncompliance** with the requirements
> of Part 6 in a consumer-goods transaction results in liability, **regardless of any
> injury that may have resulted**.

> *Comment 4*, Section 9-1-625 (emphasis added)

(3).   Virginia Choice of Law Provision Creates Uniform Legal Standards

The finance agreement entered into between Navy Federal and the Class Members

contained a Virginia choice of law provision. In particular, the subject provision provided:

> This agreement is entered into and shall be governed, in all
> respects, by Federal Law and when necessary the laws of the State
> of Virginia.
>                                   ("Virginia Choice of Law Provision")

As the Court has diversity jurisdiction, the choice of law rules of the forum state,

Maryland, apply.  Fisher v. Viacom International, Inc., 115 F.Supp.2d 535, 538-39 (D.Md.

2000); Griffin v. Bank of America, 971 F.Supp. 492 (D.Kan. 1997).  Maryland courts have long

recognized the ability of contracting parties to specify in their contracts that the laws of a

particular state will apply in any dispute over the validity, construction or enforceability of the contract. <u>Jackson v. Pasadena Receivables, Inc.</u>, 398 Md. 611, 921 A.2d 799 (Md.2007). In applying Maryland's choice of law principals, this Court has given effect to parties' choice of law provisions. <u>See</u>, e.g., <u>Halpert, DDS v. Dental Care Alliance, LLC</u>, 2007 WL 1295805 (D.Md. 2007).

Under the Virginia Choice of Law Provision, the claims of all Class Members are within the ambit of Virginia's substantive law. This result is consistent with the UCC's choice of law provision which states that "when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or such other state or nation shall govern their rights and duties." Va. Code Ann.§§ 8.1A -301(b); Md. Code Ann. Com. Law §1-01(1).

**d.  The Claims of Ms. Whitaker are Typical of the Claims of Class Members.**

Linked closely with Rule 23(a)(3) requirement of commonality is its prerequisite that a class action can be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Eleventh Circuit has explained that typicality requires the existence of:

> A nexus between the class representatives claims and defenses and the common questions of law or fact that unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event, pattern and practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claims atypical unless the factual position of the representative markedly differs from that of other members of the class.

<u>Kornburg</u>, 741 F.2d at 1337, 471 U.S. 1004 (1985).

The primary concern is that the claims of the named representative have the same

essential characteristics of the claims of the class at large. See, V. Reit, 144 F.R.D. at 697;

Pottinger, 720 F.Supp at 959. "Typicality" is satisfied when a named party's claim is derived

from the same course of conduct from which the claims of the class members evolved and are

"based on the same legal or remedial theory." See, Singer, 185 F.R.D. at 689; CV Reit, 144

F.R.D. at 697. Even if each class member is not effected in exactly the same way by defendant's

conduct, such factual distinction between the claims of the class representative and the class

members will not defeat a finding of typicality. Singer, 185 F.R.D. at 689; CV Reit, 144 F.R.D.

at 697; Amerifirst, 139 F.R.D. at 428. Differences in each class member's claim for damages do

not preclude class certification. See, e.g., Broin v. Phillip Morris Companies, Inc. , 641 So.2d

888 (Fla. 3d DCA 1974).

     In the instant case, the claims of the proposed class representative are not factually

distinguishable from the claims of the class members. Each member's claim arises from the same

course of conduct engaged in by the Defendant — that is the transmission of a post-repossession

notice which does not comply with the UCC. Therefore, the requirement of Rule 23(a)(3) is

satisfied.

### e.  Plaintiff and Her Counsel Will Adequately Represent the Interests of the Class

     Rule 23(a)(4) requires that the representatives will fairly and adequately represent the

class interest:

> Adequate representation involve "questions of whether plaintiff's counsel are qualified,
> experienced, and generally able to conduct the proposed litigation … the adequacy
> requirement serves to uncover conflicts of interest between the named parties and the
> class they seek to represent. A class representative must be part of the class that possesses
> the same interest and suffered the same injury as the class representative.

America On Line, 202 F.R.D. at 303; see, also, Pottinger v. City of Miami, 720 F.Supp. 955, 959

(S.D. Fla. 1989).

Thus, the three factors important for determination of "adequacy" are:

(1)   Whether the plaintiff has interests that are antagonistic to the class;

(2)   Whether plaintiff has sufficient interest in the outcome to ensure vigorous advocacy; and

(3)   Whether plaintiff's counsel's qualifications, experience and ability to conduct the litigation vigorously.

Adequacy of representation is presumed unless there is evidence to the contrary.

Gammon v. G.C. Services Limited Partnership, 162 F.R.D. 313, 317-319 (M.D. Ill.1995); Access Now, Inc., 2001 F.L. 1809979 at 64.

Federal courts interpret the "commonality test" of Rule23 (a)(2) as a requirement that there be no conflict of interest as between the representatives and the class as a whole. Carter v. West Publishing Company, 199 WL 994997 (11th Cir. 1999). In addition, only conflicts that go to the heart of the matter being litigated will serve as a basis for denying certification. Id.at 1280. Disagreements regarding the conduct of the litigation do not preclude representation. Warren v. City of Tampa, 693 F.Supp.1051 (M.D. Fla. 1988).

With respect to the issue of adequacy, Ms. Whitaker has filed contemporaneous herewith the Declaration of Donna L. Whitaker ("Whitaker Declaration"), as well as the Murphy Declaration.  In the instant case, the interest of the Plaintiff is identical to those of the class members. The representative class member seeks damages as a result of the unlawful practices of the Defendants. Given the identical claims of the class members and the commitment of the Plaintiff to the prosecution of this action, Plaintiff is an adequate representative of the class.

In the absence of antagonism between the interests of the named representatives and those

of the class, "adequate representation" requires the named representatives have the ability to prosecute the action vigorously through qualified counsel. <u>Butterworth v. Quick & Riley, Inc.</u>, 171 F.R.D. 319 (M.D. Fla. 1997); <u>Kirkpatrick</u>, 827 F.2d 718 (11th Cir.1987). The class representative must have adequate participation and understanding of the facts and issues involved in the case, not just "blind reliance upon even competent counsel by uninterested inexperienced representatives." <u>Id</u>. at 726; <u>see</u>, also, <u>Butterworth</u>, 171 F.R.D. at 322.

Ms. Whitaker has been fully involved with the litigation, which led to the proposed settlement (Whitaker Declaration—¶¶ 3-8). Furthermore, the class representative is represented by counsel with significant experience in the prosecution of litigation in consumer protection class actions, and there is no doubt that the "vigorous  prosecution" element is satisfied (Murphy Declaration—¶ 18).

**2.  <u>The Instant Action May be Certified Under Rule 23(b)(3),  Fed. R. Civ.P., as Common Questions of Law and Fact Predominate the Proceeding.</u>**

**a.  Common Questions of Law and Fact Predominate**

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of  the three conditions of subdivision (b) of Rule 23. In the instant proceeding, Ms. Whitaker seeks, *inter alia*, certification under Rule 23(b)(3) which provides in pertinent part:

> (b) An action may be maintained as a class action if the prerequisites of (a) are satisfied, and in addition:

> *                *                *

> (3) finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members …

> In deciding whether common questions predominate, courts focus on the issue of liability.

Dura-Built Corporation v. Chase Manhattan Corporation, 89 F.R.D. 87, 93 (S.D. N.Y. 1981). Not all questions of law or fact need to be in common. Walco, 168 F.R.D. at 334. The existence of a few individual questions will not negate the predominance of common issues. Rule 23(b)(3) only requires that the common issues predominate over the individual issues. Id.

Cases dealing with the legality of standardized legal documents or conduct are generally appropriate for certification and resolution as a class because a document is the crux of the case that results in the predomination of common questions of law or fact. Amchem Products,Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231 (1997) ["Predominance is a test readily met in certain cases alleging consumer … fraud."]; Maalox, 204 F.R.D. at 42. In the instant case, common questions predominate because the main issue before the Court is whether the Defendant's UCC notices, in the form represented by Exhibit "B" to the Amended Complaint violates the UCC.

**b.  A Class Action is Superior to Other Available Methods to Resolve this Controversy**

The primary focus to determine whether a class action is a superior method of resolving the controversy presented involves consideration whether the procedure allows for the efficient and economic litigation of a question potentially affecting every class member.  Kelly v. Sabretech, Inc., 195 F.R.D. 48, 51 (S.D. Fla. 1999)["The class action procedure allows for the efficient economical litigation of a question potentially affecting every class member."]; D'Alauro v. GC Services Ltd. Partnership, 168 F.R.D. at 451 (E.D.N.Y.1996)["Class actions are a superior method for resolving controversies when the main objectives of Rule 23 are served; namely, the efficient resolution of the claims or liabilities of many individuals in a single action."]

The first factor pertinent to the Court's determination of whether a class action is the

superior method of adjudicating the matter is "the interest of members of the class individually controlling the prosecution or defense of separate actions." Rule 23(b)(3), Fed.R.Civ.P. The economic reality of the cases such as this— where the individual damage amounts at stake are small compared to the cost of litigation— precludes individuals from having any discernable interest in controlling the prosecution of separate actions. Fischler v. AmSouth Bancorporation, 971 F.Supp. 533 (M.D. Fla. 1997) [Individuals only have an interest in prosecuting individual actions that are large enough to justify expending attorneys fees and litigation costs.]; Garner, 184 F.R.D. at 605. The alternative to a class action is untenable because there are no recourse for the thousands of persons for whom the economic realities of pursuing an individual action against Defendant would, for all intents and purposes, foreclose the possibility of seeking relief.

> Where class members present no strong interest in individually controlling the prosecution or defense of a separate action or the class members are "in a poor position to take legal redress either because they do not know enough or because such redress is disproportionately expensive, a class action is particularly appropriate.

In re Amerifirst Securities Litigation, 139 F.R.D. 423, 435 (S.D.Fla.1991).

As to other superior factors, the "desirability of concentrating the litigation" in this forum also weighs in favor of class certification, which plainly will "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." Fifth Moorings Condominium, Inc. v. Shere, 81 F.R.D. 712, 719 (S.D. Fla. 1979). A class action offers the only practical method of obtaining a fair and efficient disposition of these claims. The alternative to this class action would be a duplication of many actions. The needless and wasteful multiplication of actions is precisely the evil that the class action procedure was designed to

avoid. Califano v. Yamasaki, 442 U.S. 682, 690 (1979).

In its analysis concerning superiority, a court must first consider that "individual consumers are most likely unaware of their rights" under the UCC. See e.g., Ballard v. Equifax Check System, Inc., 186 F.R.D. 599, 600 (E.D. Ca. 1999). Class actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage a lone consumer to file suit. Id.

The special efficiency of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small or medium size claimants may be involved. In light of the awesome costs of discovery and trial, many of them will not be able to secure relief if class certification were denied.

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727,732 (M.D. Ill.1977); See also, Ballard, 186 F.R.D. at 600 ["Efficiency and consistency of concerns favor litigating the legality of …standardized conduct by all class members in one suit rather than forcing each class member to sue individually"].

Finally, the class action mechanism is superior because no significant management problems are anticipated. Plaintiff's claims present a straightforward question concerning the legality of the printed form documents and Defendant's standardized practices. Defendant's records will provide the names and addresses of potential class members and liability issues will be identical for each class member.

-17-

### B.  THE COURT SHOULD PROVIDE PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AS BEING FAIR, ADEQUATE AND REASONABLE.

#### 1.  The Proposed Settlement is Fair, Adequate and Reasonable

Judicial approval of class action settlements requires a two-step process.  In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval." *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37.  Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*.  The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

In *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  Miller v. Republic National Life Insurance Company, 559 F.2d 426 (5th Cir. 1977).  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable.  Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984).

*Id*. at 1054

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court.  *Bennett*, 737 F. 2d at 987.  In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the negotiating process by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *corrected on other grounds on pet. for reh'g*, [1982-1983 Transfer Binder] Fed. Sec. L. Rep. (CCH) 99,074 (2d Cir.) *cert. denied* 464 U.S. 818 (1983).  The courts insist that a settlement be the result of "arm's length negotiations" effected by counsel possessed of "experience and ability . . . necessary to effective representation of the class' interests." *Id*. 698 F.2d at 74 (citation omitted).  Once counsel's experience is established, courts give such counsel's "opinion . . . supporting the settlement . . . 'considerable weight' ".  *In re: Saxon Securities Litigation, supra*, [1985-1986 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,414, at 92,525 (S.D.N.Y. 1985).  This is because "the parties' counsel are best able to weigh the relative strengths and weaknesses of their arguments."  *Id*.

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1)    the likelihood of success or recovery;

(2)    the range of possible recovery;

(3)    the settlement terms and conditions, and how the terms compare with the possible range of discovery;

(4)    the complexity expense and duration of future litigation;

(5)    the substance and amount of any opposition to the settlement;

(6)    the stage of the proceedings at which settlement is reached;

(7)    the recommendations and judgment of experienced counsel and the absence of collusion.

-19-

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

       2.     *Even With a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages.*

Although Plaintiff believes that the claims she has raised are meritorious, she nonetheless recognizes that ultimate success on the merits is by no means assured. Indeed, when settlement negotiations were commenced, Navy Federal through its counsel had made it clear that if this matter were contested, it would vigorously challenge the merits of the claim of Ms. Whitaker. Navy Federal also contended and continues to contend that it has meritorious defenses to the asserted claims.

       3.     *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Class Members.*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by Plaintiff: the abandonment of any outstanding claimed deficiency balances [Settlement Agreement - ¶ 15a]. As noted, such deficiency balances amount to more than approximately $50 million for the class period [Settlement Agreement - ¶ 7]. In addition, the settlement ensures that the credit histories of class members will be corrected to delete any adverse information [Settlement Agreement - ¶ 15b].

The Settlement Agreement further provides that, for the purposes of attorneys' fees, costs and expenses, Ms. Whitaker through counsel will move for attorneys' fees and costs of $385,000 — less than 0.5% of the total economic benefits to the proposed class [Settlement Agreement -

¶18a].

Thus, the Settlement Agreement provides Class Members meaningful relief, and in addition, provides Class Members clear notice so that they could make an informed decision about whether to participate. It is also noteworthy that Class Members will be entitled to receive all of the relief provided in the Settlement Agreement <u>without</u> having to submit a claim form.

Of course, the essence of a settlement is compromise. A settlement compromising conflicting positions in class action litigation serves the public interest. *See, Armstong, supra*, 616 F.2d 313. In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is assured and that all claimed damages are properly recoverable. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312-13; *Armstrong, supra*, 616 F.2d at 314-15. A settlement need not obtain one hundred percent of the potential recovery of damages if it represents a knowing and intelligent compromise. *See, Bennett, supra,* 737 F.2d at 987 (settlement providing for $675,000 of maximum possible $12 million recovery adequate). The Settlement here affords a large measure of the relief available to the class should the case be tried, and as such, is demonstrably just and reasonable.

4.      *The Time and Expense of Protracted Litigation Make Settlement Appropriate.*

Settlement promotes the interests of the litigants by saving them the expense of  trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal).  This position is especially compelling in light of the class size.

### 5. Plaintiff's Counsel Has Conducted Due Diligence Discovery and Has Negotiated the Settlement from a Well-Informed Perspective.

Since the instant action was initiated, the parties have developed a substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. The parties have conducted formal and informal discovery, including the exchange of documentation relevant to the repossession notices used by Navy Federal and deficiency balances claimed by Navy Federal.

The parties entered into earnest settlement negotiations starting in December, 2009. The negotiations consisted of lengthy office and telephonic conferences over several months. In conjunction with the negotiations, the parties exchanged information regarding class size, scope and damages. Through this process Plaintiff's Counsel acquired sufficient knowledge and information to assess the merits of the claims and of potential settlement (Murphy Declaration - ¶¶ 3-5).

The settlement discussions were successfully concluded with a written term sheet drawn up by counsel. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the formal agreement over the next several months.

### 6. Plaintiff's Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members.

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). At the preliminary approval hearing, Whitaker Counsel will

inform the Court of settlements obtained in other repossession class actions similar to the instant proceeding in both this District and in other jurisdictions [Murphy Declaration - ¶¶ 9-18]. Judges should avoid substituting their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See, Ressler v. Jacobson,* 822 F.Supp. 1551, 1553 (M.D.Fla.1992).[1]

"While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247 (endorsement of settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods,* 546 F.Supp.1, 11 (N.D.Ohio1982) (opinion of counsel to be given great weight by the Court). Indeed, there is a "strong initial presumption" that an arm's length settlement arrived at by experienced counsel, and premised upon sufficient information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972).

---

[1] The Court must also avoid judging the settlement against a hypothetical or speculative measure of what might have been achieved by the negotiators. "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of facts and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." *See, Officers for Justice v. Civil Serv.Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conduct by counsel experienced in all aspects of class action litigation, and particularly experienced in UCC matters. As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class.

By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation. Upon final approval, if given, the proposed settlement will have established a significantly faster and guaranteed favorable resolution of Settlement Class members' claims against Navy Federal.

    *7. The Parties Negotiated the Proposed Settlement in Good Faith.*

The proposed settlement was negotiated at arm's length, after months of intensive and protracted negotiations, and additional, detailed settlement negotiations which were conducted before the final terms of the Settlement Agreement were reached. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff, Donna L. Whitaker, on behalf of herself and all others similarly situated, would respectfully request this Court grant the Joint Motion for Preliminary Approval of the Class Action Settlement Agreement and for such other and further relief as justice may require.

ROBERT W. MURPHY
Counsel for Plaintiff
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
rphyu@aol.com

By:   /s/ Robert W. Murphy
        Robert W. Murphy
        Florida Bar No. 717223 (*pro hac vice*)

THE KENNEDY LAW FIRM
Counsel for Plaintiff
Maryland Consumer Law Group
PO Box 657
Edgewater, Maryland 21037
Telephone: (443) 607-8901
Fax: (443) 607-8903
bernardtkennedy@yahoo.com

By:   /s/ Bernard T. Kennedy
        Bernard T. Kennedy
        Bar No. 26843

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on March 17, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Neil Gilman, Esquire, Hunton & Williams LLP, 1900 K Street, N.W., Washington, D.C. 20006, and to Bernard T. Kennedy, Esquire, The Kennedy Law Firm, Maryland Consumer Law Group, PO Box 657, Edgewater, MD 21037, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

                                        /s/ Robert W. Murphy
                                        Attorney