IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND


DONNA L. WHITAKER

PLAINTIFF/COUNTER-DEFENDANT


    VS.                        CIVIL NO. RDB-09-2288

NAVY FEDERAL CREDIT UNION

DEFENDANT/COUNTERCLAIMANT


                                Baltimore, Maryland
                                April 1, 2010


    The above-entitled case came on for a motions

hearing before the Honorable Richard D. Bennett,

United States District Judge


                A P P E A R A N C E S


For the Plaintiff/Counter-Defendant:

        Robert W. Murphy, Esquire
        Bernard T. Kennedy, Esquire


For the Defendant/Counterclaimant:

        Neil K. Gilman, Esquire
        Mark B. Bierbower, Esquire
        Michael D. Meuti, Esquire



Gail A. Simpkins, RPR
Official Court Reporter

1                    P R O C E E D I N G S

2          THE COURT:  Madam Clerk, will you call the case,

3     please?

4          THE CLERK:  Yes.  The matter now pending before

5     the Court is civil matter RDB-09-2288, Donna L.

6     Whitaker versus Navy Federal Credit Union.  The matter

7     comes before the Court for the purpose of a

8     preliminary hearing.

9          Will counsel please state your name for the

10    record, starting with the plaintiff?

11         MR. KENNEDY:  Bernie Kennedy, representing the

12    plaintiff, Donna Whitaker.

13         MR. MURPHY:  Robert Murphy.  Good Afternoon,

14    Judge.

15         THE COURT:  Good afternoon.  Nice to see you

16    all.

17         For the defense?

18         MR. MEUTI:  Michael Meuti, representing Navy

19    Federal.

20         MR. BIERBOWER:  Mark Bierbower, representing

21    Navy Federal.

22         MR. GILMAN:  And Neil Gilman, representing Navy

23    Federal.

24         Your Honor, I would like to introduce Mark

25    Machen from Navy Federal.

1          THE COURT:  Nice to see you.  Welcome to all of

2     you.  Usually the person in the second row has done

3     most of the work.  So it's nice to have you.

4          MR. MACHEN:  No, sir.

5          THE COURT:  So it's nice to have you here.

6          I'm apologizing to all of you for keeping you

7     waiting.  I do apologize.  I was literally about to

8     come on the bench a minute early.  I've been trying to

9     get in touch with another federal judge in another

10    part of the country.  We've been trading phone calls

11    back and forth.  As is typical, the minute I go to put

12    my robe on and hit the bench, suddenly he finally

13    calls back, and it was his third call to me after my

14    fourth call to him.  I thought we were never going to

15    get on the phone.

16         So I do apologize for keeping you waiting, but

17    it was one of those things where his calendar and mine

18    were such we have not been able to talk.  So I do

19    apologize.

20         This matter comes before the Court with respect

21    to a hearing on essentially preliminary approval of

22    the Class Action Settlement proposed in this case.  Is

23    that correct, counsel?

24         MR. MURPHY:  Yes, Your Honor.

25         MR. KENNEDY:  Yes, Your Honor.

1          THE COURT:  I have reviewed the joint motion of

2     the plaintiff, Donna Whitaker, and the defendant, Navy

3     Federal Credit Union, with respect to preliminary

4     approval of Class Action Settlement.

5          I'll be glad to hear from you, Mr. Murphy, on

6     this.  I have a few questions, but I'll be glad to

7     hear from you.  Then I'll hear from defense counsel.

8          Essentially, as I understand it, we have four

9     forms of relief here.  We have a waiver of deficiency

10    amounts related to the relevant financing agreements.

11         We have a deletion from the credit reports, or I

12    will say an effort to have deletion from the credit

13    reports as to the Class Members.

14         Then we have $50,000 in cy pres money going to

15    the Army Emergency Relief Fund, $5,000 going to the

16    Class Representative, and $385,000 in legal fees.

17         Is that a reasonably correct summary, Mr.

18    Murphy, of where we are?

19         MR. MURPHY:  Yes, sir.

20         THE COURT:  All right.  I'll be glad to hear

21    from you.

22         MR. MURPHY:  Judge, as you're aware from the

23    memorandum filed in support of the motion for

24    preliminary approval, the relief we are requesting is

25    that the Court provide preliminary approval of the

1    settlement, appoint Class Counsel and the Class

2    Representative, Ms. Whitaker, approve the notice to

3    the Class and set deadlines for the Class notice,

4    objections, opt-out, intervention, and the final

5    approval hearing date.

6        Briefly, Judge, I think part of what I would

7    like to do is just address the claims, the merits

8    issues, and then move to the settlement --

9        THE COURT:  That's fine.

10       MR. MURPHY:  -- so that you'll understand the

11   special issues of the Class and fulfill Rule 23

12   requirements.

13       Judge, the claims that we asserted against Navy

14   Federal --

15       We initially had filed this lawsuit in state

16   court.  I believe it was in Montgomery County, or

17   Prince George's, sorry, and it was removed under CAFA

18   to the district court.

19       The claims were under the UCC, under Maryland

20   UCC.  Specifically, we asserted that Navy Federal

21   Credit Union had violated 9-614.  For purposes of my

22   argument today, I'm going to refer to 9-614 just

23   generically as the UCC section, without reference to

24   the specific state statute.

25       With respect to 9-614 noncompliance, it was our

1     position that they failed to disclose the method of

2     the intended disposition of the collateral.

3     Specifically, they need to identify whether or not

4     it's a private sale or a public sale, and if it was

5     public, the date and time of the public sale.

6          They had to provide also a notice of the right

7     to an accounting and the cost for the accounting.

8          And last, Navy Federal failed to disclose the

9     correct time period for redemption of persons'

10    vehicles under 9-623.

11         Under the Unform Commercial Code, the effect of

12    noncompliance would vary throughout the country.

13    There are basically three theories that are in play if

14    you fail to comply with the notice requirements of

15    9-613 and 9-614.

16         In this case, we have a Virginia choice of law

17    provision, and Virginia law would control.  The

18    Uniform Commercial Code for purposes of this -- it's

19    almost germane to most of the country -- is the burden

20    shift, and the burden shift is to the secured creditor

21    to show that the sale was not commercially reasonable,

22    and there's additionally a statutory setoff or right

23    to damages.

24         The statutory setoff is 9-625 or the right to

25    damages, the civil remedy section of the UCC.  Its

1    clients charged seven percent of principal

2    indebtedness.

3         Because of the rebuttable presumption issue, and

4    because of some other factors which I'm going to

5    discuss, our settlement basically proposed for a

6    wipeout of $50 million in deficiencies for the Class

7    Members.

8         We've got about seven to 8,000 Class Members.

9    The reason why the number is not yet set in stone is

10   because it depends on the Class Definition.

11   Additionally, Navy Federal is currently scrubbing

12   their accounts to make sure that any persons who are

13   not in the Class Definition that's proposed, Your

14   Honor, are excluded.

15        The clearance of credit reports, we negotiated a

16   complete deletion, and part of what I did as part of

17   due diligence of Class Counsel is I consulted with an

18   expert witness with respect to that aspect of the

19   settlement.  The expert witness is Evan Hendricks.

20   He's actually in Cabin John, Maryland.  There is no

21   requirement that credit reporting agencies delete

22   anything, but as a practical matter, they will.

23        I have done a number of class actions involving

24   Article 9, specifically the same type of claims we

25   have in this case, and deletion of the credit reports

1    is done routinely in these class actions.

2         With respect to the relief payment of $50,00 to

3    the Emergency Relief Fund --

4         THE COURT:  As to the deletion of the credit

5    reports, Mr. Murphy, as I read the proposed Settlement

6    Agreement, there is little relief accorded to the

7    Class Members, except to just provide a second notice

8    in the event that the credit report is, the record on

9    the credit report is not deleted.

10        MR. MURPHY:  There is relief to the Class

11   Members.  You're referring to their ability to get

12   their credit reports cleared.

13        THE COURT:  Yeah.  I note that there is language

14   here that refers to in the event that -- I think it's

15   actually on page 12 as to the credit report.

16        The only remedy of the Settlement Class Members

17   for the failure of the credit reporting agencies to

18   amend the consumer reports of the Settlement Class

19   Members is to request in writing that Navy Federal

20   again request that it's tradeline be deleted as to the

21   relevant Finance Agreement.

22        MR. MURPHY:  Yes, sir.

23        THE COURT:  And that no damages shall be

24   recoverable from Navy Federal for the credit reporting

25   agencies' failure to delete in that fashion.

1            That's not to suggest that that's bad faith on

2       the part of the Navy Federal Credit Union, but it does

3       seem to me to appear to create some problem if in the

4       event, given that there is more than a slight level

5       of, in this financial day and age, there is more than

6       a slight level of cynicism when it comes to financial

7       institutions and credit reporting agencies, and I'm

8       wondering how that can be more adequately addressed.

9            MR. MURPHY:   Judge, they have a remedy.   The

10      remedy is, under the Fair Credit Reporting Act,

11      against the consumer reporting agency as opposed to

12      bring a claim against the furnished information.

13           The consumer would not -- and this is how I have

14      analyzed this issue because this is always an

15      important issue for me.

16           I spend a lot of time dealing with Class

17      Members' issues post final approval, make sure that

18      their credit reports are cleared.   Part of what I do

19      is make sure that I get the bank or the financial

20      institution to comply with their requirements, and I

21      have had to have this happen many times, where I'm

22      having to a spend lot of time helping the Class

23      Members.

24           The remedy is against the consumer reporting

25      agency.

1           THE COURT:  Credit reporting agency.

2           MR. MURPHY:  I'm sorry?

3           THE COURT:  The credit reporting agency.

4           MR. MURPHY:  Yes, sir.  That's why, you know, in

5      fairness to Navy Federal, they don't want to have

6      another lawsuit from anybody.

7           THE COURT:  Certainly.

8           MR. MURPHY:  That's why the language was

9      negotiated.  I think Mr. Gilman and I probably spent

10     several hours on this single issue.

11          They wanted to record it, if I may disclose,

12     they wanted to just simply have a zero balance on the

13     credit report, and I wanted everything taken out, have

14     the whole tradeline taken out, and because I'm

15     familiar with the way they should be doing it, that

16     they will do an e-OSCAR -- that's the terminology --

17     deletion.  It should be done electronically under

18     Metro 2, which is the standardized format for doing

19     this.  It's a field delete.  You enter a field, delete

20     the account.

21          Part of one of my duties as Class Counsel is to

22     make sure it's done.  If it's not done, and it's not

23     done as a result of the consumer reporting agencies,

24     the Class Members will have remedies against the

25     consumer reporting agencies, and I've had to counsel

1        Class Members in other Classes about their rights to

2        do that.  So there is a remedy to the Class Members.

3              If you think about it --

4        THE COURT:  And do you as Class Counsel continue

5        to represent those people in those actions?

6        MR. MURPHY:  I don't typically file independent

7        lawsuits, Judge, because it has never had to go that

8        far.  What we get, and this is what they have agreed

9        to provide, is the information for the consumer to

10       attach to their request for re-investigation to the

11       consumer reporting agency, proof of this being

12       supposed to be taken off their credit report.

13             The Fair Credit Reporting Act only requires that

14       the information is reported as accurately as possible.

15       It doesn't require the furnisher of the information,

16       such as the Credit Union, to report anything, and they

17       have agreed to not report anything as to these

18       derogatory remarks on a person's credit report.

19             This aspect of the Settlement Agreement is

20       extremely important for the proposed Class before this

21       Court because the population that we have in terms of

22       the members of this Class, a large number of the

23       population of this Class are either active duty

24       service persons or persons that work in the defense

25       industry.  That's one of the unique parts of this

1    litigation, as well as the settlement process, and

2    it's important to have their credit reports deleted

3    and cured.

4         We had difficulty in conveying that to the

5    Credit Union initially, and then they saw, after we

6    argued for a long period of time.  I spent a great

7    deal of time trying to negotiate that specific term.

8         Judge, if I may, I tried to do some due

9    diligence with respect to similar provisions in other

10   class action settlements in this district.  I believe

11   that Your Honor had had this issue before in a case of

12   Crescent Bank versus Shelton that my friend, Marty

13   Wolf, had before Your Honor a while back.  The

14   language that they used in their Proposed Settlement

15   Agreement, which you gave I believe final approve on,

16   is similar to what we've got in this case.  There is

17   some distinction, which I'm going to bring to the

18   Court's attention.

19        THE COURT:  What were the legal fees in that

20   case?

21        MR. MURPHY:  In Shelton versus Crescent Bank,

22   there were 308 class members, and the legal fees were

23   one-third of $206,000.

24        THE COURT:  The legal fees in that case, as I

25   recall, were under a hundred thousand dollars total,

1    were they not?

2         MR. MURPHY:  Yes, sir.  It's one-third of

3    200,000.  My math is like 65,000.

4         THE COURT:  I remember the case, but I don't

5    recall the legal fees being to the extent of the legal

6    fees in this case.

7         MR. MURPHY:  It was about $65,000 on that.

8         Judge, so with respect to the consumer reporting

9    issue, the credit recording issue, I believe I have

10   used the language that was used in other cases and

11   definitely the ones I have been involved in.

12        And from my own experience, I probably spend

13   post final approval, my office, between myself and my

14   staff, I spend dozens, if not maybe a hundred hours

15   sometimes.

16        I've got one case now in Clay County, Florida

17   against Sovereign Bank where I'm spending a lot of

18   time taking phone calls, and dealing with them as they

19   come in.

20        THE COURT:  This is post approval.

21        MR. MURPHY:  Post approval.

22        THE COURT:  How are the legal fees -- are there

23   additional legal fees being generated as a result of

24   that?

25        MR. MURPHY:  No, sir.

1          THE COURT:  Where is the guarantee here that the

2     legal fees include that kind of post-approval

3     assistance by your office?

4          MR. MURPHY:  My representation to the Court,

5     plus my fees are capped by way of the agreement,

6     subject to the Court's approval obviously, and it's my

7     intention to have a motion for attorneys' fees to

8     support my fee application in the manner that was

9     previously done in other cases that I have been

10    involved in before this Court.

11         THE COURT:  Well, I'll address that in a moment,

12    but then you are representing to the Court that there

13    is some effort on the matter of the credit report

14    issue, that it is not just going to be a matter of a

15    member of the Class saying my credit report has not

16    been remedied, and then Navy Federal is notified and

17    they again request.

18         Because in fairness to Navy Federal, I

19    understand that their point is we can't make the

20    credit reporting agency meet its obligation.  We

21    notify, we notify, we notify.

22         But I guess the point is ultimately the action

23    the Class Member may have to take and the assistance

24    that is rendered to the Class Member in taking action,

25    if necessary, and you're representing to me that you

1    are prepared to do that?

2         MR. MURPHY:  Yes, sir.

3         THE COURT:  Okay.

4         MR. MURPHY:  I've done it in the past.  I'm

5    doing it right now.

6         THE COURT:  All right.

7         MR. MURPHY:  I got at least two phone calls in

8    the last three days I have to deal with, and I have

9    been dealing with them as they come in in other cases,

10   Judge.

11        THE COURT:  All right.  Okay.

12        MR. MURPHY:  With respect to the other aspects

13   of the Settlement Agreement, the settlement

14   administration expense, Navy Federal has agreed to pay

15   all costs of the settlement administration.

16        We have agreed to use Fist Class, Inc. out of

17   Chicago, which is a settlement administrator that have

18   been used by both plaintiffs and defense bar for many

19   years.  They will be sending out notice.

20        The notice will provide, among other things --

21   well, their administration will be that they will try

22   to update reports using the National Change of Address

23   database and re-mail any notices that were not

24   initially mailed.

25        The notice that we have proposed to the Court

1    for the Court's consideration provides for all the

2    information that are material to the settlement,

3    including the right to opt out, to intervene and to

4    object.

5        It also details the intended application for

6    attorneys' fees, subject to Your Honor's approval, as

7    well as all the other pertinent terms of the

8    settlement, including a specific copy of the Release

9    in this case.

10       The Release is only with respect to the claims

11   asserted in the lawsuit.  It doesn't extend to

12   anything beyond the litigation issues.  That's a fair

13   characterization, and we went as far as to bind the

14   Release language to the Class Members.

15       Neil, do you want to pipe in?

16       MR. GILMAN:  I'm sorry.  I do think the Release

17   is a little broader than that.  It applies to the

18   finance agreements at issue in this case.

19       MR. MURPHY:  Yes.  I'm sorry.  That's correct.

20   I apologize.

21       THE COURT:  That's all right.  Thank you, Mr.

22   Gilman.  Thank you.

23       MR. MURPHY:  I meant to say the finance

24   agreements, Judge, not any other issues.

25       THE COURT:  Sure.

1          MR. MURPHY:  With respect to the opinion of

2     counsel with respect to whether or not this settlement

3     is in the best interest of the Class, as detailed in

4     my declaration filed in support of the motion for

5     preliminary approve, I've had a good amount of

6     experience litigating consumer class actions

7     throughout the country, specifically Article 9 class

8     actions in state and federal court.

9          And with respect to the unique issue in this

10     case, that's the credit union, I have had I believe in

11     the last two to three years ten credit union related

12     Article 9 class actions, and I will explain why it is

13     important in a minute.

14          This case involved a claim under Article 9 of

15     the UCC, and with respect to I think what the Court's

16     question is going to be on the attorneys' fees issue,

17     I've compared other cases that have been before this

18     Court to our negotiated attorneys' fees.

19          We have agreed to make an application for

20     attorneys' fees up to $385,000, subject to the Court's

21     approval, and Navy Federal has agreed not to object to

22     it.

23          This Court had previously had --

24          THE COURT:  It doesn't mean that Navy Federal is

25     agreeing to it.  They have agreed not to object,

1    correct?

2         MR. MURPHY:  I am aware of that, Judge, and I

3    know I have to make an application and support it with

4    the other stuff that one has an application for

5    attorneys' fees.

6         There are three cases I was able to find here in

7    Maryland in this District Court that the Court can

8    consider with respect to issues of fairness, and

9    obviously one of the issues that Your Honor has

10   probably had in Your Honor's mind, I don't mean to be

11   a mind reader, but this case does not involve money to

12   the Class.  It does involve money to the attorneys for

13   the Class, and the money is not insignificant to the

14   attorneys in the Class.  I can compare the cases that

15   are present that have been litigated in this court,

16   and the contrast is important.

17        The first case that I used as part of my due

18   diligence when I first got involved and later on when

19   we were negotiating was Shelton versus Crescent Bank.

20   That was before Your Honor.  That was filed under

21   Maryland's Credit Grantor Closed End Credit Provisions

22   Act, also known as CLEC, C L E C.  That statute is

23   different from Article 9 in several significant ways.

24        CLEC, under Section 12-1021(k)(4), has a waiver

25   of deficiency in the statute.  So if they do not

1    comply with the statute, the specific notice

2    requirements of Maryland's law, then they waive their

3    deficiency.

4        Additionally, there were claims in the Shelton

5    case that Mr. Wolf had done under the Maryland

6    Consumer Protection Act.  The settlement in that case

7    involved Crescent Bank, and the distinction between

8    Crescent Bank, and this is germane to the other two

9    cases that I referenced, is that these were not credit

10   unions.  Their interest rates were much higher, and

11   these weren't membership organizations, like a credit

12   union.

13       In that case, Class Counsel got one-third of

14   $206,000 in settlement fund, and a $2500 incentive

15   award for the Class Representative.

16       The second case was Watts versus --

17       THE COURT:  In Shelton versus Crescent Bank,

18   there was money distributed to the Class Members,

19   correct?

20       MR. MURPHY:  Yes, sir, and that was largely the

21   result of the waiver of deficiency aspect of that

22   specific state statute.

23       As Your Honor will recall, under CLEC, if it's a

24   Retail Installment Sales Agreement and the credit

25   grantor or the seller opts into that statute, you're

1      going to go under that statute of the CLEC statute as

2      opposed to Article 9.

3           These loans at issue in this case were all

4      credit union loans that were direct loans that had a

5      Virginia choice of law provision that didn't have

6      anything to do with the opt-in provision of Maryland

7      law into CLEC, and that's a major difference.  As I

8      mentioned earlier, we have a rebuttable presumption

9      issue in this case.

10          The second case was Watts versus Capital One

11     Auto Finance, Case Number 07-03477, also under CLEC as

12     opposed to Article 9.

13          THE COURT:  That was not my case, though, was

14     it?

15          MR. MURPHY:  No, sir.

16          THE COURT:  Who was the judge in that case?

17          MR. MURPHY:  That case was --

18          THE COURT:  Just give me the caption of the

19     case.

20          MR. MURPHY:  Judge Blake, Judge.

21          THE COURT:  All right.  Okay.

22          All right.  Go ahead.  I'm sorry.

23          MR. MURPHY:  That case involved a $28 million

24     waiver of deficiency in a class of 2,169 persons.

25     They had a $990,000 settlement fund, and I believe

1   that Mr. Wolf's firm made an application for one-third

2   of that amount, and it was a $5,000 incentive award.

3       THE COURT:  And again there was money that was

4   distributed to members of the Class.

5       MR. MURPHY:  Yes, sir.  I believe about $600,060

6   was distributed to the 2,169 persons.

7       The next case was Crowder versus AmeriCredit

8   Financial Services.  This was not your division,

9   Judge.  It was Case Number 06-707 JFM.

10      THE COURT:  That's Judge Motz down the hall.

11  The caption is JFM; is that right?

12      MR. MURPHY:  Yes, sir.

13      THE COURT:  What's the name of the case,

14  Crowder, C R O W D E R?

15      MR. MURPHY:  Yes, sir.

16      THE COURT:  Versus?

17      MR. MURPHY:  AmeriCredit.

18      THE COURT:  AmeriCredit?

19      MR. MURPHY:  AmeriCredit Financial Services.

20      THE COURT:  Okay.

21      MR. MURPHY:  That case involved 2,550 Class

22  Members.

23      THE COURT:  What is the case number on that case

24  again?

25      MR. MURPHY:  I'm sorry, 06-707.

1          THE COURT:  All right.  Thank you.

2          MR. MURPHY:  That case involved a $20 million

3     waiver of deficiency, and $2.5 million to the

4     settlement fund, of which one-third was paid in

5     attorneys' fees, and a $5,000 incentive award.

6          Those were the three cases I was able to discern

7     that had been litigated apparently under CAFA, the

8     Class Action Fairness Act, that removed from state

9     court, and the distinction between those three class

10    action settlements is as follows:

11         One, all of those three cases were under a

12    different statute that provided for extraordinary

13    remedy not present in this case, and that is the

14    waiver of deficiency.

15         The statute specifically provided that failure

16    to provide the requisite notice mandated by Maryland

17    legislature resulted in a waiver of deficiency, and

18    there are damages to boot under the statute, as well

19    as under the Consumer Protection Act.

20         The other issue not present in those cases

21    that's in the case is the credit union.  I'm sensitive

22    to issues with respect to credit unions because I have

23    litigated with credit unions and they are difficult in

24    a couple ways.

25         One, these are non-profit membership

1    organizations where the officers and directors are

2    typically drawn from the population.  That would be

3    the members.

4        In this case, it is my understanding Navy

5    Federal Credit Union has retired military on their

6    board, and as a nonprofit, they also don't look to

7    have high interest rate contracts.  High interest

8    rates contracts are different.

9        In the case I've had with finance companies,

10   such as Capital One Auto Finance, in the case of Grant

11   versus Capital One Auto Finance I did in Miami, Dade,

12   we had high interest rate contracts.  Some of them

13   exceeded 18 percent for used vehicles.  In Florida, we

14   can exceed 18 percent.  It goes as high as 29 percent

15   interest.

16       Because of those high interest rate contracts,

17   in an Article 9 case, we typically can argue issues

18   with respect to the ability of the Class Members to

19   recover damages.

20       With credit union cases, the damages are not as

21   great, but we still have the issue of the rebuttable

22   presumption.  That's why in my motion for preliminary

23   approval I advised the Court that that issue is out

24   there.  I'm confident that they are going to argue it,

25   which would mean that we still have an issue about

1    whether or not they may be owed money after statutory

2    damages are figured out.

3         Those are the distinctions in the cases.  The

4    other distinction is that the cases that I referenced,

5    we negotiated -- in this case, I had to argue long and

6    strenuously about making sure the Class Members did

7    not get a 1099 with respect to the tax treatment of

8    the discharge of the debts.  Part of what I did in

9    negotiation with Mr. Gilman and his office was to

10   provide revenue rulings on the issue.

11        So the Class Members are not going to have a tax

12   consequence with respect to the issuance of a 1099

13   with respect to waiver of deficiency.

14        THE COURT:  Well, they won't have a tax issue as

15   a result of the issuance of a 1099.

16        MR. MURPHY:  That's correct.

17        THE COURT:  You cannot represent exactly how the

18   Internal Revenue Service will treat this however, can

19   you?

20        MR. MURPHY:  No, sir.  I have the benefit of at

21   least two revenue rulings, I believe maybe three, I

22   have in the materials I shared with counsel that in

23   the revenue rulings, the IRS took the position that

24   this was not a taxable event.

25        In order to do the best I could for the Class,

1    that was a negotiated term.  I know Mr. Gilman's

2    office spent a great deal of time in their tax

3    department analyzing the issue.

4         THE COURT:  And to what extent is legal counsel

5    provided to Class Members in the event that they have

6    to fight the IRS on that issue.

7         MR. MURPHY:  Judge, that's not part of the scope

8    of what I have agreed to do.

9         THE COURT:  Unlike with respect to the, with

10   respect to the credit reporting agencies where you

11   will follow up, you can't make any representation as

12   to the waiver of the deficiency amounts and the view

13   that the Internal Revenue Service may or may not take

14   as to cancellation of indebtedness, correct?

15        MR. MURPHY:  No, sir.  My assistance with

16   respect to that aspect, if it was to come up, would be

17   to provide the Class Members with the information that

18   I have with respect to, among other things, the

19   revenue rulings, and an analysis of the reasons why

20   it's not taxable.

21        One of the things that I try to do is make sure

22   that the final approval order actually has a

23   determination that the agreements are null and void as

24   a matter of law, and that's what the IRS would look

25   at.

1          But I can't assure the Court that a 1099 won't

2     be issued, and I can't assure the Court that the

3     Internal Revenue Service would look at it and say this

4     is a taxable event.

5          THE COURT:  I thought you said that there would

6     be assurance that a 1099 would not be issued.

7          MR. GILMAN:  Your Honor, there is no assurance.

8     The 1099 will not be issued by Navy Federal.

9          THE COURT:  Right.

10          MR. GILMAN:  That is part of the settlement.

11          THE COURT:  Right.  So a 1099 is not going to be

12     issued.

13          MR. MURPHY:  That's correct.

14          Thanks, Neil, for clarifying that.

15          What I meant to say was that they have agreed

16     not to do it, and that's part of the Settlement

17     Agreement.

18          THE COURT:  Right.

19          MR. MURPHY:  Next year, in January, if the Court

20     approves this Settlement Agreement and one comes out,

21     you know, that's going to make me very angry and I'll

22     be calling Mr. Gilman.  I don't think that's going to

23     happen.

24          THE COURT:  It would be a violation of the

25     Agreement.  I'm not so much concerned with that.  I'm

1    concerned with the zealousness, let us say, at times,

2    the zeal with respect to the Internal Revenue Service

3    on these issues.

4        This in many ways is akin to -- I recall in my

5    own private practice experience with respect to tax

6    shelters, and the tax shelters being declared null and

7    void by the IRS, and all kinds of tax issues that

8    flowed therefrom.  The same issues of commonality and

9    typicality that bind your Class as a Class in this

10   Class action also would be true with respect to taking

11   a position with the Internal Revenue Service.  They

12   would all have the identical issue, it seems to me.

13       MR. MURPHY:  Yes, sir.

14       THE COURT:  It would seem to me that someone, a

15   lawyer, someone needs to step up, if that were to be

16   the case, and understand that it would be an

17   obligation to present their case to the IRS.

18       The simple answer it would seem to me to be that

19   it was unjustifiable indebtedness in the first place,

20   that it is not an income event, that the cancellation

21   of indebtedness is a settlement because there should

22   not have been a deficiency in the first place.

23       It's not an income-producing event, and so it

24   would not result in income under the theory of

25   cancellation of indebtedness.  It would be the same

1    issue that would be presented for everyone, it seems

2    to me.

3        I'm just wondering why there would be any

4    particular difficulty in someone, a lawyer, in terms

5    of, just as there is a follow-up with the credit

6    reporting agencies, why there could not be some

7    obligation assumed to carry that flag against the

8    Internal Revenue Service if it were to become

9    necessary for one or more than one of the members of

10   the Class.

11       How many people are in this Class?  How many

12   people do you project?  How many members of this Class

13   you believe there will be?

14       MR. MURPHY:  I believe the last number was

15   between six to seven, correct, six to 7,000?

16       THE COURT:  Six to 7,000?

17       MR. GILMAN:  We believe it's between actually

18   6900 and 7,000.

19       THE COURT:  All right.  Thank you, Mr. Gilman.

20   Thank you.

21       It seems like they would all have the identical

22   issue.  Could not there be some mechanism whereby if

23   for some reason, within a certain period of time --

24   you all could figure that out -- if any members of the

25   Class were to have those issues with the Internal

1    Revenue Service?  They would all share the exact same

2    issue.

3          Really, in my mind, it doesn't appear to be a

4    particularly sophisticated tax issue, Mr. Murphy, on

5    that.

6          MR. MURPHY:  It's not.

7          THE COURT:  I mean you could go to tax court.

8    It has been a while since I've done that kind of

9    litigation.  It seems to me the simple defense, as

10   I've said, is to say there isn't any cancellation of

11   indebtedness because there was no valid indebtedness

12   in the first place.  The deficiency was improperly

13   assessed, and there was a settlement, and there was a

14   waiver of the deficiency.

15         MR. MURPHY:  Yes, sir.

16         THE COURT:  So there has never been any

17   indebtedness in the first place.  Obviously government

18   counsel, if the IRS could contend that it was

19   indebtedness and there was a cancellation, the tax

20   court would have to resolve it, it seems to me.

21         I'm not suggesting you personally, if you're not

22   a tax lawyer, would endeavor as to that.  But it seems

23   to me there ought to be some, some consideration of

24   protection in that regard.  Wouldn't you think?

25         MR. MURPHY:  Yes, sir.  I'll give you an

1    example.

2         In a case called <u>Bruner versus</u> -- I'm trying to

3    remember the name of it.

4         A case in Tallahassee, Florida, in state court,

5    one of the issues that we were unable to negotiate on

6    was the issue about whether or not they were going to

7    issue 1099s to the Class.

8         This had something to do with the size of the

9    credit union.  The credit union's counsel did not feel

10   comfortable in rendering an opinion or finding whether

11   or not it was a taxable event, despite my best efforts

12   to provide whatever I had in the way of guidance, and

13   it had something to do with the size of that Class.

14        Those Class Members received a 1099 in January

15   of this past year, and what I have done is I have had

16   the Class Members, everyone call me, anyone who

17   reported that they got a 1099.  We provided the

18   information about the law as we saw it, specifically

19   that although discharge of indebtedness income, DOI,

20   is income for purposes of the IRS, there are

21   exceptions to it, and the exceptions exclude discharge

22   as operation of law, and the regs and the Revenue

23   opinions.

24        THE COURT:  Was there language added in the

25   Settlement Agreement to insure that both sides felt

1       the same way on this issue?

2            MR. MURPHY:  No, sir.

3            THE COURT:  Wouldn't that be a wise precaution,

4       you think?  I'll hear from Mr. Gilman or Mr. Bierbower

5       in a moment, but it seems to me that one of the things

6       there on the matter of the waiver of deficiency is

7       that --

8            I'll let you out of the barrel for a minute, Mr.

9       Murphy.

10           Mr. Gilman or Mr. Bierbower, as to that, it

11      really isn't your fight.  You really don't care, do

12      you?

13           Is there a tax angle on this as to Navy Federal

14      Credit Union that causes you not to take a more

15      proactive step on this?  Clearly it's a proactive step

16      to say you're not going to issue a 1099.  I'll be glad

17      to hear from you on this if you can --

18           MR. GILMAN:  Actually, Your Honor, page 12 of

19      the Settle Agreement --

20           THE COURT:  Yes.  I'm looking at it now.

21           MR. GILMAN:  -- paragraph 15.

22           THE COURT:  Yes.

23           MR. GILMAN:  -- says as a result of the disputed

24      nature of the deficiency balances, this waiver is a

25      discharge by operation of law, and Navy Federal shall

1      not issue or cause to be issued a Form 1099C,

2      etcetera.

3            I mean, you know, the Settle Agreement,

4      obviously we agree to everything in the Settlement

5      Agreement.

6            THE COURT:  Right.

7            MR. GILMAN:  So we didn't preface it with saying

8      the parties agree, but I think you could read that

9      sentence saying the parties agree that as a result of

10     the disputed nature of the deficiency balances, this

11     waiver is a discharge by operation of law.

12           THE COURT:  And not by cancellation of

13     indebtedness.

14           MR. GILMAN:  Right, which is why Navy Federal is

15     not going to issue a 1099.

16           THE COURT:  Well, I guess what I'm suggesting

17     is, Mr. Gilman, as to -- I'm looking at this language

18     right here, right now.  This waiver is a discharge by

19     operation of law, and Navy Federal shall not issue or

20     cause to be issued a Form 1099C or other report to the

21     Internal Revenue Service with respect to the

22     cancellation of any indebtedness.

23           It would seem to me that maybe you all could

24     tighten that language up a little bit by saying the

25     waiver is a discharge by operation of law, and the

1    parties agree that it is not a cancellation of

2    indebtedness.  So, therefore, no Form 1099 would be

3    issued.

4         MR. GILMAN:  Your Honor, I need to think about

5    that a little more.

6         THE COURT:  I know you do.

7         MR. GILMAN:  But I'm not sure we agree that it's

8    not a cancellation of indebtedness.

9         THE COURT:  Here's my concern.  I didn't mean to

10   interrupt you.  Here's my concern.  Let's get to the

11   core of this.

12        My concern is that to the extent that --

13        Your client is a nonprofit, correct?

14        MR. GILMAN:  Correct.

15        THE COURT:  What is the nature of the tax

16   filings that your client files with the government?

17        MR. GILMAN:  I'm not familiar with that.

18        THE COURT:  All right.  Obviously you have

19   expertise, and your law firm or someone could look

20   into that.

21        MR. GILMAN:  That's correct.

22        THE COURT:  What I am concerned with is that to

23   the extent -- there's usually a balance in all tax

24   cases -- to the extent that there is any write-off on

25   one side, there's income on the other.

1          The very principle of cancellation of

2     indebtedness is to the extent that, for example, a

3     bank writes off a bad loan, and to the extent that

4     that gives rise to deductibility from the point of

5     view of the bank, the corresponding thing with the IRS

6     is, the tax law is that there is a creation of the

7     cancellation of indebtedness.

8          So ideally, to the extent that a bank writes off

9     a bad loan, and it's not income, and it cuts down on

10    the reserves of the bank, and the taxable effect of

11    the bank on the shares of control, etcetera, etcetera,

12    there's a cancellation of indebtedness that's a tax

13    income event.

14         MR. GILMAN:  Right.

15         THE COURT:  What I'm concerned with is to the

16    extent that the Navy Federal Credit Union in any way

17    has tax returns or filings with the IRS that reflects

18    the financial impact of this Class Action Settlement

19    and the waiver of deficiencies, that regardless of the

20    Navy Federal Credit Union not issuing a 1099, it could

21    potentially trigger an analysis by the Internal

22    Revenue Service as to an income event on the other

23    side, and that's, that's what I'm concerned with.

24         How your client handles this from its own tax

25    point of view is the business of the Navy Federal

1    Credit Union, but there can be repercussions, and

2    that's what I'm trying to address.

3         MR. GILMAN:  Well, I think that's correct, Your

4    Honor.  I think, though, that this would involve a

5    cancellation of indebtedness.  Right now Ms. Whitaker

6    and the rest of the Class Members do owe debts to Navy

7    Federal.  But whether or not it's income, there are

8    exceptions in the regs, and the main exception --

9         THE COURT:  Is by operation of law.

10        MR. GILMAN:  Is operation of law.  So we think

11   this is a discharge by operation of law.  That's what

12   it says, not that there is no debt in the first place,

13   or not that there is no cancellation of indebtedness

14   in the first place, but that it fits within the

15   exception by operation of law.

16        THE COURT:  And that's the position you take,

17   consistent with the position clearly the Members of

18   the Class would take if there was any difficulty with

19   the Internal Revenue Service.

20        MR. GILMAN:  That's right, and that's Mr.

21   Murphy's position as well.

22        THE COURT:  Right, right.

23        MR. GILMAN:  As you say, you know, the IRS might

24   have their own position, but there are some IRS -- I

25   think there's a letter ruling.  I'm not a tax lawyer.

1        THE COURT:  Sure.

2        MR. GILMAN:  But I believe that they have a

3    letter ruling procedure, and I think that the letter

4    rulings are consistent with this position.

5        THE COURT:  Thank you, Mr. Gilman, on that.

6        Go ahead, Mr. Murphy.  Thank you very much.

7        Mr. Murphy, go ahead.  I didn't mean to

8    interrupt you.

9        I might have a suggestion as to this, which

10   might cover some of this territory, but let me just

11   hear from your further on this.

12       MR. MURPHY:  Judge, with respect to -- I think

13   the last issue is the attorneys' fees and court costs.

14       THE COURT:  Yes.

15       MR. MURPHY:  As well as the incentive award.

16       THE COURT:  The incentive award is $5,000,

17   correct?

18       MR. MURPHY:  Yes.

19       THE COURT:  You have, if I'm using the phrase

20   correctly, a cy pres payment of $50,000 to the Army

21   Emergency Relief, correct?

22       MR. MURPHY:  Yes, sir.  It's full recovery, one

23   or the other.

24       THE COURT:  Right.

25       MR. MURPHY:  The attorneys' fees application, we

1   actually negotiate the attorneys' fees after the

2   resolution of merits, and it represents the time that

3   we've spent, the time we anticipate spending, and also

4   anticipate spending addressing Class Members' issues.

5        My office and Mr. Kennedy's office will receive

6   a number of phone calls from Class Members asking for

7   an explanation of the settlement.  Either myself or

8   another attorney in my office take those phone calls,

9   and typically, we speak to them personally.

10       It's my intention to have an Application of

11   Attorneys' Fees in accordance with Rule 23, with

12   supporting declarations to support the fee

13   application.

14       THE COURT:  Will those supporting declarations

15   include time sheets?

16       MR. MURPHY:  Judge, if Your Honor requires it,

17   yes.

18       THE COURT:  I will.

19       MR. MURPHY:  It will include time sheets.  I

20   keep contemporaneous time records of all work

21   performed on an electronic basis like I'm supposed to.

22   If you require it, I do it, Judge.

23       THE COURT:  I think that's the safer process.  I

24   know I have done that in a recent case pending final

25   approval, not preliminary approval in the matter

1    involving Tyson's Chicken, an offshoot of another case

2    I had.  It was a multidistrict litigation matter

3    assigned to me, and Class Counsel have been told with

4    respect to the attorneys' fees, as to which the

5    defendant does not object -- they don't concur, but

6    they don't object to the attorneys' fees -- that I'm

7    going to require itemized time sheets.

8         MR. MURPHY:  Yes, sir.

9         THE COURT:  Then I'll look at those time sheets

10   in conformance with our Local Rule here in terms of

11   the hourly rates, the lodestar rates that we have.

12        MR. MURPHY:  Yes, sir.  That will be my motion

13   for final approval, motion for attorneys' fees and

14   supporting declarations and the time sheets, yes, sir.

15        THE COURT:  If you look at your Local Rules, you

16   will see that we've got the lodestar.  I can pull this

17   out, but I'm sure you can find it.

18        MR. MURPHY:  Judge, I've looked.

19        THE COURT:  There's a lodestar figure and

20   there's an hourly rate figure.  We always have some

21   discussion about the difference between the backwater

22   area of Baltimore as opposed to the glorified environs

23   of Washington in terms of those billable rates, and

24   sometimes that becomes somewhat humorous.  I see

25   defense counsel laughing about that.

1          When it comes to attorneys' fees there, the

2     distance becomes much shorter it seems in terms of

3     discussion about hourly rates.  Baltimore is indeed

4     nothing more than a suburb of Washington when we reach

5     those discussions, but that's another matter.

6          In all seriousness -- we're laughing here -- in

7     all seriousness, I really will want an itemization,

8     and I would certainly hope that you are able to do

9     that for me.

10         MR. MURPHY:  Yes, sir.  I would note, I believe

11    in the case you have with Mr. Wolf, he didn't have

12    those time sheets filed.

13         THE COURT:  I think that's right.  I think in

14    all candor, as I recall, with that settlement, it was

15    one-third of $206,000, and I was confident, in terms

16    of the overall nature of that case, in light of the

17    attorneys' fees involved, I didn't think it was really

18    necessary.  We're talking about a lot more money here.

19         MR. MURPHY:  Yes, sir.

20         THE COURT:  $385,000 is --

21         MR. MURPHY:  I'm a very mindful of that, Judge.

22    That's why I tried to do my homework.

23         THE COURT:  I'm sure you have.  I understand.  I

24    would want that.  I just think that's --

25         Plus the fact, you say that you get phone calls

1        from Class Members, and you anticipate phone calls

2        from Class Members on the issue of attorneys' fees.

3        That will certainly make your response much easier to

4        say that Judge Bennett is going to require us to

5        submit time sheets, you know, to the tenth of an hour

6        in terms of what time we have spent.  He'll be looking

7        at that, and it's not a given that $385,000 is going

8        to be awarded in attorneys' fees.

9              MR. MURPHY:  Yes, sir.

10             THE COURT:  Obviously you understand that.

11             MR. MURPHY:  Absolutely, Judge.

12             THE COURT:  Okay.  Anything further, Mr. Murphy,

13       on that?

14             MR. MURPHY:  No, sir.

15             THE COURT:  Thank you very much.

16             Mr. Gilman or Mr. Bierbower, do you have

17       anything further you want to add?

18             MR. GILMAN:  Your Honor, I'm happy to address

19       any of the issues that you previously addressed if you

20       think that will be helpful.

21             THE COURT:  One thing I would just note is that

22       just as I certainly am going to expect Mr. Murphy, as

23       an officer of the court, and I'm sure he will, to

24       abide by his representation in terms of assistance to

25       Class Members if there are difficulties with credit

1    reporting agencies in terms of following up, I would

2    certainly hope --

3         As I've said, Mr. Gilman, the only thing that

4    does concern me is --

5         It's one thing to commit not to issue Form

6    1099Cs.  It's another thing for the one hand giveth

7    and the other hand taketh away, because to the extent

8    that there is tax advice rendered to Navy Federal

9    Credit Union and filings with the IRS that suddenly

10   create this storm with the IRS in terms of the taxable

11   effect of an event, I don't want to see the situation

12   where Navy Federal Credit Union just puts up their

13   hands and says well, you're right, we did write it off

14   here, and we view it one way.  Then on the other way,

15   we didn't issue a 1099 because we weren't permitted to

16   under the Class Action Settlement Agreement in the

17   Federal Court in Baltimore.

18        I mean I don't want to see these people hung out

19   to dry over a "taxable event" when clearly, in their

20   view, it is not a taxable event.  I, myself, just --

21        There's nothing more dangerous than judges and

22   lawyers who aren't tax experts opining on tax law.

23   But I, myself, have questions whether it's a taxable

24   event or not in that the very nature of this lawsuit,

25   this Class Action is the allegedly improper assessment

1      of deficiencies.

2              Correct, Mr. Murphy, that's the thrust of it?

3              MR. MURPHY:  Yes, sir.

4              THE COURT:  So if they say there's no deficiency

5      in the first place, and so to waive a deficiency

6      doesn't create a taxable event, I would think any

7      experienced lawyer could come up with a decent

8      argument before a tax court within a period of 48

9      hours to make that presentation.

10              I just don't want to see the Class Members be

11      hung out there.  So that all of a sudden they are all

12      getting these notices and no one is really trying to

13      step forward and let the Internal Revenue Service know

14      the nature of the Agreement.

15              I understand the very careful wording here on

16      page 12.  Your point is well taken, and I do

17      appreciate the time you've obviously spent on this in

18      terms of the phrase, discharge by operation of law,

19      and the implications of that in the IRS regs, and I

20      understand that.  That's where I would hope that your

21      law firm steps up, if necessary, on that.

22              MR. GILMAN:  Right.  Your Honor, I just want to

23      make sure that the Court isn't under a

24      misunderstanding here, because I know this is

25      complicated.  So I just want to tell you what Navy

1    Federal's position in this lawsuit is.

2         THE COURT:  Sure.

3         MR. GILMAN:  Our position is that Ms. Whitaker

4    and the other Class Members owe Navy Federal money.

5         THE COURT:  I know that.  I understand.

6         MR. GILMAN:  That under Virginia law, which

7    govern these contracts, even despite the allegations

8    of an improper notice, we are allowed to still get

9    that money.

10        THE COURT:  I understand that.  I understand.

11        And your position is that you are waiving that,

12   and you are waiving those deficiencies.

13        MR. GILMAN:  That's right.  That's what we

14   agreed to do as part of this settlement.

15        THE COURT:  Right.

16        MR. GILMAN:  And that as a matter of the tax

17   law, which is different from the Article 9 laws, that

18   that would operate as a discharge under operation of

19   law.

20        THE COURT:  I understand that.  I guess my point

21   is -- I understand that, and you actually confirmed

22   the thought that I had originally when I was looking

23   at this, which was that this is not nailed down

24   totally; but I don't know that it can be nailed down

25   any more because you have two different spheres of

1    operation here.

2         The one thing I didn't pick up in preparing this

3    hearing that you've assisted me with is the importance

4    of the phrase by operation of law.  I suspect that

5    covers it.  Let's hope it covers it.

6         Certainly, in my approving this, providing

7    preliminary approval, if someone from the Internal

8    Revenue Service wants to look at the transcript of

9    these proceedings down the road, it's my view that

10   there isn't any income that is created here as to

11   these Class Members, and that's part of what's

12   understood here.

13        MR. GILMAN:  We appreciate that, Your Honor.

14        The only thing I do want to add is that we are

15   here today for preliminary approval, not a final

16   approval.  The standard for preliminary approval is

17   whether this settlement is within the range of

18   reasonableness.

19        The relief that is provided to the Class Members

20   and the agreements that Mr. Murphy has laid out and

21   explained in great detail, I think it's clearly within

22   the range of reasonableness, and we think that the

23   appropriate next step is to give notice to the Class

24   Members and let them decide if they want to object, if

25   they want to opt out, so we can move forward with

1    getting them the relief that is part of this

2    settlement.

3         THE COURT:  I understand.  I totally concur with

4    you, Mr. Gilman.  The point is well taken.

5         MR. GILMAN:  The only other thing, Your Honor, I

6    want to do -- if I may approach?

7         THE COURT:  Certainly.

8         MR. GILMAN:  Exhibit A to the Settlement

9    Agreement was the preliminary approval order.  I have

10   two copies of this.  We've actually revised it

11   slightly.

12        THE COURT:  Okay.  All right.  Thank you very

13   much.

14        MR. GILMAN:  I can just tell you what the

15   revisions are.

16        THE COURT:  All right.

17        MR. GILMAN:  Other than a couple of stray commas

18   and things like that, there are two main changes.  The

19   first one is in paragraph seven, which is on page six.

20   Again, it's fairly minor.

21        But at the time we agreed to the settlement --

22   we had.

23        THE COURT:  Are these identical documents you

24   just handed me?

25        MR. GILMAN:  Yes, they are.  They are.

1          On page six, paragraph seven, the paragraph on

2     notice --

3          THE COURT:  Yes.

4          MR. GILMAN:  -- when we originally submitted the

5     papers, we hadn't agreed fully as to how the notice

6     would go out.  As Mr. Murphy said earlier, we have now

7     agreed.  We reached an agreement with First Class,

8     Inc. to do the notices.

9          You know, we're going to give them the Class

10    list.  They are going to take care of printing and

11    mailing the notices to the Class Members, getting any

12    back, and re-mailing, if necessary.  So that's the one

13    change there.

14         THE COURT:  All right.  Thank you.

15         MR. GILMAN:  Then the next change is on page

16    seven, the next paragraph, paragraph eight, CAFA

17    notice.

18         THE COURT:  Yes.

19         MR. GILMAN:  And that just relates to --

20         We filed, I believe it was Friday of last week,

21    a certification, as required by the settlement, that

22    Navy Federal provided the notice to the United States

23    Attorney General and the State Attorney General, as

24    required by 28 U.S.C. 1715.  Since that has been done

25    now, and we provided the declaration attesting to

1    that, we added that paragraph as well.

2         THE COURT:  All right.  Well, I read this

3    before.  Other than that, it's the same as was before?

4         MR. GILMAN:  There are a couple of commas that

5    have been changed, added, and cleaned up the document.

6    But otherwise, it's identical.

7         THE COURT:  All right.  So before me now is the

8    proposed order granting preliminary approval to

9    Proposed Class Settlement.  And in the abundance of

10   caution, I've got several stacks of things that have

11   been submitted to me here.

12        Are we ready now for me to sign this order from

13   the point of view of counsel?

14        MR. MURPHY:  Yes, Your Honor.

15        MR. GILMAN:  Yes, Your Honor.

16        THE COURT:  Okay.  All right.  I am satisfied in

17   terms of the inquiry I have made here in terms of, as

18   Mr. Gilman has aptly noted, in the parameters of the

19   preliminary approval, the range of reasonableness.  So

20   I'm going to sign this order today.

21        I do appreciate the courage of counsel coming in

22   for the Class Members on April Fools' Day to present

23   this, because I'm sure you are going to generate some

24   e-mails that are going to be in response to that.  But

25   that will be your problem, Mr. Murphy, not nine.

1          Certainly there will be clearly you jest, I

2     suspect you're going to get.

3          MR. GILMAN:  Your Honor, I just want to call

4     your attention to one thing in the order.  There's one

5     blank that you --

6          THE COURT:  Yeah.  I feel like I'm missing

7     something.  That's right, a fairness hearing, yes.

8          MR. GILMAN:  Page three.

9          THE COURT:  Yes.  In terms of the date of the

10    fairness hearing, I'll be glad to entertain some

11    suggestions here.  It's 60 days, right?

12         MR. GILMAN:  My rule of thumb is typically 75 to

13    90 days --

14         THE COURT:  Okay.  Let's do 90 days.  Let's do

15    90 days.

16         MR. GILMAN:  -- from the notice.  The notice

17    will go out no later than May 15th.  That will be

18    approximately August 15th.

19         THE COURT:  Okay.  I'll be glad to do that, Mr.

20    Gilman, except for some reason, whatever is scheduled

21    in August doesn't ever seem to go.  When you schedule

22    something in the middle of August, there's always a

23    problem.

24         I'm more than prepared to schedule it in the

25    middle of August.  That's fine with me, as long as

1    everyone represents we can go forward in the middle of

2    August.

3           MR. GILMAN:  Well, Your Honor, we could push it

4    either to the beginning of August, which typically is

5    easier for people, or early September, if that's

6    easier.

7           THE COURT:  No.  That's fine with me.  I'm

8    around in the middle of August.  I would prefer it

9    middle to late August.  I'm just trying to make sure

10   that we don't get calls from counsel.

11          You know, when it comes to scheduling,

12   everything is fine until you get to the month of

13   August.  Then ultimately, lawyers forget to check with

14   the most important source, that is, his or her spouse

15   with respect to matters being scheduled in August.

16   There's always a problem it seems.  Inevitably,

17   someone says I really overlooked the fact that I

18   promised my spouse X in August.

19          So I'm inclined to put it in sometime between

20   August 15th and August 31st, if that's agreeable to

21   everyone.

22          MR. GILMAN:  I know for a fact that the last

23   week of August would be fine with me.

24          THE COURT:  All right.

25          MR. MURPHY:  Judge, I'm good, except for the

1     last week of August.  I know that because my spouse

2     will remind me of that.

3          THE COURT:  That's fine.  Let your spouses know

4     that I spoke up for them here at this hearing.  I'm

5     looking out for Class Members here, as well as

6     spouses.  So I want to make sure that's reflected.

7          So we're good from like August 15th to August

8     25th; is that right?

9          MR. MURPHY:  Yes, sir.

10          MR. GILMAN:  Your Honor, the later in that

11     period would probably be better for me.

12          THE COURT:  All right.  I don't have my computer

13     turned on up here, Katina.  Give me some suggestions.

14          THE CLERK:  August 23rd?

15          THE COURT:  The week of Monday, August 23rd?

16          THE CLERK:  Yes.

17          MR. GILMAN:  August 23rd would be perfect.

18          THE COURT:  That is a Monday?

19          THE CLERK:  That is a Monday.

20          THE COURT:  All right.  We'll put it in for --

21     how about 3 o'clock?

22          MR. MURPHY:  Yes, sir.

23          MR. GILMAN:  Your Honor, we'll put that date and

24     time in the notice.

25          THE COURT:  All right.  I've signed the order.

1       I'll put it right here in the order.

2           A fairness hearing shall take place before the

3       undersigned at 3:00 p.m. on August 23, 2010.

4           All right.  If there are no other changes in

5       terms of what I've already read before in terms of the

6       previous submission, other than the changes you have

7       made, Mr. Gilman, this has now been signed.

8           I feel like I've got to sign something else

9       here.

10          Katina, give my a copy of this later.

11          Is there anything else I am missing here that

12      I've got to sign up here from your point of view?

13          MR. MURPHY:  No, sir.

14          THE COURT:  Okay.  Anything further from the

15      point of view of the plaintiff on this?

16          MR. MURPHY:  No, sir.

17          THE COURT:  Mr. Murphy?

18          MR. MURPHY:  No, sir.

19          THE COURT:  Mr. Gilman, anything further from

20      the point of view of the defendants?

21          MR. GILMAN:  No.  Thank you very much, Your

22      Honor.

23          THE COURT:  Well, thank you all very much.  I

24      think that covers it.  Thank you for your very

25      thorough presentation.

1          Mr. Murphy, you are certainly allowed, when you

2    get phone calls from Class Members, to opine on how

3    tough that judge is going to be on legal fees.  It

4    might make your job easier.

5          MR. MURPHY:  Judge, I know.  I don't think I've

6    had a preliminary approval hearing that lasted over an

7    hour.

8          THE COURT:  Well, I think in all candor my view

9    of these is, no disrespect to any of my fellow

10   colleagues around the country, I do think that

11   sometimes there's a tendency for us to say okay, fine.

12   Then when it gets to the meat of it, suddenly there

13   are some issues.

14         My view is to flesh it out early.  So I really

15   try to spend time on these and, believe it or not,

16   actually read all this stuff.

17         As you know, federal judges learn that we don't

18   measure things by the page anymore.  We measure it by

19   the pound here.  The electronic revolution has caused

20   e-mails to cause things to be measured in pound

21   volume, no longer page number.

22         But I read it very thoroughly and there were

23   some concerns I had, and I do appreciate the

24   thoroughness with which you all have prepared for this

25   hearing.

1          MR. MURPHY:  Judge, I'm glad I filed a fairly

2     full plenary memorandum.  I anticipated you were going

3     to have these concerns.  I am fully aware of what your

4     instructions are with respect to the fee application.

5          THE COURT:  That's good.

6          MR. MURPHY:  I'm sensitive to it.  I'm mindful

7     to it.

8          THE COURT:  Mr. Murphy, when it comes to legal

9     fees, it reminds me of a joke that I'm sure you've all

10    heard.  A lawyer dies and goes to heaven.  He greets

11    St. Peter there.  He says St. Peter, I'm way too young

12    to be up here.  St. Peter said no, you've lived a full

13    life, you're due up here.

14         He says St. Peter, I'm only 57 years old.  St.

15    Peter says no, no, no, you're not 57.  He says we have

16    you down here that you're 98.

17         He said I knew you made a mistake.  You've got

18    the wrong guy.  I'm not meant to be up here.  St.

19    Peter looks at the lawyer and says according to your

20    time sheets, you're 98, not 57, in terms of the time

21    you billed clients.

22         So you never know.  But I think it's an

23    important matter, and seriously, you can let the Class

24    Members know I am going to look very closely at the

25    time sheets submitted.

1          I'm not prejudging it one way or the other, just

2     so you know that I give very close scrutiny to it.

3          MR. MURPHY:  Yes, sir.

4          THE COURT:  Okay.  With that, this court stands

5     in recess until 3:30.

6          (The proceedings concluded.)

1          REPORTER'S CERTIFICATE

2          I hereby certify that the foregoing transcript in

3     the matter of Donna L. Whitaker,

4     Plaintiff/Counter-Defendant vs. Navy Federal Credit

5     Union, Defendant/Counterclaimant, Civil Action No.

6     RDB-09-2288, before the Honorable Richard D. Bennett,

7     United States District Judge, on April 1, 2010 is true

8     and accurate.

9

10                    _____

11                    Gail A. Simpkins

12                    Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$20** [1] - 22:2
**$206,000** [3] - 12:23, 19:14, 39:15
**$2500** [1] - 19:14
**$28** [1] - 20:23
**$385,000** [4] - 4:16, 17:20, 39:20, 40:7
**$5,000** [4] - 4:15, 21:2, 22:5, 36:16
**$50** [1] - 7:6
**$50,00** [1] - 8:2
**$50,000** [2] - 4:14, 36:20
**$600,060** [1] - 21:5
**$65,000** [1] - 13:7
**$990,000** [1] - 20:25

## 0

**06-707** [2] - 21:9, 21:25
**07-03477** [1] - 20:11

## 1

**1** [2] - 1:10, 55:7
**1099** [14] - 24:7, 24:12, 24:15, 26:1, 26:6, 26:8, 26:11, 30:14, 30:17, 31:16, 32:15, 33:2, 34:20, 41:15
**1099C** [2] - 32:1, 32:20
**1099Cs** [1] - 41:6
**1099s** [1] - 30:7
**12** [3] - 8:15, 31:18, 42:16
**12-1021(k)(4** [1] - 18:24
**15** [1] - 31:21
**15th** [4] - 48:17, 48:18, 49:20, 50:7
**1715** [1] - 46:24
**18** [2] - 23:13, 23:14

## 2

**2** [1] - 10:18
**2,169** [2] - 20:24, 21:6
**2,550** [1] - 21:21
**2.5** [1] - 22:3
**200,000** [1] - 13:3
**2010** [3] - 1:10, 51:3, 55:7
**23** [3] - 5:11, 37:11, 51:3

## 23rd etc.

**23rd** [3] - 50:14, 50:15, 50:17
**25th** [1] - 50:8
**28** [1] - 46:24
**29** [1] - 23:14

## 3

**3** [1] - 50:21
**308** [1] - 12:22
**31st** [1] - 49:20
**3:00** [1] - 51:3
**3:30** [1] - 54:5

## 4

**48** [1] - 42:8

## 5

**57** [3] - 53:14, 53:15, 53:20

## 6

**60** [1] - 48:11
**65,000** [1] - 13:3
**6900** [1] - 28:18

## 7

**7,000** [3] - 28:15, 28:16, 28:18
**75** [1] - 48:12

## 8

**8,000** [1] - 7:8

## 9

**9** [9] - 7:24, 17:7, 17:12, 17:14, 18:23, 20:2, 20:12, 23:17, 43:17
**9-613** [1] - 6:15
**9-614** [4] - 5:21, 5:22, 5:25, 6:15
**9-623** [1] - 6:10
**9-625** [1] - 6:24
**90** [3] - 48:13, 48:14, 48:15
**98** [2] - 53:16, 53:20

## A

**abide** [1] - 40:24
**ability** [2] - 8:11, 23:18
**able** [4] - 3:18, 18:6, 22:6, 39:8
**above-entitled** [1] - 1:12
**absolutely** [1] - 40:11
**abundance** [1] - 47:9
**accordance** [1] - 37:11
**accorded** [1] - 8:6
**according** [1] - 53:19
**account** [1] - 10:20
**accounting** [2] - 6:7
**accounts** [1] - 7:12
**accurate** [1] - 55:8
**accurately** [1] - 11:14
**Act** [6] - 9:10, 11:13, 18:22, 19:6, 22:8, 22:19
**Action** [7] - 3:22, 4:4, 22:8, 34:18, 41:16, 41:25, 55:5
**action** [5] - 12:10, 14:22, 14:24, 22:10, 27:10
**actions** [6] - 7:23, 8:1, 11:5, 17:6, 17:8, 17:12
**active** [1] - 11:23
**add** [2] - 40:17, 44:14
**added** [3] - 30:24, 47:1, 47:5
**additional** [1] - 13:23
**additionally** [3] - 6:22, 7:11, 19:4
**Address** [1] - 15:22
**address** [4] - 5:7, 14:11, 35:2, 40:18
**addressed** [2] - 9:8, 40:19
**addressing** [1] - 37:4
**adequately** [1] - 9:8
**administration** [3] - 15:14, 15:15, 15:21
**administrator** [1] - 15:17
**advice** [1] - 41:8
**advised** [1] - 23:23
**Afternoon** [1] - 2:13
**afternoon** [1] - 2:15
**age** [1] - 9:5
**agencies** [8] - 7:21, 8:17, 9:7, 10:23, 10:25, 25:10, 28:6, 41:1
**agencies'** [1] - 8:25

**agency** [6] - 9:11, 9:25, 10:1, 10:3, 11:11, 14:20
**agree** [5] - 32:4, 32:8, 32:9, 33:1, 33:7
**agreeable** [1] - 45:6
**agreed** [13] - 11:8, 11:17, 15:14, 15:16, 17:19, 17:21, 17:25, 25:8, 26:15, 43:14, 45:21, 46:5, 46:7
**agreeing** [1] - 17:25
**Agreement** [16] - 8:6, 8:21, 11:19, 12:15, 15:13, 19:24, 26:17, 26:20, 26:25, 30:25, 31:19, 32:3, 32:5, 41:16, 42:14, 45:9
**agreement** [2] - 14:5, 46:7
**agreements** [5] - 4:10, 16:18, 16:24, 25:23, 44:20
**ahead** [3] - 20:22, 36:6, 36:7
**akin** [1] - 27:4
**allegations** [1] - 43:7
**allegedly** [1] - 41:25
**allowed** [2] - 43:8, 52:1
**almost** [1] - 6:19
**amend** [1] - 8:18
**AmeriCredit** [4] - 21:7, 21:17, 21:18, 21:19
**amount** [2] - 17:5, 21:2
**amounts** [2] - 4:10, 25:12
**analysis** [2] - 25:19, 34:21
**analyzed** [1] - 9:14
**analyzing** [1] - 25:3
**angle** [1] - 31:13
**angry** [1] - 26:21
**answer** [1] - 27:18
**anticipate** [3] - 37:3, 37:4, 40:1
**anticipated** [1] - 53:2
**apologize** [4] - 3:7, 3:16, 3:19, 16:20
**apologizing** [1] - 3:6
**appear** [2] - 9:3, 29:3
**application** [9] - 14:8, 16:5, 17:19, 18:3, 18:4, 21:1, 36:25, 37:13, 53:4
**Application** [1] - 37:10
**applies** [1] - 16:17
**appoint** [1] - 5:1

**appreciate** [4] - 42:17, 44:13, 47:21, 52:23
**approach** [1] - 45:6
**appropriate** [1] - 44:23
**approval** [26] - 3:21, 4:4, 4:24, 4:25, 5:5, 9:17, 13:13, 13:20, 13:21, 14:2, 14:6, 16:6, 17:21, 23:23, 25:22, 37:25, 38:13, 44:7, 44:15, 44:16, 45:9, 47:8, 47:19, 52:6
**approve** [3] - 5:2, 12:15, 17:5
**approves** [1] - 26:20
**approving** [1] - 44:6
**April** [3] - 1:10, 47:22, 55:7
**aptly** [1] - 47:18
**area** [1] - 38:22
**argue** [3] - 23:17, 23:24, 24:5
**argued** [1] - 12:6
**argument** [2] - 5:22, 42:8
**Army** [2] - 4:15, 36:20
**Article** [9] - 7:24, 17:7, 17:12, 17:14, 18:23, 20:2, 20:12, 23:17, 43:17
**aspect** [4] - 7:18, 11:19, 19:21, 25:16
**aspects** [1] - 15:12
**asserted** [3] - 5:13, 5:20, 16:11
**assessed** [1] - 29:13
**assessment** [1] - 41:25
**assigned** [1] - 38:3
**assistance** [4] - 14:3, 14:23, 25:15, 40:24
**assisted** [1] - 44:3
**assumed** [1] - 28:7
**assurance** [2] - 26:6, 26:7
**assure** [2] - 26:1, 26:2
**attach** [1] - 11:10
**attention** [2] - 12:18, 48:4
**attesting** [1] - 46:25
**attorney** [1] - 37:8
**Attorney** [1] - 46:23
**attorneys** [2] - 18:12, 18:14
**attorneys'** [17] - 14:7, 16:6, 17:16, 17:18, 17:20, 18:5, 22:5, 36:13, 36:25, 37:1,

38:4, 38:6, 38:13, 39:1, 39:17, 40:2, 40:8
**Attorneys'** [1] - 37:11
**August** [21] - 48:18, 48:21, 48:22, 48:25, 49:2, 49:4, 49:8, 49:9, 49:13, 49:15, 49:18, 49:20, 49:23, 50:1, 50:7, 50:14, 50:15, 50:17, 51:3
**Auto** [3] - 20:11, 23:10, 23:11
**award** [5] - 19:15, 21:2, 22:5, 36:15, 36:16
**awarded** [1] - 40:8
**aware** [3] - 4:22, 18:2, 53:3

# B

**backwater** [1] - 38:21
**bad** [3] - 9:1, 34:3, 34:9
**balance** [2] - 10:12, 33:23
**balances** [2] - 31:24, 32:10
**Baltimore** [4] - 1:10, 38:22, 39:3, 41:17
**Bank** [7] - 12:12, 12:21, 13:17, 18:19, 19:7, 19:8, 19:17
**bank** [6] - 9:19, 34:3, 34:5, 34:8, 34:10, 34:11
**bar** [1] - 15:18
**barrel** [1] - 31:8
**basis** [1] - 37:21
**become** [1] - 28:8
**becomes** [2] - 38:24, 39:2
**beginning** [1] - 49:4
**bench** [2] - 3:8, 3:12
**benefit** [1] - 24:20
**Bennett** [3] - 1:13, 40:4, 55:6
**Bernard** [1] - 1:19
**Bernie** [1] - 2:11
**best** [3] - 17:3, 24:25, 30:11
**better** [1] - 50:11
**between** [7] - 13:13, 19:7, 22:9, 28:15, 28:17, 38:21, 49:19
**beyond** [1] - 16:12
**BIERBOWER** [1] - 2:20

**Bierbower** [5] - 1:22, 2:20, 31:4, 31:10, 40:8
**billable** [1] - 38:23
**billed** [1] - 53:21
**bind** [2] - 16:13, 27:9
**bit** [1] - 32:24
**Blake** [1] - 20:20
**blank** [1] - 48:5
**board** [1] - 23:6
**boot** [1] - 22:18
**briefly** [1] - 5:6
**bring** [2] - 9:12, 12:17
**broader** [1] - 16:17
**Bruner** [1] - 30:2
**burden** [2] - 6:19, 6:20
**business** [1] - 34:25

# C

**Cabin** [1] - 7:20
**CAFA** [3] - 5:17, 22:7, 46:16
**calendar** [1] - 3:17
**cancellation** [14] - 25:14, 27:20, 27:25, 29:10, 29:19, 32:12, 32:22, 33:1, 33:8, 34:1, 34:7, 34:12, 35:5, 35:13
**candor** [2] - 39:14, 52:8
**cannot** [1] - 24:17
**Capital** [2] - 20:10, 23:10, 23:11
**capped** [1] - 14:5
**caption** [2] - 20:18, 21:11
**care** [2] - 31:11, 46:10
**careful** [1] - 42:15
**carry** [1] - 28:7
**case** [51] - 1:12, 2:2, 3:22, 6:16, 7:25, 12:11, 12:16, 12:20, 12:24, 13:4, 13:6, 13:16, 16:9, 16:18, 17:10, 17:14, 18:11, 18:17, 19:5, 19:6, 19:13, 19:16, 20:3, 20:9, 20:10, 20:13, 20:16, 20:17, 20:19, 20:23, 21:7, 21:13, 21:21, 21:23, 22:2, 22:13, 22:21, 23:4, 23:9, 23:10, 23:17, 24:5, 27:16, 27:17, 30:2, 30:4, 37:24, 38:1, 39:11, 39:16
**Case** [2] - 20:11, 21:9

cases [14] - 13:10, 14:9, 15:9, 17:17, 18:6, 18:14, 19:9, 22:6, 22:11, 22:20, 23:20, 24:3, 24:4, 33:24
**caused** [1] - 52:19
**causes** [1] - 31:14
**caution** [1] - 47:10
**certain** [1] - 28:23
**certainly** [9] - 10:7, 39:8, 40:3, 40:22, 41:2, 44:6, 45:7, 48:1, 52:1
**CERTIFICATE** [1] - 55:1
**certification** [1] - 46:21
**certify** [1] - 55:2
**change** [2] - 46:13, 46:15
**Change** [1] - 15:22
**changed** [1] - 47:5
**changes** [3] - 45:18, 51:4, 51:6
**characterization** [1] - 16:13
**charged** [1] - 7:1
**check** [1] - 49:13
**Chicago** [1] - 15:17
**Chicken** [1] - 38:1
**choice** [2] - 6:16, 20:5
**CIVIL** [1] - 1:6
**Civil** [1] - 55:5
**civil** [2] - 2:5, 6:25
**claim** [2] - 9:12, 17:14
**claims** [6] - 5:7, 5:13, 5:19, 7:24, 16:10, 19:4
**clarifying** [1] - 26:14
**class** [9] - 7:23, 8:1, 12:10, 12:22, 17:6, 17:7, 17:12, 20:24, 22:9
**Class** [84] - 3:22, 4:4, 4:13, 4:16, 5:1, 5:3, 5:11, 7:6, 7:8, 7:10, 7:13, 7:17, 8:7, 8:10, 8:16, 8:18, 9:16, 9:22, 10:21, 10:24, 11:1, 11:2, 11:4, 11:20, 11:22, 11:23, 14:15, 14:23, 14:24, 15:16, 16:14, 17:3, 18:12, 18:13, 18:14, 19:13, 19:15, 19:18, 21:4, 21:21, 22:8, 23:18, 24:6, 24:11, 24:25, 25:5, 25:17, 27:9, 27:10, 28:10,

28:11, 28:12, 28:25, 30:7, 30:13, 30:14, 30:16, 34:18, 35:6, 35:18, 37:4, 37:6, 38:3, 40:1, 40:2, 40:25, 41:16, 41:25, 42:10, 43:4, 44:11, 44:19, 44:23, 46:7, 46:9, 46:11, 47:9, 47:22, 50:5, 52:2, 53:23
**Classes** [1] - 11:1
**Clay** [1] - 13:16
**cleaned** [1] - 47:5
**clearance** [1] - 7:15
**cleared** [2] - 8:12, 9:18
**clearly** [5] - 31:15, 35:17, 41:19, 44:21, 48:1
**CLEC** [6] - 18:22, 18:24, 19:23, 20:1, 20:7, 20:11
**Clerk** [1] - 2:2
**CLERK** [4] - 2:4, 50:14, 50:16, 50:19
**client** [2] - 33:13, 33:16, 34:24
**clients** [2] - 7:1, 53:21
**close** [1] - 54:2
**Closed** [1] - 18:21
**closely** [1] - 53:24
**Code** [2] - 6:11, 6:18
**collateral** [1] - 6:2
**colleagues** [1] - 52:10
**comfortable** [1] - 30:10
**coming** [1] - 47:21
**commas** [2] - 45:17, 47:4
**Commercial** [2] - 6:11, 6:18
**commercially** [1] - 6:21
**commit** [1] - 41:5
**commonality** [1] - 27:8
**companies** [1] - 23:9
**compare** [1] - 18:14
**compared** [1] - 17:17
**complete** [1] - 7:16
**complicated** [1] - 42:25
**comply** [3] - 6:14, 9:20, 19:1
**computer** [1] - 50:12
**concern** [4] - 33:9, 33:10, 33:12, 41:4
**concerned** [5] - 26:25, 27:1, 33:22, 34:15,

34:23
**concerns** [2] - 52:23, 53:3
**concluded** [1] - 54:6
**concur** [2] - 38:5, 45:3
**confident** [2] - 23:24, 39:15
**confirmed** [1] - 43:21
**conformance** [1] - 38:10
**consequence** [1] - 24:12
**consider** [1] - 18:8
**consideration** [2] - 16:1, 29:23
**consistent** [2] - 35:17, 36:4
**consulted** [1] - 7:17
**Consumer** [2] - 19:6, 22:19
**consumer** [10] - 8:18, 9:11, 9:13, 9:24, 10:23, 10:25, 11:9, 11:11, 13:8, 17:6
**contemporaneous** [1] - 37:20
**contend** [1] - 29:18
**continue** [1] - 11:4
**contracts** [5] - 23:7, 23:8, 23:12, 23:16, 43:7
**contrast** [1] - 18:16
**control** [2] - 6:17, 34:11
**conveying** [1] - 12:4
**copies** [1] - 45:10
**copy** [2] - 16:8, 51:10
**core** [1] - 33:11
**correct** [17] - 3:23, 4:17, 6:9, 16:19, 18:1, 19:19, 24:16, 25:14, 26:13, 28:15, 33:13, 33:14, 33:21, 35:3, 36:17, 36:21, 42:2
**correctly** [1] - 36:20
**corresponding** [1] - 34:5
**cost** [1] - 6:7
**costs** [2] - 15:15, 36:13
**Counsel** [6] - 5:1, 7:17, 10:21, 11:4, 19:13, 38:3
**counsel** [13] - 2:9, 3:23, 4:7, 10:25, 17:2, 24:22, 25:4, 29:18, 30:9, 38:25, 47:13, 47:21, 49:10
**country** [5] - 3:10,

6:12, 6:19, 17:7, 52:10

**County** [2] - 5:16, 13:16

**couple** [3] - 22:24, 45:17, 47:4

**courage** [1] - 47:21

**court** [12] - 5:16, 5:18, 17:8, 18:15, 22:9, 29:7, 29:20, 30:4, 36:13, 40:23, 42:8, 54:4

**COURT** [127] - 1:1, 2:2, 2:15, 3:1, 3:5, 4:1, 4:20, 5:9, 8:4, 8:13, 8:23, 10:1, 10:3, 10:7, 11:4, 12:19, 12:24, 13:4, 13:20, 13:22, 14:1, 14:11, 15:3, 15:6, 15:11, 16:21, 16:25, 17:24, 19:17, 20:13, 20:16, 20:18, 20:21, 21:3, 21:10, 21:13, 21:16, 21:18, 21:20, 21:23, 22:1, 24:14, 24:17, 25:4, 25:9, 26:5, 26:9, 26:11, 26:18, 26:24, 27:14, 28:16, 28:19, 29:7, 29:16, 30:24, 31:3, 31:20, 31:22, 32:6, 32:12, 32:16, 33:6, 33:9, 33:15, 33:18, 33:22, 34:15, 35:9, 35:16, 35:22, 36:1, 36:5, 36:14, 36:16, 36:19, 36:24, 37:14, 37:18, 37:23, 38:9, 38:15, 38:19, 39:13, 39:20, 39:23, 40:10, 40:12, 40:15, 40:21, 42:4, 43:2, 43:5, 43:10, 43:15, 43:20, 45:3, 45:7, 45:12, 45:16, 45:23, 46:3, 46:14, 46:18, 47:2, 47:7, 47:16, 48:6, 48:9, 48:14, 48:19, 49:7, 49:24, 50:3, 50:12, 50:15, 50:18, 50:20, 50:25, 51:14, 51:17, 51:19, 51:23, 52:8, 53:5, 53:8, 54:4

**Court** [21] - 1:25, 2:5, 2:7, 3:20, 4:25, 11:21, 14:4, 14:10, 14:12, 15:25, 17:18, 17:23, 18:7, 23:23,

26:1, 26:2, 26:19, 41:17, 42:23, 55:12

**Court's** [5] - 12:18, 14:6, 16:1, 17:15, 17:20

**cover** [1] - 36:10

**covers** [3] - 44:5, 51:24

**create** [3] - 9:3, 41:10, 42:6

**created** [1] - 44:10

**creation** [1] - 34:6

**credit** [39] - 4:11, 4:12, 7:15, 7:21, 7:25, 8:4, 8:8, 8:9, 8:12, 8:15, 8:17, 8:24, 9:7, 9:18, 10:1, 10:3, 10:13, 11:12, 11:18, 12:2, 13:9, 14:13, 14:15, 14:20, 17:10, 17:11, 19:9, 19:11, 19:24, 20:4, 22:21, 22:22, 22:23, 23:20, 25:10, 28:5, 30:9, 40:25

**CREDIT** [1] - 1:7

**Credit** [18] - 2:6, 4:3, 5:21, 9:2, 9:10, 11:13, 11:16, 12:5, 18:21, 23:5, 31:14, 34:16, 34:20, 35:1, 41:9, 41:12, 55:4

**creditor** [1] - 6:20

**Crescent** [6] - 12:12, 12:21, 18:19, 19:7, 19:8, 19:17

**Crowder** [2] - 21:7, 21:14

**cured** [1] - 12:3

**cuts** [1] - 34:9

**cy** [2] - 4:14, 36:20

**cynicism** [1] - 9:6

## D

**Dade** [1] - 23:11

**damages** [7] - 6:23, 6:25, 8:23, 22:18, 23:19, 23:20, 24:2

**dangerous** [1] - 41:21

**database** [1] - 15:23

**date** [4] - 5:5, 6:5, 48:9, 50:23

**days** [5] - 15:8, 48:11, 48:13, 48:14, 48:15

**deadlines** [1] - 5:3

**deal** [3] - 12:7, 15:8, 25:2

**dealing** [3] - 9:16, 13:18, 15:9

**debt** [1] - 35:12

**debts** [2] - 24:8, 35:6

**decent** [1] - 42:7

**decide** [1] - 44:24

**declaration** [2] - 17:4, 46:25

**declarations** [3] - 37:12, 37:14, 38:14

**declared** [1] - 27:6

**deductibility** [1] - 34:4

**defendant** [2] - 4:2, 38:5

**DEFENDANT** [1] - 1:5

**Defendant** [2] - 1:17, 55:4

**DEFENDANT/ COUNTERCLAIMANT** [1] - 1:8

**Defendant/ Counterclaimant** [2] - 1:20, 55:5

**defendants** [1] - 51:20

**defense** [6] - 2:17, 4:7, 11:24, 15:18, 29:9, 38:25

**deficiencies** [4] - 7:6, 34:19, 42:1, 43:12

**deficiency** [18] - 4:9, 18:25, 19:3, 19:21, 20:24, 22:3, 22:14, 22:17, 24:13, 25:12, 27:22, 29:12, 29:14, 31:6, 31:24, 32:10, 42:4, 42:5

**definitely** [1] - 13:11

**Definition** [2] - 7:10, 7:13

**delete** [4] - 7:21, 8:25, 10:19

**deleted** [3] - 8:9, 8:20, 12:2

**deletion** [6] - 4:11, 4:12, 7:16, 7:25, 8:4, 10:17

**department** [1] - 25:3

**derogatory** [1] - 11:18

**despite** [2] - 30:11, 43:7

**detail** [1] - 44:21

**detailed** [1] - 17:3

**details** [1] - 16:5

**determination** [1] - 25:23

**dies** [1] - 53:10

**difference** [2] - 20:7, 38:21

**different** [5] - 18:23, 22:12, 23:8, 43:17, 43:25

**difficult** [1] - 22:23

**difficulties** [1] - 40:25

**difficulty** [3] - 12:4, 28:4, 35:18

**diligence** [3] - 7:17, 12:9, 18:18

**direct** [1] - 20:4

**directors** [1] - 23:1

**discern** [1] - 22:6

**discharge** [10] - 24:8, 30:19, 30:21, 31:25, 32:11, 32:18, 32:25, 35:11, 42:18, 43:18

**disclose** [3] - 6:1, 6:8, 10:11

**discuss** [1] - 7:5

**discussion** [2] - 38:21, 39:3

**discussions** [1] - 39:5

**disposition** [1] - 6:2

**disputed** [2] - 31:23, 32:10

**disrespect** [1] - 52:9

**distance** [1] - 39:2

**distinction** [4] - 12:17, 19:7, 22:9, 24:4

**distinctions** [1] - 24:3

**distributed** [3] - 19:18, 21:4, 21:6

**district** [2] - 5:18, 12:10

**DISTRICT** [2] - 1:1, 1:2

**District** [3] - 1:14, 18:7, 55:7

**division** [1] - 21:8

**document** [1] - 47:5

**documents** [1] - 45:23

**DOI** [1] - 30:19

**dollars** [1] - 12:25

**done** [14] - 3:2, 7:23, 8:1, 10:17, 10:22, 10:23, 14:9, 15:4, 19:5, 29:8, 30:15, 37:24, 46:24

**DONNA** [1] - 1:4

**Donna** [4] - 2:5, 2:12, 4:2, 55:3

**down** [5] - 21:10, 34:9, 43:23, 43:24, 44:9, 53:16

**dozens** [1] - 13:14

**drawn** [1] - 23:2

**dry** [1] - 41:19

**due** [4] - 7:17, 12:8, 18:17, 53:13

**duties** [1] - 10:21

**duty** [1] - 11:23

## E

**e-mails** [2] - 47:24, 52:20

**e-OSCAR** [1] - 10:16

**early** [3] - 3:8, 49:5, 52:14

**easier** [4] - 40:3, 49:5, 49:6, 52:4

**effect** [3] - 6:11, 34:10, 41:11

**effort** [2] - 4:12, 14:13

**efforts** [1] - 30:11

**eight** [1] - 46:16

**either** [3] - 11:23, 37:7, 49:4

**electronic** [2] - 37:21, 52:19

**electronically** [1] - 10:17

**Emergency** [3] - 4:15, 8:3, 36:21

**End** [1] - 18:21

**endeavor** [1] - 29:22

**enter** [1] - 10:19

**entertain** [1] - 48:10

**entitled** [1] - 1:12

**environs** [1] - 38:22

**Esquire** [5] - 1:18, 1:19, 1:21, 1:22, 1:22

**essentially** [2] - 3:21, 4:8

**etcetera** [3] - 32:2, 34:11

**Evan** [1] - 7:19

**event** [16] - 8:8, 8:14, 9:4, 24:24, 25:5, 26:4, 27:20, 27:23, 30:11, 34:13, 34:22, 41:11, 41:19, 41:20, 41:24, 42:6

**exact** [1] - 29:1

**exactly** [1] - 24:17

**example** [2] - 30:1, 34:2

**exceed** [1] - 23:14

**exceeded** [1] - 23:13

**except** [3] - 8:7, 48:20, 49:25

**exception** [2] - 35:8, 35:15

**exceptions** [3] - 30:21, 35:8

**exclude** [1] - 30:21

**excluded** [1] - 7:14

**Exhibit** [1] - 45:8

**expect** [1] - 40:22

**expense** [1] - 15:14

**experience** [3] - 13:12, 17:6, 27:5
**experienced** [1] - 42:7
**expert** [2] - 7:18, 7:19
**expertise** [1] - 33:19
**experts** [1] - 41:22
**explain** [1] - 17:12
**explained** [1] - 44:21
**explanation** [1] - 37:7
**extend** [1] - 16:11
**extent** [10] - 13:5, 25:4, 33:12, 33:23, 33:24, 34:2, 34:3, 34:8, 34:16, 41:7
**extraordinary** [1] - 22:12
**extremely** [1] - 11:20

**F**

**fact** [3] - 39:25, 49:17, 49:22
**factors** [1] - 7:4
**fail** [1] - 6:14
**failed** [2] - 6:1, 6:8
**failure** [3] - 8:17, 8:25, 22:15
**Fair** [2] - 9:10, 11:13
**fair** [1] - 16:12
**fairly** [2] - 45:20, 53:1
**Fairness** [1] - 22:8
**fairness** [6] - 10:5, 14:18, 18:8, 48:7, 48:10, 51:2
**faith** [1] - 9:1
**familiar** [2] - 10:15, 33:17
**far** [2] - 11:8, 16:13
**fashion** [1] - 8:25
**Federal** [35] - 2:6, 2:19, 2:21, 2:23, 2:25, 4:3, 5:14, 5:20, 6:8, 7:11, 8:19, 8:24, 9:2, 10:5, 14:16, 14:18, 15:14, 17:21, 17:24, 23:5, 26:8, 31:13, 31:25, 32:14, 32:19, 34:16, 34:20, 34:25, 35:7, 41:8, 41:12, 41:17, 43:4, 46:22, 55:4
**FEDERAL** [1] - 1:7
**federal** [3] - 3:9, 17:8, 52:17
**Federal's** [1] - 43:1
**fee** [3] - 14:8, 37:12, 53:4
**Fees** [1] - 37:11
**fees** [29] - 4:16, 12:19,

12:22, 12:24, 13:5, 13:6, 13:22, 13:23, 14:2, 14:5, 14:7, 16:6, 17:16, 17:18, 17:20, 18:5, 22:5, 36:13, 36:25, 37:1, 38:4, 38:6, 38:13, 39:1, 39:17, 40:2, 40:8, 52:3, 53:9
**fellow** [1] - 52:9
**felt** [1] - 30:25
**few** [1] - 4:6
**field** [2] - 10:19
**fight** [2] - 25:6, 31:11
**figure** [3] - 28:24, 38:19, 38:20
**figured** [1] - 24:2
**file** [1] - 11:6
**filed** [7] - 4:23, 5:15, 17:4, 18:20, 39:12, 46:20, 53:1
**files** [1] - 33:16
**filings** [3] - 33:16, 34:17, 41:9
**final** [8] - 5:4, 9:17, 12:15, 13:13, 25:22, 37:24, 38:13, 44:15
**finally** [1] - 3:12
**Finance** [4] - 8:21, 20:11, 23:10, 23:11
**finance** [3] - 16:18, 16:23, 23:9
**financial** [4] - 9:5, 9:6, 9:19, 34:18
**Financial** [2] - 21:8, 21:19
**financing** [1] - 4:10
**fine** [7] - 5:9, 48:25, 49:7, 49:12, 49:23, 50:3, 52:11
**firm** [3] - 21:1, 33:19, 42:21
**First** [1] - 46:7
**first** [10] - 18:17, 18:18, 27:19, 27:22, 29:12, 29:17, 35:12, 35:14, 42:5, 45:19
**Fist** [1] - 15:16
**fits** [1] - 35:14
**flag** [1] - 28:7
**flesh** [1] - 52:14
**Florida** [3] - 13:16, 23:13, 30:4
**flowed** [1] - 27:8
**follow** [2] - 25:11, 28:5
**follow-up** [1] - 28:5
**following** [1] - 41:1
**follows** [1] - 22:10
**Fools'** [1] - 47:22
**FOR** [1] - 1:2

**foregoing** [1] - 55:2
**forget** [1] - 49:13
**Form** [4] - 32:1, 32:20, 33:2, 41:5
**format** [1] - 10:18
**forms** [1] - 4:9
**forth** [1] - 3:11
**forward** [3] - 42:13, 44:25, 49:1
**four** [1] - 4:8
**fourth** [1] - 43:16
**Friday** [1] - 46:20
**friend** [1] - 12:12
**fulfill** [1] - 5:11
**full** [3] - 36:22, 53:2, 53:12
**fully** [2] - 46:5, 53:3
**fund** [3] - 19:14, 20:25, 22:4
**Fund** [2] - 4:15, 8:3
**furnished** [1] - 9:12
**furnisher** [1] - 11:15

**G**

**Gail** [2] - 1:25, 55:11
**General** [2] - 46:23
**generate** [1] - 47:23
**generated** [1] - 13:23
**generically** [1] - 5:23
**George's** [1] - 5:17
**germane** [2] - 6:19, 19:8
**GILMAN** [48] - 2:22, 16:16, 26:7, 26:10, 28:17, 31:18, 31:21, 31:23, 32:7, 32:14, 33:4, 33:7, 33:14, 33:17, 33:21, 34:14, 35:3, 35:10, 35:20, 35:23, 36:2, 40:18, 42:22, 43:3, 43:6, 43:13, 43:16, 44:13, 45:5, 45:8, 45:14, 45:17, 45:25, 46:4, 46:15, 46:19, 47:4, 47:15, 48:3, 48:8, 48:12, 48:16, 49:3, 49:22, 50:10, 50:17, 50:23, 51:21
**Gilman** [18] - 1:21, 2:22, 10:9, 16:22, 24:9, 26:22, 28:19, 31:4, 31:10, 32:17, 36:5, 40:16, 41:3, 45:4, 47:18, 48:20, 51:7, 51:19
**Gilman's** [1] - 25:1
**given** [2] - 9:4, 40:7

**giveth** [1] - 41:6
**glad** [7] - 4:5, 4:6, 4:20, 31:16, 48:10, 48:19, 53:1
**glorified** [1] - 38:22
**govern** [1] - 43:7
**government** [2] - 29:17, 33:16
**Grant** [1] - 23:10
**granting** [1] - 47:8
**Grantor** [1] - 48:17
**grantor** [1] - 19:25
**great** [4] - 12:6, 23:21, 25:2, 44:21
**greets** [1] - 53:10
**guarantee** [1] - 14:1
**guess** [3] - 14:22, 32:16, 43:20
**guidance** [1] - 30:12
**guy** [1] - 53:18

**H**

**hall** [1] - 21:10
**hand** [2] - 41:6, 41:7
**handed** [1] - 45:24
**handles** [1] - 34:24
**hands** [1] - 41:13
**happy** [1] - 40:18
**hear** [7] - 4:5, 4:7, 4:20, 31:4, 31:17, 36:11
**heard** [1] - 53:10
**hearing** [11] - 1:13, 2:8, 3:21, 5:5, 44:3, 48:7, 48:10, 50:4, 51:2, 52:6, 52:25
**heaven** [1] - 53:10
**helpful** [1] - 40:20
**helping** [1] - 9:22
**Hendricks** [1] - 7:19
**hereby** [1] - 55:7
**high** [5] - 23:7, 23:12, 23:14, 23:16
**higher** [1] - 19:10
**hit** [1] - 3:12
**homework** [1] - 39:22
**Honor** [25] - 2:24, 3:24, 3:25, 7:14, 12:11, 12:13, 18:9, 18:20, 19:23, 26:7, 31:18, 33:4, 35:4, 37:16, 40:18, 42:22, 44:13, 45:5, 47:14, 47:15, 48:3, 49:3, 50:10, 50:23, 51:22
**Honor's** [2] - 16:6, 18:10
**Honorable** [2] - 1:13,

55:6
**hope** [4] - 39:8, 41:2, 42:20, 44:5
**hour** [2] - 40:5, 52:7
**hourly** [3] - 38:11, 38:20, 39:3
**hours** [3] - 10:10, 13:14, 42:9
**humorous** [1] - 38:24
**hundred** [2] - 12:25, 13:14
**hung** [1] - 41:18, 42:11

**I**

**ideally** [1] - 34:8
**identical** [4] - 27:12, 28:21, 45:23, 47:6
**identify** [1] - 6:3
**impact** [1] - 34:18
**implications** [1] - 42:19
**importance** [1] - 44:3
**important** [7] - 9:15, 11:20, 12:2, 17:13, 18:16, 49:14, 53:23
**improper** [1] - 41:25, 43:8
**improperly** [1] - 29:12
**IN** [1] - 1:1
**Inc** [2] - 15:16, 46:8
**incentive** [5] - 19:14, 21:2, 22:5, 36:15, 36:16
**inclined** [1] - 49:19
**include** [3] - 14:2, 37:15, 37:19
**including** [2] - 16:3, 16:8
**income** [11] - 27:20, 27:23, 27:24, 30:19, 30:20, 33:25, 34:9, 34:13, 34:22, 35:7, 44:10
**income-producing** [1] - 27:23
**indebtedness** [19] - 7:2, 25:14, 27:19, 27:21, 27:25, 29:11, 29:17, 29:19, 30:19, 32:13, 32:22, 33:2, 33:8, 34:2, 34:7, 34:12, 35:5, 35:13
**indeed** [1] - 39:3
**independent** [1] - 11:6
**industry** [1] - 11:25
**inevitably** [1] - 49:16
**information** [7] - 9:12,

11:9, 11:14, 11:15, 16:2, 25:17, 30:18
**inquiry** [1] - 47:17
**insignificant** [1] - 18:13
**Installment** [1] - 19:24
**institution** [1] - 9:20
**institutions** [1] - 9:7
**instructions** [1] - 53:4
**insure** [1] - 30:25
**intended** [2] - 6:2, 16:5
**intention** [2] - 14:7, 37:10
**interest** [7] - 17:3, 19:10, 23:7, 23:12, 23:15, 23:16
**Internal** [12] - 24:18, 25:13, 26:3, 27:2, 27:11, 28:8, 28:25, 32:21, 34:21, 35:19, 42:13, 44:7
**interrupt** [2] - 33:10, 36:8
**intervene** [1] - 16:3
**intervention** [1] - 5:4
**introduce** [1] - 2:24
**investigation** [1] - 11:10
**involve** [3] - 18:11, 18:12, 35:4
**involved** [9] - 13:11, 14:10, 17:14, 18:18, 19:7, 20:23, 21:21, 22:2, 39:17
**involving** [2] - 7:23, 38:1
**IRS** [14] - 24:23, 25:6, 25:24, 27:7, 27:17, 29:18, 30:20, 34:5, 34:17, 35:23, 35:24, 41:9, 41:10, 42:19
**issuance** [2] - 24:12, 24:15
**issue** [37] - 7:3, 9:14, 9:15, 10:10, 12:11, 13:9, 14:14, 16:18, 17:9, 17:16, 20:3, 20:9, 22:20, 23:21, 23:23, 23:25, 24:10, 24:14, 25:3, 25:6, 27:12, 28:1, 28:22, 29:2, 29:4, 30:6, 30:7, 31:1, 31:16, 32:1, 32:15, 32:19, 36:13, 40:2, 41:5, 41:15
**issued** [7] - 26:2, 26:6, 26:8, 26:12, 32:1, 32:20, 33:3

**issues** [17] - 5:8, 5:11, 9:17, 16:12, 16:24, 18:8, 18:9, 22:22, 23:17, 27:3, 27:7, 27:8, 28:25, 30:5, 37:4, 40:19, 52:13
**issuing** [1] - 34:20
**itemization** [1] - 39:7
**itemized** [1] - 38:7

## J

**January** [2] - 26:19, 30:14
**jest** [1] - 48:1
**JFM** [2] - 21:9, 21:11
**job** [1] - 52:4
**John** [1] - 7:20
**joint** [1] - 4:1
**joke** [1] - 53:9
**Judge** [19] - 1:14, 2:14, 4:22, 5:6, 5:13, 11:7, 15:10, 16:24, 18:2, 20:20, 21:9, 21:10, 25:7, 37:22, 39:21, 40:4, 40:11, 55:7
**judge** [12] - 3:9, 9:9, 12:8, 13:8, 20:16, 36:12, 37:16, 38:18, 49:25, 52:3, 52:5, 53:1
**judges** [2] - 41:21, 52:17

## K

**Katina** [2] - 50:13, 51:10
**keep** [1] - 37:20
**keeping** [2] - 3:6, 3:16
**Kennedy** [2] - 1:19, 2:11
**KENNEDY** [2] - 2:11, 3:25
**Kennedy's** [1] - 37:5
**kind** [2] - 14:2, 29:8
**kinds** [1] - 27:7
**known** [1] - 18:22

## L

**laid** [1] - 44:20
**language** [8] - 8:13, 10:8, 12:14, 13:10, 16:14, 30:24, 32:17, 32:24
**large** [1] - 11:22

**largely** [1] - 19:20
**last** [8] - 6:8, 15:8, 17:11, 28:14, 36:13, 46:20, 49:22, 50:1
**lasted** [1] - 52:6
**late** [1] - 49:9
**laughing** [2] - 38:25, 39:6
**law** [24] - 6:16, 6:17, 19:2, 20:5, 20:7, 25:24, 30:18, 30:22, 31:25, 32:11, 32:19, 32:25, 33:19, 34:6, 35:9, 35:10, 35:11, 35:15, 41:22, 42:18, 42:21, 43:6, 43:17, 43:19, 44:4
**laws** [1] - 43:17
**lawsuit** [5] - 5:15, 10:6, 16:11, 41:24, 43:1
**lawsuits** [1] - 11:7
**lawyer** [7] - 27:15, 28:4, 29:22, 35:25, 42:7, 53:10, 53:19
**lawyers** [2] - 41:22, 49:13
**learn** [1] - 52:17
**least** [2] - 15:7, 24:21
**legal** [12] - 4:16, 12:19, 12:22, 12:24, 13:5, 13:22, 13:23, 14:2, 25:4, 52:3, 53:8
**legislature** [1] - 22:17
**letter** [3] - 35:25, 36:3
**level** [2] - 9:4, 9:6
**life** [1] - 53:13
**light** [1] - 39:16
**list** [1] - 46:10
**literally** [1] - 3:7
**litigated** [3] - 18:15, 22:7, 22:23
**litigating** [1] - 17:6
**litigation** [4] - 12:1, 16:12, 29:9, 38:22
**lived** [1] - 53:12
**loan** [2] - 34:3, 34:9
**loans** [3] - 20:3, 20:4
**Local** [2] - 38:10, 38:15
**lodestar** [3] - 38:11, 38:15, 38:18
**look** [8] - 23:6, 25:24, 26:3, 33:19, 38:9, 38:15, 44:8, 53:24
**looked** [1] - 38:18
**looking** [5] - 31:20, 32:17, 40:6, 43:22, 50:5

**looks** [1] - 53:19

## M

**Machen** [1] - 2:25
**MACHEN** [1] - 3:4
**madam** [1] - 2:2
**mail** [1] - 15:23
**mailed** [1] - 15:24
**mailing** [2] - 46:11, 46:12
**mails** [2] - 47:24, 52:20
**main** [2] - 35:8, 45:18
**major** [1] - 20:7
**mandated** [1] - 22:16
**manner** [1] - 14:8
**mark** [1] - 2:20
**Mark** [2] - 1:22, 2:24
**Marty** [1] - 12:12
**MARYLAND** [1] - 1:2
**Maryland** [7] - 1:10, 5:19, 7:20, 18:7, 19:5, 20:6, 22:16
**Maryland's** [2] - 18:21, 19:2
**material** [1] - 16:2
**materials** [1] - 24:22
**math** [1] - 13:3
**matter** [15] - 2:4, 2:5, 2:6, 3:20, 7:22, 14:13, 14:14, 25:24, 31:6, 37:25, 38:2, 39:5, 43:16, 53:23, 55:3
**matters** [1] - 49:15
**mean** [8] - 17:24, 18:10, 23:25, 29:7, 32:3, 33:9, 36:7, 41:18
**meant** [2] - 16:23, 26:15, 53:18
**measure** [2] - 52:18
**measured** [1] - 52:20
**meat** [1] - 52:12
**mechanism** [1] - 28:22
**meet** [1] - 14:20
**member** [1] - 14:15
**Member** [2] - 14:23, 14:24
**members** [7] - 11:22, 12:22, 21:4, 23:3, 28:9, 28:12, 28:24
**Members** [37] - 4:13, 7:7, 7:8, 8:7, 8:11, 8:16, 8:19, 9:23, 10:24, 11:1, 11:2, 16:14, 19:18, 21:22,

23:18, 24:6, 24:11, 25:5, 25:17, 30:14, 30:16, 35:6, 35:17, 37:6, 40:1, 40:2, 40:25, 42:10, 43:4, 44:11, 44:19, 44:24, 46:11, 47:22, 50:5, 52:2, 53:24
**Members'** [2] - 9:17, 37:4
**membership** [2] - 19:11, 22:25
**memorandum** [2] - 4:23, 53:2
**mentioned** [1] - 20:8
**merits** [2] - 5:7, 37:2
**method** [1] - 6:1
**Metro** [1] - 10:18
**Meuti** [2] - 1:22, 2:18
**MEUTI** [1] - 2:18
**Miami** [1] - 23:11
**Michael** [2] - 1:22, 2:18
**middle** [5] - 48:22, 48:25, 49:1, 49:8, 49:9
**might** [4] - 35:23, 36:9, 36:10, 52:4
**military** [1] - 23:5
**million** [4] - 7:6, 20:23, 22:2, 22:3
**mind** [3] - 18:10, 18:11, 29:3
**mindful** [2] - 39:21, 53:6
**mine** [1] - 3:17
**minor** [1] - 45:20
**minute** [4] - 3:8, 3:11, 17:13, 31:8
**missing** [2] - 48:6, 51:11
**mistake** [1] - 53:17
**misunderstanding** [1] - 42:24
**moment** [2] - 14:11, 31:5
**Monday** [3] - 50:15, 50:18, 50:19
**money** [10] - 4:14, 18:11, 18:12, 18:13, 19:18, 21:3, 24:1, 39:18, 43:4, 43:9
**Montgomery** [1] - 5:16
**month** [1] - 49:12
**most** [3] - 3:3, 6:19, 49:14
**motion** [7] - 4:1, 4:23, 14:7, 17:4, 23:22, 38:12, 38:13
**motions** [1] - 1:12

Motz [1] - 21:10
move [2] - 5:8, 44:25
MR [129] - 2:11, 2:13,
2:20, 2:22, 3:4, 3:24,
3:25, 4:19, 4:22,
5:10, 8:10, 8:22, 9:9,
10:2, 10:4, 10:8,
11:6, 12:21, 13:7,
13:21, 13:25, 14:4,
15:2, 15:4, 15:7,
15:12, 16:16, 16:19,
16:23, 17:1, 18:2,
19:20, 20:15, 20:17,
20:20, 20:23, 21:5,
21:12, 21:15, 21:17,
21:19, 21:21, 21:25,
22:2, 24:16, 24:20,
25:7, 25:15, 26:7,
26:10, 26:13, 26:19,
27:13, 28:14, 28:17,
29:6, 29:15, 29:25,
31:2, 31:18, 31:21,
31:23, 32:7, 32:14,
33:4, 33:7, 33:14,
33:17, 33:21, 34:14,
35:3, 35:10, 35:20,
35:23, 36:2, 36:12,
36:15, 36:18, 36:22,
36:25, 37:16, 37:19,
38:8, 38:12, 38:18,
39:10, 39:19, 39:21,
40:9, 40:11, 40:14,
40:18, 42:3, 42:22,
43:6, 43:13, 43:16,
44:13, 45:5, 45:8,
45:14, 45:17, 45:25,
46:4, 46:15, 46:19,
47:4, 47:14, 47:15,
48:3, 48:8, 48:12,
48:16, 49:3, 49:22,
49:25, 50:9, 50:10,
50:17, 50:22, 50:23,
51:13, 51:16, 51:18,
51:21, 52:5, 53:1,
53:6, 54:3
multidistrict [1] - 38:2
MURPHY [79] - 2:13,
3:24, 4:19, 4:22,
5:10, 8:10, 8:22, 9:9,
10:2, 10:4, 10:8,
11:6, 12:21, 13:2,
13:7, 13:21, 13:25,
14:4, 15:2, 15:4,
15:7, 15:12, 16:19,
16:23, 17:1, 18:2,
19:20, 20:15, 20:17,
20:20, 20:23, 21:5,
21:12, 21:15, 21:17,
21:19, 21:21, 21:25,
22:2, 24:16, 24:20,

25:7, 25:15, 26:13,
26:19, 27:13, 28:14,
29:6, 29:15, 29:25,
31:2, 36:12, 36:15,
36:18, 36:22, 36:25,
37:16, 37:19, 38:8,
38:12, 38:18, 39:10,
39:19, 39:21, 40:9,
40:11, 40:14, 42:3,
47:14, 49:25, 50:9,
50:22, 51:13, 51:16,
51:18, 52:5, 53:1,
53:6, 54:3
Murphy [18] - 1:18,
2:13, 4:5, 4:18, 8:5,
29:4, 31:9, 36:6,
36:7, 40:12, 40:22,
42:2, 44:20, 46:6,
47:25, 51:17, 52:1,
53:8
Murphy's [1] - 35:21

## N

nailed [2] - 43:23,
43:24
name [3] - 2:9, 21:13,
30:3
National [1] - 15:22
nature [6] - 31:24,
32:10, 33:15, 39:16,
41:24, 42:14
NAVY [1] - 1:7
Navy [35] - 2:6, 2:18,
2:21, 2:22, 2:25, 4:2,
5:13, 5:20, 6:8, 7:11,
8:19, 8:24, 9:2, 10:5,
14:16, 14:18, 15:14,
17:21, 17:24, 23:4,
26:8, 31:13, 31:25,
32:14, 32:19, 34:16,
34:20, 34:25, 35:6,
41:8, 41:12, 42:25,
43:4, 46:22, 55:4
necessary [5] - 14:25,
28:9, 39:18, 42:21,
46:12
need [2] - 6:3, 33:4
needs [1] - 27:15
negotiate [3] - 12:7,
30:5, 37:1
negotiated [5] - 7:15,
10:9, 17:18, 24:5,
25:1
negotiating [1] - 18:19
negotiation [1] - 24:9
Neil [4] - 1:21, 2:22,
16:15, 26:14
never [4] - 3:14, 11:7,

29:16, 53:22
next [5] - 21:7, 26:19,
44:23, 46:15, 46:16
nice [4] - 2:15, 3:1,
3:3, 3:5
nine [1] - 47:25
NO [1] - 1:6
non [1] - 22:25
non-profit [1] - 22:25
noncompliance [2] -
5:25, 6:12
nonprofit [2] - 23:6,
33:13
note [3] - 8:13, 39:10,
40:21
noted [1] - 47:18
nothing [2] - 39:4,
41:21
notice [19] - 5:2, 5:3,
6:6, 6:14, 8:7, 15:19,
15:20, 15:25, 19:1,
22:16, 43:8, 44:23,
46:2, 46:5, 46:17,
46:22, 48:16, 50:24
notices [4] - 15:23,
42:12, 46:8, 46:11
notified [1] - 14:16
notify [3] - 14:21
null [2] - 25:23, 27:6
Number [2] - 20:11,
21:9
number [7] - 7:9, 7:23,
11:22, 21:23, 28:14,
37:6, 52:21

## O

o'clock [1] - 50:21
object [6] - 16:4,
17:21, 17:25, 38:5,
38:6, 44:24
objections [1] - 5:4
obligation [3] - 14:20,
27:17, 28:7
obviously [7] - 14:6,
18:9, 29:17, 32:4,
33:18, 40:10, 42:17
OF [1] - 1:2
office [7] - 13:13,
14:3, 24:9, 25:2,
37:5, 37:8
officer [1] - 40:23
officers [1] - 23:1
Official [1] - 1:25,
55:12
offshoot [1] - 38:1
old [1] - 53:14
one [33] - 3:17, 10:21,
11:25, 12:23, 13:2,

13:16, 18:4, 18:9,
19:13, 21:1, 22:4,
22:11, 22:25, 25:21,
26:20, 28:9, 30:5,
31:5, 33:25, 36:22,
39:15, 40:21, 41:5,
41:6, 41:14, 42:12,
44:2, 45:19, 46:12,
48:4, 54:1
One [3] - 20:10, 23:10,
23:11
one-third [6] - 12:23,
13:2, 19:13, 21:1,
22:4, 39:15
ones [1] - 13:11
operate [1] - 43:18
operation [13] - 30:22,
31:25, 32:11, 32:19,
32:25, 35:9, 35:10,
35:11, 35:15, 42:18,
43:18, 44:1, 44:4
opine [1] - 52:2
opining [1] - 41:22
opinion [2] - 17:1,
30:10
opinions [1] - 30:23
opposed [4] - 9:11,
20:2, 20:12, 38:22
opt [4] - 5:4, 16:3,
20:6, 44:25
opt-in [1] - 20:6
opt-out [1] - 5:4
opts [1] - 19:25
order [9] - 24:25,
25:22, 45:9, 47:8,
47:12, 47:20, 48:4,
50:25, 51:1
organizations [2] -
19:11, 23:1
originally [2] - 43:22,
46:4
OSCAR [1] - 10:16
otherwise [1] - 47:6
ought [1] - 29:23
overall [1] - 39:16
overlooked [1] - 49:17
owe [2] - 35:6, 43:4
owed [1] - 24:1
own [4] - 13:12, 27:5,
34:24, 35:24

## P

p.m [1] - 51:3
page [9] - 8:15, 31:18,
42:16, 45:19, 46:1,
46:15, 48:8, 52:18,
52:21
paid [1] - 22:4

papers [1] - 46:5
paragraph [7] - 31:21,
45:19, 46:1, 46:16,
47:1
parameters [1] - 47:18
part [15] - 3:10, 5:6,
7:16, 9:2, 9:18,
10:21, 18:17, 24:8,
25:7, 26:10, 26:16,
43:14, 44:11, 45:1
particular [1] - 28:4
particularly [1] - 29:4
parties [3] - 32:8,
32:9, 33:1
parts [1] - 11:25
past [2] - 15:4, 30:15
pay [1] - 15:14
payment [2] - 8:2,
36:20
pending [2] - 2:4,
37:24
people [5] - 11:5,
28:11, 28:12, 41:18,
49:5
percent [4] - 7:1,
23:13, 23:14
perfect [1] - 50:17
performed [1] - 37:21
period [5] - 6:9, 12:6,
28:23, 42:8, 50:11
permitted [1] - 41:15
person [1] - 3:2
person's [1] - 11:18
personally [2] - 29:21,
37:9
persons [5] - 7:12,
11:24, 20:24, 21:6
persons' [1] - 6:9
pertinent [1] - 16:7
Peter [6] - 53:11,
53:12, 53:14, 53:15,
53:19
phone [9] - 3:10, 3:15,
13:18, 15:7, 37:6,
37:8, 39:25, 40:1,
52:2
phrase [3] - 36:19,
42:18, 44:4
pick [1] - 44:2
pipe [1] - 16:15
place [8] - 27:19,
27:22, 29:12, 29:17,
35:12, 35:14, 42:5,
51:2
plaintiff [4] - 2:10,
2:12, 4:2, 51:15
PLAINTIFF/
COUNTER [1] - 1:5
Plaintiff/Counter [2] -
1:17, 55:4

**PLAINTIFF/ COUNTER-DEFENDANT** [1] - 1:5
**Plaintiff/Counter-Defendant** [2] - 1:17, 55:4
**plaintiffs** [1] - 15:18
**play** [1] - 6:13
**plenary** [1] - 53:2
**plus** [2] - 14:5, 39:25
**point** [11] - 14:19, 14:22, 34:4, 34:25, 42:16, 43:20, 45:4, 47:13, 51:12, 51:15, 51:20
**population** [3] - 11:21, 11:23, 23:2
**position** [11] - 6:1, 24:23, 27:11, 35:16, 35:17, 35:21, 35:24, 36:4, 43:1, 43:3, 43:11
**possible** [1] - 11:14
**post** [5] - 9:17, 13:13, 13:20, 13:21, 14:2
**post-approval** [1] - 14:2
**potentially** [1] - 34:21
**pound** [2] - 52:19, 52:20
**practical** [1] - 7:22
**practice** [1] - 27:5
**precaution** [1] - 31:3
**preface** [1] - 32:7
**prefer** [1] - 49:8
**prejudging** [1] - 54:1
**preliminary** [15] - 2:8, 3:21, 4:3, 4:24, 4:25, 17:5, 23:22, 37:25, 44:7, 44:15, 44:16, 45:9, 47:8, 47:19, 52:6
**prepared** [3] - 15:1, 48:24, 52:24
**preparing** [1] - 44:2
**pres** [2] - 4:14, 36:20
**present** [5] - 18:15, 22:13, 22:20, 27:17, 47:22
**presentation** [2] - 42:9, 51:25
**presented** [1] - 28:1
**presumption** [1] - 7:3, 20:8, 23:22
**previous** [1] - 51:6
**previously** [3] - 14:9, 17:23, 40:19
**Prince** [1] - 5:17
**principal** [1] - 7:1

**principle** [1] - 34:1
**printing** [1] - 46:10
**private** [2] - 6:4, 27:5
**proactive** [2] - 31:15
**problem** [4] - 9:3, 47:25, 48:23, 49:16
**procedure** [1] - 36:3
**proceedings** [2] - 44:9, 54:6
**process** [2] - 12:1, 37:23
**producing** [1] - 27:23
**profit** [1] - 22:25
**project** [1] - 28:12
**promised** [1] - 49:18
**proof** [1] - 11:11
**proposed** [7] - 3:22, 7:5, 7:13, 8:5, 11:20, 15:25, 47:8
**Proposed** [2] - 12:14, 47:9
**Protection** [2] - 19:6, 22:19
**protection** [1] - 29:24
**provide** [9] - 4:25, 6:6, 8:7, 11:9, 15:20, 22:16, 24:10, 25:17, 30:12
**provided** [7] - 22:12, 22:15, 25:5, 30:17, 44:19, 46:22, 46:25
**provides** [1] - 16:1
**providing** [1] - 44:6
**provision** [3] - 6:17, 20:5, 20:6
**provisions** [1] - 12:9
**Provisions** [1] - 18:21
**public** [3] - 6:4, 6:5
**pull** [1] - 38:16
**purpose** [1] - 2:7
**purposes** [3] - 5:21, 6:18, 30:20
**push** [1] - 49:3
**put** [5] - 3:11, 49:19, 50:20, 50:23, 51:1
**puts** [1] - 41:12

**Q**

**questions** [2] - 4:6, 41:23

**R**

**range** [3] - 44:17, 44:22, 47:19
**rate** [4] - 23:7, 23:12, 23:16, 38:20

**rates** [6] - 19:10, 23:8, 38:11, 38:23, 39:3
**RDB-09-2288** [3] - 1:6, 2:5, 55:6
**re** [3] - 11:10, 15:23, 46:12
**re-investigation** [1] - 11:10
**re-mail** [1] - 15:23
**re-mailing** [1] - 46:12
**reach** [1] - 39:4
**reached** [1] - 46:7
**read** [6] - 8:5, 32:8, 47:2, 51:5, 52:16, 52:22
**reader** [1] - 18:11
**ready** [1] - 47:12
**really** [8] - 29:3, 31:11, 39:7, 39:17, 42:12, 49:17, 52:14
**reason** [3] - 7:9, 28:23, 48:20
**reasonable** [1] - 6:21
**reasonableness** [3] - 44:18, 44:22, 47:19
**reasonably** [1] - 4:17
**reasons** [1] - 25:19
**rebuttable** [3] - 7:3, 20:8, 23:21
**receive** [1] - 37:5
**received** [1] - 30:14
**recent** [1] - 37:24
**recess** [1] - 54:5
**record** [3] - 2:10, 8:8, 10:11
**recording** [1] - 13:9
**records** [1] - 37:20
**recover** [1] - 23:19
**recoverable** [1] - 8:24
**recovery** [1] - 36:22
**redemption** [1] - 6:9
**refer** [1] - 5:22
**reference** [1] - 5:23
**referenced** [2] - 19:9, 24:4
**referring** [1] - 8:11
**refers** [1] - 8:14
**reflected** [1] - 50:6
**reflects** [1] - 34:17
**regard** [1] - 29:24
**regardless** [1] - 34:19
**regs** [3] - 30:22, 35:8, 42:19
**related** [2] - 4:10, 17:11
**relates** [1] - 46:19
**Release** [4] - 16:8, 16:10, 16:14, 16:16
**relevant** [2] - 4:10,

8:21
**relief** [7] - 4:9, 4:24, 8:2, 8:6, 8:10, 44:19, 45:1
**Relief** [3] - 4:15, 8:3, 36:21
**remarks** [1] - 11:18
**remedied** [1] - 14:16
**remedies** [1] - 10:24
**remedy** [7] - 6:25, 8:16, 9:9, 9:10, 9:24, 11:2, 22:13
**remember** [2] - 13:4, 30:3
**remind** [1] - 50:2
**reminds** [1] - 53:9
**removed** [2] - 5:17, 22:8
**rendered** [2] - 14:24, 41:8
**rendering** [1] - 30:10
**repercussions** [1] - 35:1
**report** [11] - 8:8, 8:9, 8:15, 10:13, 11:12, 11:16, 11:17, 11:18, 14:13, 14:15, 32:20
**reported** [2] - 11:14, 30:17
**Reporter** [2] - 1:25, 55:12
**REPORTER'S** [1] - 55:1
**reporting** [16] - 7:21, 8:17, 8:24, 9:7, 9:11, 9:24, 10:1, 10:3, 10:23, 10:25, 11:11, 13:8, 14:20, 25:10, 28:6, 41:1
**Reporting** [2] - 9:10, 11:13
**reports** [10] - 4:11, 4:13, 7:15, 7:25, 8:5, 8:12, 8:18, 9:18, 12:2, 15:22
**represent** [2] - 11:5, 24:17
**representation** [3] - 14:4, 25:11, 40:24
**Representative** [3] - 4:16, 5:2, 19:15
**representing** [6] - 2:11, 2:18, 2:20, 2:22, 14:12, 14:25
**represents** [2] - 37:2, 49:1
**request** [4] - 8:19, 8:20, 11:10, 14:17
**requesting** [1] - 4:24
**require** [4] - 11:15,

37:22, 38:7, 40:4
**required** [2] - 46:21, 46:24
**requirement** [1] - 7:21
**requirements** [4] - 5:12, 6:14, 9:20, 19:2
**requires** [2] - 11:13, 37:16
**requisite** [1] - 22:16
**reserves** [1] - 34:10
**resolution** [1] - 37:2
**resolve** [1] - 29:20
**respect** [31] - 3:20, 4:3, 5:25, 7:18, 8:2, 12:9, 13:8, 15:12, 16:10, 17:1, 17:2, 17:9, 17:15, 18:8, 22:22, 23:18, 24:7, 24:12, 24:13, 25:9, 25:10, 25:16, 25:18, 27:2, 27:5, 27:10, 32:21, 36:12, 38:4, 49:15, 53:4
**response** [2] - 40:3, 47:24
**rest** [1] - 35:6
**result** [7] - 10:23, 13:23, 19:21, 24:15, 27:24, 31:23, 32:9
**resulted** [1] - 22:17
**Retail** [1] - 19:24
**retired** [1] - 23:5
**returns** [1] - 34:17
**revenue** [4] - 24:10, 24:21, 24:23, 25:19
**Revenue** [14] - 24:18, 25:13, 26:3, 27:2, 27:11, 28:8, 29:1, 30:22, 32:21, 34:22, 35:19, 42:13, 44:8
**reviewed** [1] - 4:1
**revised** [1] - 45:10
**revisions** [1] - 45:15
**revolution** [1] - 52:19
**Richard** [2] - 1:13, 55:6
**rights** [1] - 11:1
**rise** [1] - 34:4
**road** [1] - 44:9
**robe** [1] - 3:12
**Robert** [2] - 1:18, 2:13
**routinely** [1] - 8:1
**row** [1] - 3:2
**RPR** [1] - 1:25
**Rule** [3] - 5:11, 37:11, 38:10
**rule** [1] - 48:12
**Rules** [1] - 38:15
**ruling** [2] - 35:25, 36:3

**rulings** [5] - 24:10, 24:21, 24:23, 25:19, 36:4

## S

**safer** [1] - 37:23
**sale** [4] - 6:4, 6:5, 6:21
**Sales** [1] - 19:24
**satisfied** [1] - 47:16
**saw** [2] - 12:5, 30:18
**schedule** [2] - 48:21, 48:24
**scheduled** [2] - 48:20, 49:15
**scheduling** [1] - 49:11
**scope** [1] - 25:7
**scrubbing** [1] - 7:11
**scrutiny** [1] - 54:2
**second** [4] - 3:2, 8:7, 19:16, 20:10
**section** [2] - 5:23, 6:25
**Section** [1] - 18:24
**secured** [1] - 6:20
**see** [7] - 2:15, 3:1, 38:16, 38:24, 41:11, 41:18, 42:10
**seem** [5] - 9:3, 27:14, 27:18, 32:23, 48:21
**seller** [1] - 19:25
**sending** [1] - 15:19
**sensitive** [2] - 22:21, 53:6
**sentence** [1] - 32:9
**September** [1] - 49:5
**seriously** [1] - 53:23
**seriousness** [2] - 39:6, 39:7
**service** [1] - 11:24
**Service** [12] - 24:18, 25:13, 26:3, 27:2, 27:11, 28:8, 29:1, 32:21, 34:22, 35:19, 42:13, 44:8
**Services** [2] - 21:8, 21:19
**set** [2] - 5:3, 7:9
**setoff** [2] - 6:22, 6:24
**Settle** [1] - 31:19, 32:3
**Settlement** [16] - 3:22, 4:4, 8:5, 8:16, 8:18, 11:19, 12:14, 15:13, 26:16, 26:20, 30:25, 32:4, 34:18, 41:16, 45:8, 47:9
**settlement** [25] - 5:1, 5:8, 7:5, 7:19, 12:1, 15:13, 15:15, 15:17,

16:2, 16:8, 17:2, 19:6, 19:14, 20:25, 22:4, 26:10, 27:21, 29:13, 37:7, 39:14, 43:14, 44:17, 45:2, 45:21, 46:21
**settlements** [2] - 12:10, 22:10
**seven** [6] - 7:1, 7:8, 28:15, 45:19, 46:1, 46:16
**several** [3] - 10:10, 18:23, 47:10
**shall** [4] - 8:23, 31:25, 32:19, 51:2
**share** [1] - 29:1
**shared** [1] - 24:22
**shares** [1] - 34:11
**sheets** [9] - 37:15, 37:19, 38:7, 38:9, 38:14, 39:12, 40:5, 53:20, 53:25
**shelters** [1] - 27:6
**Shelton** [5] - 12:12, 12:21, 18:19, 19:4, 19:17
**shift** [1] - 6:20
**shorter** [1] - 39:2
**show** [1] - 6:21
**side** [2] - 33:25, 34:23
**sides** [1] - 30:25
**sign** [4] - 47:12, 47:20, 51:8, 51:12
**signed** [2] - 50:25, 51:7
**significant** [1] - 18:23
**similar** [2] - 12:9, 12:16
**Simpkins** [2] - 1:25, 55:11
**simple** [2] - 27:18, 29:9
**simply** [1] - 10:12
**single** [1] - 10:10
**situation** [1] - 41:11
**six** [5] - 28:15, 28:16, 45:19, 46:1
**size** [2] - 30:8, 30:13
**slight** [2] - 9:4, 9:6
**slightly** [1] - 45:11
**someone** [6] - 27:14, 27:15, 28:4, 33:19, 44:7, 49:17
**sometime** [1] - 49:19
**sometimes** [3] - 13:15, 18:24, 52:11
**somewhat** [1] - 38:24
**sophisticated** [1] - 29:4
**sorry** [6] - 5:17, 10:2,

16:16, 16:19, 20:22, 21:25
**source** [1] - 49:14
**Sovereign** [1] - 13:17
**special** [1] - 5:11
**specific** [5] - 5:24, 12:7, 16:8, 19:1, 19:22
**specifically** [6] - 5:20, 6:3, 7:24, 17:7, 22:15, 30:18
**spend** [5] - 9:16, 9:22, 13:12, 13:14, 52:15
**spending** [3] - 13:17, 37:3, 37:4
**spent** [6] - 10:9, 12:6, 25:2, 37:3, 40:6, 42:17
**spheres** [1] - 43:25
**spouse** [3] - 49:14, 49:18, 50:1
**spouses** [2] - 50:3, 50:6
**St** [5] - 53:11, 53:12, 53:14
**st** [1] - 53:18
**stacks** [1] - 47:10
**staff** [1] - 13:14
**standard** [1] - 44:16
**standardized** [1] - 10:18
**stands** [1] - 54:4
**starting** [1] - 2:10
**State** [1] - 46:23
**state** [7] - 2:9, 5:15, 5:24, 17:8, 19:22, 22:8, 30:4
**STATES** [1] - 1:1
**States** [3] - 1:14, 46:22, 55:7
**statute** [11] - 5:24, 18:22, 18:25, 19:1, 19:22, 19:25, 20:1, 22:12, 22:15, 22:18
**statutory** [3] - 6:22, 6:24, 24:1
**step** [5] - 27:15, 31:15, 42:13, 44:23
**steps** [1] - 42:21
**still** [3] - 23:21, 23:25, 43:8
**stone** [1] - 7:9
**storm** [1] - 41:10
**stray** [1] - 45:17
**strenuously** [1] - 24:6
**stuff** [2] - 18:4, 52:16
**subject** [3] - 14:6, 16:6, 17:20
**submission** [1] - 51:6
**submit** [1] - 40:5

**submitted** [3] - 46:4, 47:11, 53:25
**suburb** [1] - 39:4
**sudden** [1] - 42:11
**suddenly** [3] - 3:12, 41:9, 52:12
**suggest** [1] - 9:1
**suggesting** [2] - 29:21, 32:16
**suggestion** [1] - 36:9
**suggestions** [2] - 48:11, 50:13
**summary** [1] - 4:17
**support** [5] - 4:23, 14:8, 17:4, 18:3, 37:12
**supporting** [3] - 37:12, 37:14, 38:14
**supposed** [2] - 11:12, 37:21
**suspect** [2] - 44:4, 48:2

## T

**taketh** [1] - 41:7
**Tallahassee** [1] - 30:4
**tax** [24] - 24:7, 24:11, 24:14, 25:2, 27:5, 27:6, 27:7, 29:4, 29:7, 29:19, 29:22, 31:13, 33:15, 33:23, 34:6, 34:12, 34:17, 34:24, 35:25, 41:8, 41:22, 42:8, 43:16
**taxable** [10] - 24:24, 25:20, 26:4, 30:11, 34:10, 41:10, 41:19, 42:10, 41:23, 42:6
**ten** [1] - 17:11
**tendency** [1] - 52:11
**tenth** [1] - 40:5
**term** [2] - 12:7, 25:1
**terminology** [1] - 10:16
**terms** [18] - 11:21, 16:7, 28:4, 38:10, 38:23, 39:2, 39:15, 40:6, 40:24, 41:1, 41:10, 42:18, 47:17, 48:9, 51:5, 53:20
**territory** [1] - 36:10
**THE** [132] - 1:1, 1:2, 2:2, 2:4, 2:15, 3:1, 3:5, 4:1, 4:20, 5:9, 8:4, 8:13, 8:23, 10:1, 10:3, 10:7, 11:4, 12:19, 12:24, 13:4, 13:20, 13:22, 14:1,

14:11, 15:3, 15:6, 15:11, 16:21, 16:25, 17:24, 19:17, 20:13, 20:16, 20:18, 20:21, 21:3, 21:10, 21:13, 21:16, 21:18, 21:20, 21:23, 22:1, 24:14, 24:17, 25:4, 25:9, 26:5, 26:9, 26:11, 26:18, 26:24, 27:14, 28:16, 28:19, 29:7, 29:16, 30:24, 31:3, 31:20, 31:22, 32:6, 32:12, 32:16, 33:6, 33:9, 33:15, 33:18, 33:22, 34:15, 35:9, 35:16, 35:22, 36:1, 36:5, 36:14, 36:16, 36:19, 36:24, 37:14, 37:18, 37:23, 38:9, 38:15, 38:19, 39:13, 39:20, 39:23, 40:10, 40:12, 40:15, 40:21, 42:4, 43:2, 43:5, 43:10, 43:15, 43:20, 45:3, 45:7, 45:12, 45:16, 45:23, 46:3, 46:14, 46:18, 47:2, 47:7, 47:16, 48:6, 48:9, 48:14, 48:19, 49:7, 49:24, 50:3, 50:12, 50:14, 50:15, 50:16, 50:18, 50:19, 50:20, 50:25, 51:14, 51:17, 51:19, 51:23, 52:8, 53:5, 53:8, 54:4
**theories** [1] - 6:13
**theory** [1] - 27:24
**therefore** [1] - 33:2
**therefrom** [1] - 27:8
**third** [7] - 3:13, 12:23, 13:2, 19:13, 21:1, 22:4, 39:15
**thorough** [1] - 51:25
**thoroughly** [1] - 52:22
**thoroughness** [1] - 52:24
**thousand** [1] - 12:25
**three** [9] - 6:13, 15:8, 17:11, 18:6, 22:6, 22:9, 22:11, 24:21, 48:8
**throughout** [2] - 6:12, 17:7
**thrust** [1] - 42:2
**thumb** [1] - 48:12
**tighten** [1] - 32:24
**today** [3] - 5:22, 44:15, 47:20

**took** [1] - 24:23
**total** [1] - 12:25
**totally** [2] - 43:24, 45:3
**touch** [1] - 3:9
**tough** [1] - 52:3
**tradeline** [2] - 8:20, 10:14
**trading** [1] - 3:10
**transcript** [2] - 44:8, 55:2
**treat** [1] - 24:18
**treatment** [1] - 24:7
**tried** [2] - 12:8, 39:22
**trigger** [1] - 34:21
**true** [2] - 27:10, 55:7
**try** [3] - 15:21, 25:21, 52:15
**trying** [6] - 3:8, 12:7, 30:2, 35:2, 42:12, 49:9
**turned** [1] - 50:13
**two** [7] - 15:7, 17:11, 19:8, 24:21, 43:25, 45:10, 45:18
**type** [1] - 7:24
**typical** [1] - 3:11
**typicality** [1] - 27:9
**typically** [6] - 11:6, 23:2, 23:17, 37:9, 48:12, 49:4
**Tyson's** [1] - 38:1

## U

**U.S.C** [1] - 46:24
**UCC** [5] - 5:19, 5:20, 5:23, 6:25, 17:15
**ultimately** [2] - 14:22, 49:13
**unable** [1] - 30:5
**under** [24] - 5:17, 5:19, 6:10, 6:11, 9:10, 10:17, 12:25, 17:14, 18:20, 18:24, 19:5, 19:23, 20:1, 20:11, 22:7, 22:11, 22:18, 22:19, 27:24, 41:16, 42:23, 43:6, 43:18
**undersigned** [1] - 51:3
**understood** [1] - 44:12
**Unform** [1] - 6:11
**Uniform** [1] - 6:18
**union** [7] - 17:10, 17:11, 19:12, 20:4, 22:21, 23:20, 30:9
**Union** [14] - 2:6, 4:3, 5:21, 9:2, 11:16,

12:5, 23:5, 31:14, 34:16, 34:20, 35:1, 41:9, 41:12, 55:5
**UNION** [1] - 1:7
**union's** [1] - 30:9
**unions** [3] - 19:10, 22:22, 22:23
**unique** [2] - 11:25, 17:9
**UNITED** [1] - 1:1
**United** [3] - 1:14, 46:22, 55:7
**unjustifiable** [1] - 27:19
**unlike** [1] - 25:9
**up** [18] - 17:20, 25:11, 25:16, 27:15, 28:5, 32:24, 41:1, 41:12, 42:7, 42:21, 44:2, 47:5, 50:4, 50:13, 51:12, 53:12, 53:13, 53:18
**update** [1] - 15:22

## V

**valid** [1] - 29:11
**vary** [1] - 6:12
**vehicles** [2] - 6:10, 23:13
**versus** [11] - 2:6, 12:12, 12:21, 18:19, 19:16, 19:17, 20:10, 21:7, 21:16, 23:11, 30:2
**view** [12] - 25:12, 34:5, 34:25, 41:14, 41:20, 44:9, 47:13, 51:12, 51:15, 51:20, 52:8, 52:14
**violated** [1] - 5:21
**violation** [1] - 26:24
**Virginia** [4] - 6:16, 6:17, 20:5, 43:6
**void** [2] - 25:23, 27:7
**volume** [1] - 52:21
**VS** [1] - 1:6
**vs** [1] - 55:4

## W

**waiting** [2] - 3:7, 3:16
**waive** [2] - 19:2, 42:5
**waiver** [16] - 4:9, 18:24, 19:21, 20:24, 22:3, 22:14, 22:17, 24:13, 25:12, 29:14, 31:6, 31:24, 32:11, 32:18, 32:25, 34:19

**waiving** [2] - 43:11, 43:12
**wants** [1] - 44:8
**Washington** [2] - 38:23, 39:4
**Watts** [2] - 19:16, 20:10
**ways** [3] - 18:23, 22:24, 27:4
**week** [4] - 46:20, 49:23, 50:1, 50:15
**welcome** [1] - 3:1
**whereby** [1] - 28:22
**WHITAKER** [1] - 1:4
**Whitaker** [7] - 2:6, 2:12, 4:2, 5:2, 35:5, 43:3, 55:3
**whole** [1] - 10:14
**wipeout** [1] - 7:6
**wise** [1] - 31:3
**witness** [2] - 7:18, 7:19
**wolf** [2] - 19:5, 39:11
**Wolf** [1] - 12:13
**wolf's** [1] - 21:1
**wondering** [2] - 9:8, 28:3
**wording** [1] - 42:15
**write** [2] - 33:24, 41:13
**write-off** [1] - 33:24
**writes** [2] - 34:3, 34:8
**writing** [1] - 8:19

## Y

**year** [2] - 26:19, 30:15
**years** [3] - 15:19, 17:11, 53:14
**young** [1] - 53:11

## Z

**zeal** [1] - 27:2
**zealousness** [1] - 27:1
**zero** [1] - 10:12