IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DONNA L. WHITAKER, *individually and on behalf of all others similarly situated*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: 1:09-cv -02288-RDB ) |
| NAVY FEDERAL CREDIT UNION, *a federal credit union,* | ) ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR FINAL APPROVAL**

Plaintiff, Donna L. Whitaker, an individual ("Ms. Whitaker"), on behalf of herself and all others similarly situated, pursuant to Rule 105, Local Rules of the United States District Court for the District of Maryland, and Rule 23, Federal Rules of Civil Procedure, files this her Memorandum of Law in Support of Joint Motion for Final Approval of Class Settlement:

**I.  INTRODUCTION**

*A.  SYNOPSIS OF COMPLAINT ALLEGATIONS*

The instant action was brought by Ms. Whitaker against Navy Federal for violation of Article IX, Part VI of the Uniform Commercial Code ("UCC"), with respect to the repossession sale of automobiles. According to the allegations of the Amended Complaint, on or about October 24, 2007, Ms. Whitaker entered into a finance agreement to finance the purchase of a used 2006 Acura automobile ("Vehicle") for her personal and household use (Amended Complaint - ¶¶7-9). On or about March 18, 2008, Navy Federal repossessed the Vehicle (Amended Complaint - ¶10). On the same day as the repossession, Navy Federal sent to Ms.

Whitaker a notice advising her of its intent to dispose of the Vehicle in purported compliance with Article IX of the UCC ("Notice of Sale") (Amended Complaint - ¶11). A copy of the Notice of Sale is attached to the Amended Complaint as Exhibit "B" (Amended Complaint - ¶12).

It is the position of Ms. Whitaker that the Notice of Sale failed to comply with the UCC in the following respects:

    A.    <u>Statement Concerning Intended Method of Disposition</u> - Navy Federal failed to specify if it intended to dispose of the Vehicle by private or public sale and, if by public sale, the time and place of such sale, as required by §§9-614(1)(A) and 9-613(1)(B) and (E) of the UCC;

    B.    <u>Accounting</u> - Navy Federal did not disclose that Ms. Whitaker and the other class members were entitled to an accounting of the unpaid indebtedness and the charge, if any, for an accounting, as required by §§9-614(1)(A) and 9-613(1)(D) of the UCC;

    C.    <u>Right to redemption</u> - Navy Federal failed to disclose to Ms. Whitaker and the other members of the class the correct time period for redemption as required by §9-623 of the UCC.

As a result of the business practices of Navy Federal with respect to post-repossession notices of consumers, Ms. Whitaker filed the instant action on behalf of herself and all others similarly situated seeking statutory damages and other relief against Navy Federal under the civil remedies provision of the UCC, §9-625.

Navy Federal has denied liability and has raised defenses, including but not limited to, that the Notice complies with the relevant sections of the U.C.C. Further, Navy Federal claims that it is entitled to a setoff and in certain instances a judgment against Class Members for deficiencies that remain after the commercially reasonable sale of the encumbered vehicles. The

Court has not made a decision concerning the merits of these claims.

### B.   OVERVIEW OF SETTLEMENT

#### 1.   Description of Negotiation Process

As detailed in the Declaration of Robert W. Murphy filed in support hereof ("Murphy Final Approval Declaration") [DE 61], counsel for Ms. Whitaker has conducted a significant and time-consuming investigation of the factual and legal matters in the action (Murphy Final Approval Declaration - ¶3).  After initial discovery and motion practice, the parties were engaged in settlement negotiations that lasted several months.  In conjunction with these negotiations, the parties exchanged information and documents relevant to the discussions to allow counsel to acquire sufficient knowledge and information to adequately assess the merits of the settlement. After reaching a settlement in principal, the parties negotiated the detailed final terms of the Settlement Agreement presently before the Court for final approval (Murphy Final Approval Declaration - ¶¶ 4-6).

#### 2.   Terms of Settlement

The terms of the Settlement Agreement that was preliminarily approved by the Court provides:

Settlement Class:  The parties seek approval of the Settlement Class consisting of all individuals in the United States, including without limitation individuals who serve abroad in the Armed Forces of the United States, who during the four (4) year period preceding the filing of this Action on July 7, 2009: (a) have or had a Finance Agreement held by Navy Federal; (b) had the Motor Vehicle pledged by the Finance Agreement repossessed; (c) were sent a post-repossession notice under UCC Article 9 with respect to a Motor Vehicle pledged by the Finance

Agreement; and (d) have not, before Final Approval of the Settlement and with respect to a Finance Agreement that meets requirements of (a), (b), and (c), (i) obtained a discharge in bankruptcy, (ii) filed a bankruptcy petition, (iii) entered into a post-repossession repayment agreement, (iv) had a final judgment entered in a collection action, or (v) been involved in a dispute in which they are represented by counsel [Settlement Agreement - ¶ 8s].

Waiver of Deficiency: Navy Federal shall waive deficiencies arising from the finance contracts of the respective class members for the financing of motor vehicles.  The aggregate balance of the deficiencies of the Class Members is in excess of Fifty Million ($50,000,000.00) Dollars in principal and interest ("Waived Deficiencies")[Settlement Agreement -  ¶¶ 7; 15a].

Notification to Credit Reporting Agencies: Navy Federal shall request that the credit reporting agencies ("CRAs") delete the tradelines related to the finance agreements at issue in this matter from the credit reports of the Settlement Class Members. [Settlement Agreement - ¶ 15b].

Relief Payment: Navy Federal shall pay the sum of Fifty Thousand ($50,000.00) Dollars to the Army Emergency Relief ("Relief Payment"), an organization that provides financial assistance to members of the armed forces [Settlement Agreement - ¶ 15c].

Attorney's Fees, Costs and Expenses: Class Counsel shall submit a request for reasonable attorney's fees in the amount of Three Hundred Eighty-Five Thousand ($385,000.00) Dollars and for an incentive award to the Class Representative in the amount of Five Thousand ($5,000.00) Dollars.  Navy Federal has agreed not to oppose or object to said application [Settlement Agreement - ¶ 18a].

Cost of Settlement Administration: The cost of settlement administration, including but

not limited to the cost of printing and mailing the notices to Class Members shall be paid by Navy Federal, subject to approval of the Court [Settlement Agreement - ¶ 11a].

## II. STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

With respect to approval of class action settlements, Rule 23, Federal Rules of Civil Procedure, provides in pertinent part:

"[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal. . . the Court may approve it only after hearing and on finding that the settlement. . . is fair, reasonable and adequate."

Rule 23(e)(1) and (2), Fed.R.Civ.P.

The approval of a proposed class action settlement is discretionary with the district court. *Flynn v. FMC Corporation*, 528 F.2d 1169 (4th Cir. 1975), *cert. denied,* 424 U.S. 967 (1976); *Girsch v. Jepson*, 521 F.2d 153, 156 (3rd Cir. 1975); *Ace Heating & Plumbing Company v. Crane Company*, 453 Fd. 2d 30, 34 (3rd Cir. 1971).

Courts consistently favor settlement of disputed claims. *See Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976). Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

*See Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d

71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions).

"[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra*, ¶92,414 (quoting *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,994 at 90,676 (S.D.N.Y. 1971)). Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *In re Saxon Securities Litigation, supra*, ¶92,414 at 92,525 (quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982)).

### III.  LEGAL ARGUMENT

**A. Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B), Fed.R.Civ.P. and Constitutional Due Process Requirements.**

*1. The Form and Content of the Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant case, the Court preliminarily approved the Settlement Agreement, which contained as an exhibit a specimen copy of the proposed Notice to Class ("Whitaker Class Notice")[DE 44-1].  The Whitaker Class Notice provided plenary information for the Class

Members to make informed choices. *In Re: Fed. Skywalk Cases*, 97 F.R.D. (W.D. Mo. 1982). Under Rule 23(c)(2)(B), the notice must provide "information that a reasonable person would consider to be material and make an informed, intelligent decision whether to opt out or remain a member of the class and be bound by the final judgment." *In Re: Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088, 1105 (5th Cir. 1977); citing with approval in *Twigg v. Sears Roebuck*, 153 F.3d 1222 (11th Cir. 1998). The Whitaker Class Notice has satisfied the requirements of Rule 23 with respect to form and content.

     2. *The Best Notice Practicable Has Been Sent to the Members of the Class.*

  Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974).

  Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir.1985). As detailed in the Affidavit of Bailey Hughes of First Class, Inc. filed in support hereof ("Settlement Administrator Report")[DE 56-1], the Settlement Administrator followed its standard practice of processing the Class List through CASS and NCOA Services to obtain the best possible addresses for the Class Members prior to mail out [Settlement Administrator Report - ¶4]. After the initial mailing, the United States Postal Service returned a small number of class notices with new addresses to the Settlement Administrator, which promptly re-mailed same to new addresses [Settlement Administrator Report - ¶4].

  In light of the significant non-monetary relief to the Class — the waiver of deficiencies

and clearance of the credit reports of the Class Members — "the best notice practicable" has been made by the Class Representative. This position is especially compelling as a number of the notices of sale which are the subject matter of this litigation may not have been received by the Members of the Class in the first place. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997)["that some class members may not have received notice evidences only that the extensive notice system was not perfect. Due process when viewed through the lens of objectivity does not require perfection"]; *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)[in antitrust class action, notice adequate where one third of class not reached by mail]. Indeed, to the extent that the relief to the Class consists of injunctive-type relief that would typically be provided under Rule 23(b)(2), Fed.R.Civ.P., the due process rights of the Class Members have been fully protected.

### B. The Proposed Settlement is Fair, Adequate and Reasonable

*1. Federal Law Supports Approval of Class Action Settlement Agreements That Are Fair, Adequate and Reasonable.*

*a. Overview of Approval Process*

Judicial approval of class action settlements requires a two-step process. In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval." *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37. Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*. The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the

standpoint of the class. *Id*. at §11.41.

In *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court for the Middle District of Florida described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law. Miller v. Republic National Life Insurance Company, 559 F.2d 426 (5th Cir. 1977). The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable. Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984).
>
> *Id*. at 1054

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court. *Bennett*, 737 F. 2d at 987. In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

### b. Overview of "Grinnell Factors"

The courts have considered several factors in determining whether a class settlement is fair, reasonable and adequate. See, e.g., Troncelliti v. Minolla Corp., 666 F.Supp. 750, 752-754 (D.Md.1987); In Re Montgomery County Real Estate Antitrust Litigation, 83 F.R.D. 305, 315-316 (D.Md.1979). The guideposts — referred to at times as the so-called "Grinnell Factors"— are derived from the seminal case of City of Detroit v. Grinnell Corp., 495 F.2d 448 (2nd Cir. 1974). The factors are:

    (1)    the complexity, expense and likely duration of the litigation;

    (2)    the reaction of the class to the settlement;

    (3)    the stage of the proceedings and the amount of discovery completed;

    (4)    the risks of establishing liability;

    (5)    the risks of establishing damages;

    (6)    the risks of maintaining the class action through the trial;

    (7)    the ability of the defendants to withstand a greater judgment;

    (8)    the range of reasonableness of the settlement fund in light of the best possible recovery; and

    (9)    the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risk of litigation.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993); *see, e.g., Troncelliti v. Minolta Corporation*, 666 Fd. Supp. 750, 752-54 (D. Md. 1987); *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315-16 (D. Md. 1979); *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 462 (2nd Cir. 1974). The Fourth Circuit has relied on and endorsed substantially the same factors in Flinn v. FMC Corp., 528 F.2d 1169, 1173-74 (4th Cir.1975). See also, In Re Jiffy Lube Securities Litigation, 927 F.2d 155, 158-159 (4th Cir.1991); In Re A.H. Robins Co., 880 F.2d 709, 748-49 (4th Cir.1989). Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

    2.    *Even With a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages.*

Although the Class Representative believes that the claims she has raised are meritorious, the Class Representative recognizes that ultimate success on the merits is by no means assured.

During the initial part of this litigation, Navy Federal had made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Class Representative. Navy Federal has also contended and continues to contend that it has meritorious defenses to the asserted claims (Settlement Agreement - ¶12). Of special concern to the Class Representative is that Navy Federal claimed the right to recover deficiencies against the Class Members if the case proceeded.

   3. *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Members Without the Necessity of a Claim Form*

     *a. Overview of Benefits*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Class Representative — the elimination of any outstanding claimed deficiency balance by Navy Federal [Settlement Agreement - ¶15a]. As noted, the deficiency balances amount to more than $50 million for the Class [Settlement Agreement - ¶8]. In addition, the settlement ensures that the credit histories of the Class Members will be corrected to delete any outstanding deficiency balance [Settlement Agreement - ¶15b].

     *b. Value of Debt Forgiveness for the Class*

Courts often approve class action settlements that employ debt forgiveness and other non-cash benefits as all or part of the settlement consideration. *In re Lloyd's American Trust Fund Litigation*, 2002 WL 31663577 (S.D. N.Y. 2002); *see*, also, *Cullen v. Whitman Medical Corporation*, 197 F.R.D. 136, 143 (E.D. Penn. 2000)[approval of settlement providing cash and forgiveness of student loan indebtedness of class members and other non-monetary relief];

*Follansbee v. Discover Financial Services, Ltd.*, 2000 WL 804690 at *5 (N.D. Ill. 2000) [settlement included credit for class members to pay down debt to defendant]; *Pigford v. Glickman*, 185 F.R.D. 82, 109 (D.D.C. 1999); *Ballard v. Martin*, 79 S.W. 3rd 838 (Ark. 2002)[settlement consisted in part of debt forgiveness of check cashing loans].

The Class Representative is mindful that it is unlikely that Navy Federal or its assignee would be able to collect the complete $50 million of the Waived Deficiencies from the Class Members. In order to demonstrate the value of the settlement to the Class, Class Counsel retained the services of a collection industry expert, Phillip W. Duff ("Mr. Duff"), whose opinion is set forth in the Declaration filed contemporaneous herewith ("Duff Declaration"). As detailed in the Duff Declaration, Mr. Duff has in excess of thirty (30) years experience in the consumer collection industry, including the valuation of consumer debt portfolios for sale to third parties by creditors [Duff Declaration - Exhibit "A"].

Mr. Duff has opined that from his experience it is likely that Navy Federal or its assignees would collect $4,500,000 from the Class Members [Duff Declaration - ¶5]. Accordingly, without question, the economic benefit to the Class Members is substantial.

### c. Value of Clearance of Credit Reports

Pursuant to Paragraph 15b of the Settlement Agreement, Navy Federal agreed to request that the credit reporting agencies ("CRAs") delete the tradelines related to the finance agreements at issue in this matter from the credit reports of the settlement Class Members. Class Counsel considered the clearance of the credit reports of the Class Members to be a material, non-negotiable term of the settlement with Navy Federal. Towards that end, when the parties entered settlement negotiations, Class Counsel retained a nationally known credit reporting expert, Evan

D. Hendricks ("Mr. Hendricks"), to provide advice and assistance with respect to the credit reporting aspects of the settlement, whose opinion is set forth in the Declaration previously filed with the Court ("Hendricks Declaration") [DE 58].

As detailed in the Hendricks Declaration, Mr. Hendricks has served as an expert witness in numerous cases on the Fair Credit Reporting Act ("FCRA") and has testified repeatedly before Congress on issues related to both the FCRA and the consumer reporting industry ["Hendricks Declaration - ¶¶7-8]. Mr. Hendricks opined that the clearance of adverse information from the consumer reports of the Class Members has significant economic value to the Class Members and that the settlement is fair, reasonable and adequate and provides substantial benefits to the members of the Class [Hendricks Declaration - ¶¶12-15].

Although the Settlement Agreement does not provide the Class Members with monetary relief in the form of payment, the agreement of Navy Federal to delete the adverse credit information from the consumer reports of the Class Members provides benefits to the members of the Class which would be extremely difficult to obtain if the matter were to proceed to trial. Accordingly, the Settlement Agreement provides Class Members significant meaningful relief.

The Class Representative believes that the total economic benefits to the members of the Class are well in excess of seven million dollars when all the features of the settlement are considered. The benefits to the Class are —in a word— outstanding. This position is especially compelling as members of the Class will receive benefits without the necessity of filing a claim form.

    4.    *The Time and Expense of Protracted Litigation Makes Settlement Appropriate.*

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal). This position is especially compelling in light of the decision by Navy Federal to provide complete non-monetary relief to the Class.

      5.    *There is No Opposition to the Proposed Settlement.*

As detailed above, the Settlement Class received notice of the proposed settlement by first class mail. In response to this notice program, no objections have been raised, and only two (2) class members opted out.[1] Based upon this nearly unanimously favorable response to the proposed settlement, there exists no reason to delay final approval. In instances where there are no objections to settlement, it is persuasive evidence that the proposal is fair and reasonable. In Re Prudential Insurance Co. of Am. Sales Practices Litig., 962 F.Supp. 450, 459 (D.N.J.1997); In Re Surgical Laser Technologies Sec. Lit., 1992 U.S.Dist. Lexis 16724-4-5 (E.D.Pa.1992)

      6.  *Class Counsel Has Conducted Due Diligence Discovery and Has Negotiated the Settlement From a Well-Informed Perspective.*

In the several months since this class action was initiated, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. The parties have conducted formal and informal discovery, including the exchange of information relating to numerosity and other matters germane to certification.

---

[1] The names of the opt-outs are Kevin T. Balding and Frank Svoboda.

The parties entered into settlement negotiations starting in December, 2010. In conjunction with the negotiations, the parties exchanged information regarding class size, scope and damages and exchanged documents relevant to the settlement discussions. Through this process, Class Counsel acquired sufficient knowledge and information to assess the merits of the claims and of potential settlement [Murphy Final Approval Declaration - ¶¶3-5].

The settlement discussions were successfully concluded with a written term sheet drawn up by counsel. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks [Murphy Final Approval Declaration - ¶6].

> 7. *Class Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members.*

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). In the instant action, Class Counsel has significant experience in litigating consumer class actions, including approximately twenty certified classes under the U.C.C. *See*, e.g., *Martinez v. FMS Inc.*, 2008 WL 4010101 (M.D. Fla. 2008); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D.Fla.2003); *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp. 2d 1273 (S.D. Fla. 2006); *Jansen v. West Palm Nissan, Inc.*, 2006 WL 1582068 (S.D. Fla. 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004); *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006).

"While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conduct by counsel experienced in all aspects of class action litigation, and particularly experienced in the UCC context. As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class [Murphy Final Approval Declaration - ¶9].

        8.   *The Parties Negotiated the Proposed Settlement in Good Faith.*

The proposed settlement was negotiated at arm's length, after several weeks of negotiation. After completion of the Term Sheet, additional detailed settlement negotiations were conducted before the final terms of the Settlement Agreement were reached. In order to avoid any appearance of conflict, Class Counsel did not resolve attorney's fees until after resolution of the class claim [Murphy Final Approval Declaration - ¶8].

The negotiation process was conducted in accordance with the "Standards and Guidelines for Litigating and Settling Class Actions" ("NACA Class Settlement Guidelines") promulgated by the National Association of Consumer Advocates ("NACA"). The NACA Class Settlement

Guidelines were first published at 176 F.R.D. 375 (1997) and available in revised form at http://www.naca.net/assets/ media/revisedguidelines.pdf [Murphy Final Approval Declaration - Exhibit "A"]. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310 [Murphy Final Approval Declaration - ¶¶4-8].

## IV.  CONCLUSION

For all the foregoing reasons, the Class Representative respectfully requests that this Court approve the settlement as fair, adequate and reasonable.

/s/ Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223 (*pro hac vice*)
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
rphyu@aol.com


THE KENNEDY LAW FIRM
Counsel for Plaintiff
Maryland Consumer Law Group
PO Box 657
Edgewater, Maryland 21037
Telephone: (443) 607-8901
Fax: (443) 607-8903
bernardtkennedy@yahoo.com

By:  /s/ Bernard T. Kennedy
     BERNARD T. KENNEDY
     Bar No. 26843

COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 13, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Neil Gilman, Esquire, Hunton & Williams LLP, 1900 K Street, N.W., Washington, D.C. 20006 and to Bernard T. Kennedy, Esquire, The Kennedy Law Firm, Maryland Consumer Law Group, PO Box 657, Edgewater, MD 21037, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/  Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
rphyu@aol.com