**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DONNA L. WHITAKER, *individually and on behalf* )
*of all others similarly situated*,                                    )
                                                                                            )
                              Plaintiff,                                      )
v.                                                                                        ) **Civil Action No.: 1:09-cv -02288-RDB**
                                                                                            )
NAVY FEDERAL CREDIT UNION,                       )
*a federal credit union,*                                         )
                                                                                            )
                              Defendant.                                  )
_____/

**MEMORANDUM IN SUPPORT OF
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiff, Donna L. Whitaker, an individual, on behalf of herself and all others similarly

situated ("Class Representative"), pursuant to Rule 105, Local Rules of the United States District

Court for the District of Maryland, files this her memorandum in support of Plaintiff's Motion for

Award of Attorneys' Fees and Costs.

## I.  INTRODUCTION

### A.  SYNOPSIS OF LITIGATION

The instant action involves a controversy brought by the Class Representative against

Navy Federal for violation of Article IX, Uniform Commercial Code ("UCC").  In particular, the

Class Representative alleged that Navy Federal maintained a practice of disposing of repossessed

vehicles without complying with the notice and disclosure requirements of Section 9-614 of the

UCC.

On April 1, 2010, this Court entered an Order Granting Preliminary Approval of Class

Settlement ("Preliminary Approval Order") [DE 51].  Pursuant to the Preliminary Approval

Order, the Court preliminarily approved the Settlement Agreement as being both fair and in the best interest of the Class. Pursuant to the Preliminary Approval Order, the Court directed that a hearing ("Fairness Hearing") be held on Monday, August 23, 2010, for the purpose of determining whether the Settlement Agreement is fair, adequate and should be approved.

### B. OVERVIEW OF BENEFITS TO CLASS UNDER SETTLEMENT AGREEMENT

The terms of the Settlement Agreement to be presented to the Court for final approval are:

Settlement Class: The parties seek approval of the Settlement Class consisting of all individuals in the United States, including without limitation individuals who serve abroad in the Armed Forces of the United States, who during the four (4) year period preceding the filing of this Action on July 7, 2009: (a) have or had a Finance Agreement held by Navy Federal; (b) had the Motor Vehicle pledged by the Finance Agreement repossessed; (c) were sent a post-repossession notice under UCC Article 9 with respect to a Motor Vehicle pledged by the Finance Agreement; and (d) have not, before Final Approval of the Settlement and with respect to a Finance Agreement that meets requirements of (a), (b), and (c), (i) obtained a discharge in bankruptcy, (ii) filed a bankruptcy petition, (iii) entered into a post-repossession repayment agreement, (iv) had a final judgment entered in a collection action, or (v) been involved in a dispute in which they are represented by counsel [Settlement Agreement - ¶ 8s].

Waiver of Deficiency: Navy Federal shall waive deficiencies arising from the finance contracts of the respective class members for the financing of motor vehicles. The aggregate balance of the deficiencies of the Class Members is in excess of Fifty Million Dollars ($50,000,000.00) in principal and interest ("Waived Deficiencies")[Settlement Agreement -  ¶¶ 7;

15a].

Notification to Credit Reporting Agencies: Navy Federal shall request that the credit

reporting agencies ("CRAs") delete the tradelines related to the finance agreements at issue in this

matter from the credit reports of the Settlement Class Members. [Settlement Agreement - ¶ 15b].

Relief Payment: Navy Federal shall pay the sum of Fifty Thousand ($50,000.00) Dollars to

the Army Emergency Relief ("Relief Payment"), an organization that provides financial assistance

to members of the armed forces [Settlement Agreement - ¶ 15c].

Attorney's Fees, Costs and Expenses: Class Counsel shall submit a request for reasonable

attorney's fees in the amount of Three Hundred Eighty-Five Thousand ($385,000.00) Dollars and

for an incentive award to the Class Representative in the amount of Five Thousand ($5,000.00)

Dollars. Navy Federal has agreed not to oppose or object to said application [Settlement

Agreement - ¶ 18a].

Cost of Settlement Administration: The cost of settlement administration, including but

not limited to the cost of printing and mailing the notices to Class Members shall be paid by Navy

Federal, subject to approval of the Court [Settlement Agreement - ¶ 11a].

## II.   SUMMARY OF ARGUMENT

Due to the efforts of Class Counsel, a class action consisting of approximately 6,266 class

members has been certified. The Settlement Agreement negotiated by Class Counsel provides for

the waiver and discharge of deficiencies against the Class Members in excess of Fifty Million

Dollars ($50,000,000). Additionally, through the Settlement Agreement, Navy Federal has

agreed to exercise its best efforts to delete adverse information from the consumer reports of the

respective class members.

The relief to the Class has significant value to the Class. In addition to the discharge of significant deficiency obligations, each Class Member will have the benefit of improved credit upon clearance of the deficiency balance of their respective consumer reports.  In sum, the monetary value of the settlement obtained by Class Counsel on behalf of the Class is believed to be well in excess of $4.5 million.

Pursuant to long-standing precedent, Class Counsel seeks attorney's fees on the basis of the so-called  "common benefit" doctrine.  Based on the criteria described below, and taking into account the results achieved and the actions taken by Class Counsel prosecuting this action, Class Counsel submit that their application is reasonable and appropriate and should be granted.

## III.  LEGAL ARGUMENT

### A.  THE DETERMINATION OF ATTORNEY'S FEES OF CLASS COUNSEL SHOULD BE DETERMINED BASED ON THE "COMMON BENEFIT" DOCTRINE.

#### 1.  Analysis of Common Benefit Doctrine

Depending on the nature of the case and the relief obtained, the courts follow two methods of calculation attorney's fees in class actions: (1) the percentage of recovery, and (2) the lodestar method. The percentage of recovery method is the favored method of determining attorney's fees in class actions involving a common fund or benefit. See, 4 H. Newberg & A. Conte, *Newberg on Class Actions,* §4:6 (4th Ed.2003). The approach rewards counsel for success and penalizes counsel for waste or failure. In such common fund cases, the fees are typically between 25% to 40% of the available fund.  See, e.g., Waters v. International Precious Metals Corporation, 190 F.3d 1291 (11th Cir. 1999); Williams v. MGM-Tathe Communications Company, 129 F.3d 1026 (9th Cir. 1997). In contrast, the lodestar method is more commonly

-4-

applied in statutory fee-shifting cases. <u>Serrano v. Sterling Testing Systems, Inc.</u>, ____ F.Supp.2d ___, 2010 WL1924477 (E.D.Pa.2010). <u>Id</u>.at 16; <u>In Re General Motors Corp. v. Pick-up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 721 (3rd Cir.1995). As the instant action did not involve statutory fee-shifting, attorney's fees should be awarded based on a percentage of the common fund or benefit to the Class.

The "common fund" doctrine rests on the foundation that persons who have obtained benefits from a lawsuit without contribution to its costs are unjustly enriched at the successful litigant's expense.  <u>See</u>, e.g., <u>Mills v. Electric Auto-Light Company</u>, 396 US 375 (1976)[to allow the others to obtain full benefits from the plaintiff's efforts without contributing equally to the litigation expense, would be to enrich the others unjustly at the plaintiff's expense"]; <u>Boeing Company v. Van Gemert</u>, 4444 US 472, 1980 ["persons who obtain the benefit of a settlement without contributing to its costs are unjustly enriched at the successful litigant's expense"]; <u>In Re Katrina Canal Breaches Consolidated Litigation</u>, 2010 WL 2998848 (E.D. La.2010).  In the instant case, the Settlement Agreement has produced significant relief — in the form of $50 million of Waived Deficiencies together with the clearance of the consumer reports of the Class Members — which justifies an award in accordance with the Attorney Fee Provision of the Settlement Agreement.

Class Counsel is mindful that the Settlement Agreement does not provide for payment of money to the Class Members so as to create a "common fund."  However, the award of fees to Class Counsel should be based upon the non-cash value of the equitable relief under the "common benefit" doctrine (sometimes also referred to as the "substantial benefits" doctrine).  This doctrine, which has been called a logical "corollary" of the common fund doctrine, has been twice

embraced by the U.S. Supreme Court.

In Mills v. Electric Auto-Light Company, 396 US 375 (1970), a stockholder's action prevented the distribution of misleading proxy solicitation.  While there was no fee-shifting statute available, and although the action had not created a common fund, the Court nonetheless awarded the stockholder's attorney a fee from the corporation.  The Mills Court reasoned that a fee based on the "substantial benefits" to the class should be awarded where:

> [T]he litigation has conferred a substantial benefit to the members of a discernable Class, and where the Court's jurisdiction over such matters of suit makes possible an award that will operate to spread the costs proportionately among them.

396 U.S. at 393-394; see also, Hall v. Cole, 412 U.S. 1 (1973).

Many states have also adopted the substantial benefits/common benefit doctrine. E.g., Brown v. State, 565 So.2d 585 (Ala. 1990); Milsap v. Lane, 706 SW 2d 378, 288 Ark. 439 (Ark. 1986); Ginsberg v. Keehn, 550 So.2d 1145 (Fla. 3rd DCA 1989); Niece v. Richer, 428 N.E. 2d 386 (Ind. Cir. Ct. 1981); Black v. NuAire, Inc., 426 NW 2d 203 (Minn. Cir. App. 1988); Sylvia v. Botsch, 437 A.2d 313, 121 N.H. 1041 (N.H. 1981); City National Bank & Trust Co. v. Owens, 565 2d 4 (Okla. 1977); Couy v. Nardei Enterprises, 587 A.345 (Pa. Sup. Ct. 1981); Hannewald v. Fairfield Communities, Inc., 651 SW 2d 222 (Tenn.Ct.App.1983).

## 2.  Application of Common Benefit Doctrine to Debt Cancellation

In support of the Motion for Final Approval of Class Settlement, the Class Representative filed the Declaration of Phillip W. Duff ("Mr. Duff")[DE 62].  Mr. Duff is an expert in the consumer debt collection industry, including the valuation of consumer debt portfolios [Duff Declaration - Exhibit "A"].  Mr. Duff opined that the potential recovery of the Waived Deficiencies from the members of the Class by Navy Federal or its assignee would be $4.5 million

[Duff Declaration - ¶5]. Thus, using the "substantial benefits" doctrine, a fee greatly in excess of that set forth in the Attorney Fee Provision of the Settlement Agreement could be justified. See, Cohen v. Whitman Medical Corporation, 197 F.R.D. 136 (E.D. Pa. 2000).

In Cohen, the United States District Court for the Eastern District of Pennsylvania considered a fee application by class counsel which requested one third of a $7.3 million common fund — which included $1.3 million in student loan forgiveness.  In approving the fee application by class counsel, the Court stated:

> There are two methods of calculating attorney's fees, the percentage of recovery method and the lodestar method. . . The Third Circuit has explained that "[the] percentage of recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes if for failure. . . whereas, the lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation cases where the expected relief has a small enough monetary value that a percentage of the recovery method would provide inaccurate compensation. The lodestar method is also applied in cases where the nature of the recovery does not allow the determination of the settlement value necessary for the application of the percentage of recovery method.  Id.  The Third Circuit has stated that "it is sensible for a court to use a second method of fee approval as a cross check." Id. Because this case is a common fund case, I find that the percentage of recovery method provides a more appropriate basis for evaluating class counsel's fee petition.

Id. at 147.

In applying the percentage of recovery method, the Court began by making a reasonable estimate of the settlement value.  As the settlement fund involved both cash and forgiveness of debt, the Court recognized that debt forgiveness "does not have the same value as cash in hand." However, as in the instant case, the settlement involved the clearance of the credit reports of the Class Members.  Accordingly, the Court found it reasonable to include debt forgiveness in the

total settlement value. Id.

Other courts have followed the same "common benefit" analysis in fixing attorney's fees in class actions which involve the cancellation of debt. In Re Sutter Health Uninsured Pricing Cases, 171 Cal.Rptr.4th 495, 89 Cal.Rptr.3d 615 (Cal.App.3d Dist.2009). In In Sutter Health, a class action was filed alleging that insured patients were provided discounts by the health care provider. On appeal, the appellate court determined that the trial court acted within its discretion in finding that attorney's fees of $4 million to patients' attorneys was not excessive, notwithstanding the fact that the relief to patients was at the most that the hospital writing off $276 million of debt off its books. Id. at 630.

The application of the "common benefit" or "substantial benefits" doctrine supports the application for fees by Class Counsel in the instant case. Indeed, Class Counsel would be entitled to a potentially greater fee award but for the agreement to limit the fee application to $385,000 under the Settlement Agreement.

## B.  THE GUIDELINES OF MARYLAND RULE OF PROFESSIONAL CONDUCT 1.5 SUPPORT THE FEE APPLICATION OF CLASS COUNSEL AS A CROSS-CHECK AGAINST THE COMMON BENEFIT RECOVERY

### 1.  Review of Cross-Checking Procedure

Several courts recommend cross-checking the percentage award by the lodestar award method.  See, Gunter v. Ridgewood Energy Corporation, 223 F.3d 190 (3rd Cir. 2000); Cohen, 197 F.R.D. at 147.  To be sure, the goal of the Court is to "safeguard the plaintiff's and class members' interests." Id. at 201.

All attorney fee applications should be judged against the factors set forth in the Maryland Rule of Professional Conduct 1.5, which provides general guidelines to determine the

reasonableness of attorney's fees, including:

1.   The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2.   The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

3.   The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

4.   The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

5.   The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

6.   The nature and length of the professional relationship with the client;

7.   The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

8.   Whether the fee is fixed or contingent, and, if fixed as to the amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

Maryland Rule of Professional Conduct 1.5(a)

Considering each of these factors, it is clear the request by Class Counsel for attorney's fees under the Attorney Fee Provision of the Settlement Agreement is both reasonable and appropriate.

## 2.   Amount Involved and Results Obtained

Class Counsel addresses the fourth factor cited in Maryland Rule of Professional Conduct 1.5(a) first as both state and federal courts have routinely stated the "degree of success obtained" is the critical factor in determining the reasonableness of a fee award.  Villano v. City of Boynton

Beach, 254 F.3d 1302 (11th Cir. 2001); Finch v. City of Vernon, 877 F.2d 1497 (11th Cir. 1989).

Pursuant to the Class Settlement Agreement, Navy Federal agreed to waive deficiencies in excess of $50 million in principal and interest, to pay a $50,000 recovery to a charitable organization, and to direct the credit reporting agencies to delete adverse credit information concerning the respective account of the Class Members.  As such, relief to the class is, in a word, outstanding.  This position is especially compelling as Navy Federal or its assignees could have sought judgments for deficiencies against the Class Representative and many of the Class Members. Indeed, subsequent to preliminary approval, Class Counsel assisted several Class Members in terminating collection activities by Navy Federal or its assignee, including one Class Member who had been sued by Navy Federal in the State of Georgia [Murphy Final Approval Declaration - ¶15].

The size of the recovery is relevant in determining the lodestar fee according to the United States Fifth Circuit in Migs v. Pearl Vision, 135 F.3d 1041 (5th Cir.1998):

> "However, the Supreme Court has held that such a declaration does not alter the rule that the plaintiff's monetary success in a private civil rights suit must be the primary determinate of the attorney's fees. Where recovery of private damages is the purpose of … civil rights litigation, the district court in fixing fees is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Farar, 506 U.S. at 114, 113 S.Ct. at 575 (quoting City of Riverside v. Rivera, 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed. 2d 466 (1986).

The "recovery" of the Class when measured in dollars totals over $4.5 million [Duff Declaration - ¶5].

However, the clearance of the credit reports of the Class with respect to deficiencies has value far in excess of the aforementioned figure. Towards that end, Class Counsel has provided the testimony of a nationally recognized expert on credit scoring who opined that the clearance of

adverse information concerning the consumer reports of the Class Members has significant economic value to the Class Members [Hendricks Declaration - ¶15].   In order to drive home the importance of the credit report clearance, Class Counsel obtained declarations from various Class Members throughout the country which averred to the benefits of the restoration of credit to the employment and financing opportunities of the Class Members (hereinafter referred to collectively as "Class Member Declarations") [DE 63]. When the financial impact of improved credit ratings for the Class Members is considered as demonstrated by the Class Member Declarations, the economic value of the settlement is many times greater than the Waived Deficiencies.

### 3.   Time and Labor Required.

#### a.  Overview of Work Performed

The Fifth Circuit has stated that "[a]lthough the hours claimed or spent on a case should not be the sole basis for determining a fee, they are necessary ingredients to be considered." Johnson, 488 F.2d at 717. Because auto finance related matters are highly technical, the amount of time and labor required to be adequately prepared in a case of this type is generally increased. Adequate preparation mandates a thorough understanding of the operation of the U.C.C. as well as the way in which vehicles are sold and financed and how deficiencies are collected.

There is a complete absence of case law under the Virginia U.C.C. with respect to the ability of consumers to bring claims for statutory damages on a class basis.  Virginia law applies a so-called "rebuttable presumption" — that is, a secured creditor could recover a deficiency if it can establish that the sales proceeds are within the range of what would be recovered notwithstanding the non-compliance with the U.C.C. Thus, time was spent on analyzing the ability of Navy Federal to defeat a class action based on its apparent ability to enforce deficiencies against members of the

Class.

As part of the declarations filed in support hereof, Class Counsel has provided an account of time spent in the representation of the Class [DE 60-61]. Time records were made contemporaneously with work performed and were stored in a legal services data storage computer program. As the testimony of Class Counsel, if necessary, will demonstrate, in making their respective entries, Class Counsel exercised billing judgment and adjusted the time recorded for factors such as interruptions and any perceived duplication.

*b.   Summary of Time Expended*

The following is a summary of the time expended by the respective attorneys for the Class in this action:

*As to Law Offices of Robert W. Murphy:*

Robert W. Murphy :            256 hours

*As to Law Offices of Bernard T. Kennedy:*

Bernard T. Kennedy:            126 hours

It is anticipated that respective counsel will incur an additional 60 hours for Attorney Murphy and 8 hours for Attorney Kennedy to bring the matter to conclusion, including Class Member inquiries and requests for assistance subsequent to final approval. As detailed in the Murphy Final Approval Declaration, based on similar prior class litigation under the U.C.C., substantial time will be spent by Class Counsel in ensuring that the credit histories of the Class Members are properly amended in accordance with the Settlement Agreement [Murphy Final Approval Declaration - ¶33].

*c.   Determination of Reasonable Hourly Rates*

Class Counsel submits the reasonable hourly rate for the services of the respective attorneys are $450 for Attorney Murphy and $400 for Attorney Kennedy. The following is a synopsis of the basis of the hourly rates for the respective attorneys in this action:

*As to the Law Office of Robert W. Murphy*

Robert W. Murphy -   Attorney Murphy has been a member of the Florida Bar for over 23 years. Attorney Murphy has substantial experience in litigating individual class actions under Florida and federal consumer protection statutes, including Article IX of the U.C.C. The customary hourly rate of Attorney Murphy is $450.

*As to Law Offices of Bernard T. Kennedy:*

Bernard T. Kennedy -   Attorney Kennedy has been an attorney for 25 years. He is a respected consumer attorney who has been involved in a variety of litigation under state and federal consumer protection statutes.  The customary hourly rate of Attorney Kennedy is $400.

**4.    Novelty and Difficulty of Questions Involved.**

While this litigation is certainly not a case of first impression, the novelty of Article IX class claims under the U.C.C. is readily apparent by a review of American jurisprudence. The paucity of reported decisions demonstrates an area of law that is at best undeveloped.  Indeed, the few opinions that have been published include actions brought by Class Counsel. See, e.g., Westlake Financial Services v. Ray, 923 So.2d 555 (Fla. 4th DCA 2006); Muro v. Hermanos Auto Wholesalers, Inc., 514 F.Supp.2d 1343 (S.D. Fla.2007) ; Jackson v. Southern Auto Finance Co., 988 So2d 721 (Fla. 4th DCA 2008)[UCC Article IX class action]; Garcia v. United Auto Credit Corp., 2008 WL 141579, 64 UCC Rep.Ser.2d 833 (S.D.Fla. 2008) [UCC Article IX class action]; Robinson v. Manny Auto Sales, Inc., 2010 WL 2024520 (S.D.Fla 2010). Class Counsel is aware

of only a handful of lawyers in this District who actively litigate repossession cases — either

individually or on a class basis— as a routine part of their practice.

### 5.    Skill Required to Perform the Legal Service Properly.

In considering this factor, the "trial judge should closely observe the attorney's work

product, his preparation, general ability before the Court." Johnson, *supra*, 488 F.2d at 718. Class

counsel strived to present a high level of work product, preparation and ability.  It is submitted that

the matters of record as well as the overall settlement demonstrate this fact clearly.

Class Counsel trusts that the Court will be able to make its own determination of the above

factors based on its own observations. Class Counsel would refer the Court to the dicta of

Johnson:

> The trial judge should closely observe the attorney's work product, his
> preparation and general ability before the court. The trial judge's
> experience is gained from past experience as a lawyer and his observation
> from the bench of  lawyers at work become highly important in this
> consideration.

Id. at 718.

### 6.    Preclusion of Other Employment by Attorney Due to Acceptance of Case.

"This guideline involves dual consideration of otherwise available business which is

foreclosed because of the conflicts of interest which govern representation, and the fact that once

the employment is undertaken, the attorney is not free to use the time spent on the client's behalf

for other purposes." Johnson, *supra*, 488 F.2d at 718. At first glance, it would appear to be

unlikely that any conflict would arise from counsel's representation of the Class in this matter

which would preclude further opportunities for counsel. However, both attorneys for the Class are

members of the National Association of Consumer Advocates ("NACA").  NACA is a nearly two

thousand member organization of lawyers who focus on the representation of consumers in litigation against law breaking businesses.  As a condition of membership in NACA, attorneys agree to refrain from the representation of businesses which are adverse to consumers, such as automobile dealerships and finance companies. Class Counsel are routinely solicited by businesses — including many of the companies which they have sued — for legal representation in both litigation and compliance matters. Class Counsel have refused all such employment, irrespective of the terms of the engagement.

### 7.  Customary Fees

The fee requested by Class Counsel is far below the range of awards previously allowed in class actions by courts in Maryland and other jurisdictions, and is especially appropriate given the results achieved by Counsel. In previous consumer class actions in this District, the Court has awarded as much as one-third (1/3) of the common fund to class counsel as attorney's fees. See, e.g., *Keneippe v. Fountainhead Title Group*, in the United States District Court, District of Maryland, Case No. :03-CV-02813; *Gray v. Fountainhead Title Group*; in the United States District Court, District of Maryland, Case No.: WMN03-CV-01675. Similarly, Maryland state courts have routinely awarded similar fees in consumer class actions. See, e.g., *Greer v. Crown Title Corp.*, Case No. 24-C-02001227 (Cir.Ct.Balt.City 2005).

Class Counsel is unaware of any class actions in Maryland state or federal courts involving claims under Article IX, U.C.C.  The closest analogous consumer class action claims have been filed under Maryland Consumer Law Code Annotated §12-1001, *et sequi,* known more commonly as the "Credit Grantor Closed-End Credit Provisions" ("CLEC"). Unlike the Virginia UCC, in the event of non-compliance with statutorily required notices regarding repossession, a Maryland

credit grantor may not lawfully assess or collect any deficiency from consumer borrowers

following disposition of the repossessed property. CLEC §12-1021(k)(4). Accordingly, from the

onset of CLEC class litigation, the creditor is confronted with both loss of its loans **and** potential

statutory damages. This distinction is significant as the several consumer class actions before this

Court under CLEC produced sizeable common funds from which attorney's fees were derived.

The following is a synopsis of the attorney's fees awarded in the prior CLEC class litigation

in this Court:

*Shelton v. Crescent Bank & Trust, Case No.:08-CV-1799-RDB*
Class size - 308 class members
Description of Primary Claims - violation of CLEC and Maryland Consumer Protection Act
Details of Settlement Administration - Settlement required members to opt-in for monetary relief
Settlement Proceeds - Class Fund established in the amount of $206,546.76
Attorney's Fees and Incentive Award - 1/3 of Class Fund together with $2,500 incentive award

*Watts v. Capital One Auto Finance, Case No.07-CV-03477*
Class Size - 2,169 class members
Description of Primary Claims - violation of CLEC and Maryland Consumer Protection Act
Details of Settlement - Waiver of deficiency totaling $28 million together with establishment of $990,00 class settlement fund
Attorneys' Fees and Incentive Award - 1/3 of settlement class fund together with $5,000 incentive award

*Crowder v. Americredit Financial Services; Case No.:06-CV-707*
Class Size - 2,550 class members
Description of Primary Claims - violation of CLEC
Details of Settlement - Waiver of deficiency totaling $20 million with $2.4 million for Class Settlement Fund
Attorneys' Fees and Incentive Award - 1/3 of settlement class fund together with $5,000 incentive award

As referenced above, the claims under the CLEC are in stark contrast to those presented

under Article IX. Under CLEC, a violation results in a mandatory waiver of deficiencies, while the

Virginia U.C.C. does not have such an automatic remedy.

A further point of distinction is that the defendants in the three consumer class actions above were not credit unions as in the instant proceeding. This distinction is critical in the context of settlement negotiation. Credit unions such as Navy Federal are non-profit member organizations. Thus, from the viewpoint of Navy Federal cash payment to the class —persons who defaulted to the detriment of their fellow credit union members on their loans— was a philosophically unacceptable outcome. The settlement in the instant action was forged after a lengthy period of negotiation on the issue of a monetary payment in addition to attorney's fees. As part of the compromise by Navy Federal to pay some sort of monetary amount, a fixed $50,000 *cy pres* or "fluid recovery" fund was established for use by a charitable organization.

In light of the above, the requested fee award by Class Counsel is well within the range allowed for class actions in this District and in other jurisdictions. See, e.g. Smith v. FMC Corporation, 225 F.Supp.2d.707 (S.D.Va.2002)[awarding fees and costs equaling 48.7% of class settlement fund];Gaskill v. Gordon, 942 F.Supp. 382 (M.D. Ill. 1996)[awarding 38% of class fund]; Goodrich v. E.F. Hutton Group, Inc., 681 A.2d 1039 (Del.1996)[33% of class fund].

### 8.   Experience, Reputation and Ability of Attorney

As pronounced by the Fifth Circuit, "most fee scales reflecting experience differential with the more experienced attorneys receiving larger compensation." Johnson, 488 F.2d 718, 719. Class counsel have substantial experience litigating complex consumer matters. As more detailed in the Affidavits filed in support hereof, the experience and reputation of the respective attorneys is as follows:

*As to Law Office of Robert W. Murphy:*

Attorney Murphy has been an attendee of all National Consumer Law Center Rights

-17-

Litigation Conferences since 1999 and has been an active member on bar committees relevant to the issues in the instant case, including the UCC Committee. Attorney Murphy is a past Chairperson of the Consumer Protection Committee of the Florida Bar and has participated as a speaker at seminars sponsored by the Florida Bar, the Academy of Florida Trial Lawyers, the National Association of Consumer Advocates, the National Consumer Law Center, as well as other organizations.  He is a current board member of NACA.  Attorney Murphy has litigated well over 150 cases involving either Article IX or consumer finance issues, including many class actions. Attorney Murphy was lead counsel in Brown v. SCI of Florida, in the United States District Court, Case No. 01-4370, a landmark class action under TILA and the Florida Retail Installment Sales Act ("FRISA").  The certification decision in Brown is reported at Brown v. SCI Funeral Services of Florida, 212 F.R.D. 602 (S.D. Fla. 2003).  The Brown litigation resulted in a settlement in July, 2003, which provided over three million dollars in benefits to a contested class of over nine thousand consumers. The case is believed to be one of the first certified classes under FRISA and was described by the South Florida Business Review as one of the major consumer class actions in Florida in 2003.

The Class Representative has retained counsel with substantial experience in handling class actions in federal and state court.  See, e.g., Martinez v. FMS Inc., 2008 WL 4010101 (M.D. Fla. 2008); Brown v. SCI Funeral Services of Florida, Inc., 212 F.R.D. 602 (S.D.Fla.2003); Baez v. Wagner & Hunt, P.A., 442 F.Supp. 2d 1273 (S.D. Fla. 2006); Jansen v. West Palm Nissan, Inc., 2006 WL 1582068 (S.D. Fla. 2006); Tyrell v. Robert Kaye & Associates, P.A., 223 F.R.D. 686 (S.D. Fla. 2004). Further, Attorney Murphy has substantial experience in litigating individual and class actions under the Uniform Commercial Code.  See, e.g., Muro v. Hermano's Auto

-18-

<u>Wholesalers, Inc.</u>, 514 F.Supp. 2d 1343 (S.D. Fla. 2007); <u>Westlake Financial Services v. Ray</u>, 923 So.2d 555 (Fla. 4th DCA 2006).; <u>Martinez</u>, 2008 WL *4010102.

*As to Law Offices of Bernard T. Kennedy*:

Attorney Kennedy has been practicing for 25 years with the past 18 years focusing on consumer litigation, and was appointed as Special Master for Truth-in-Lending, Consumer Leasing Act, and The Motor Vehicle and Cost Savings Act (Odometer Law) matters in the District of Connecticut. He has been counsel in literally hundreds of consumer cases before this Court.

**9.  Nature and Length of Professional Relationship With Client**

While it is true that a "lawyer in private practice may vary his fee for civil work in light of the professional relationship with the client with his office," this is not the case here. <u>Johnson</u>, 488 F.2d at 719. The instant action is the first matter in which the Class Representative has engaged Class Counsel. Class Counsel represented the Class Representative on a contingency fee basis in a manner which is the same as the majority of the other clients of Class Counsel.

**10.  Whether the Fee is Fixed or Contingent**

As reflected above, Class Counsel was engaged under a contingency fee agreement. No fees or costs have been paid to Class Counsel.

The Law Office of Robert W. Murphy advanced $4,646.83 in costs and litigation expense including filing fees, service of process fees, travel expense, transcripts, applicable filing fees, photocopying, postage, parking and electronic research costs.

The Law Office of Bernard T. Kennedy advanced $560 in costs, for filing and service of process fees, travel, photocopying, postage, and other expenses.

**C.  *THE ABSENCE OF OBJECTION TO THE ATTORNEY'S FEES REQUEST SUPPORTS APPROVAL***

In the instant action, the Court preliminarily approved the Settlement Agreement, which contained as an exhibit a specimen copy of the proposed notice to class ("Whitaker Class Notice")[DE 44-1]. The Whitaker Class Notice provided plenary information for class members to make informed choices. With respect to attorney's fees for Class Counsel, ¶20 of the Whitaker Class Notice provided:

> **20.   How will counsel for Settlement Class Members be paid?**
> **....**After Plaintiff and Navy Federal agreed on all other material terms of the Stipulation, Class Counsel and Navy Federal negotiated the formula for calculating attorneys' fees and expenses and the amount of the class representative incentive award that Navy Federal will, subject to Court approval, pay to Class Counsel and the Class Representative respectively. With respect to attorneys' fees and expenses, Class Counsel and the Class Representative will seek as fees, costs, and expenses $385,000 in the aggregate, and agree not to seek or accept any amount or combination of fees, costs, and expenses which in the aggregate amount exceeds that amount as full combined payment for all past and future services and expenses of Class Counsel, and any referring counsel or associated counsel. The Class Representative will seek an incentive award of $5,000.

> (Whitaker Class Notice - ¶20)

As noted, there have been no objections to the settlement or to the attorney's fees request. This fact supports the approval of the attorney's fees request of Class Counsel. <u>See</u>, <u>Barel v. Bank of America</u>, 255 F.R.D. 393, 404 (E.D.Pa. 2009)[lack of objections by class members supports approval of the request for attorney's fees]; <u>Serrano v. Sterling Testing Systems, Inc.</u>, 2010 WL1924477 (E.D.Pa.2010).

### *D.   THE ATTORNEYS' FEES SOUGHT BY CLASS COUNSEL ARE THE PRODUCT OF AN ARMS' LENGTH NEGOTIATED SETTLEMENT, ARE TO BE  PAID DIRECTLY BY NAVY FEDERAL WITHOUT AFFECTING CLASS RELIEF, AND ARE REASONABLE.*

#### **1.   The Attorneys' Fees Requested Are Based on the Parties' Settlement**

*a. Rule 23(h), Fed. R.Civ.P. Authorizes Agreements With Respect to Attorneys' Fees*

The attorneys' fees provision of the Settlement Agreement was negotiated after the material terms of the relief to be provided to the Class [Murphy Final Approval Declaration - ¶¶ 10; 38].The agreement on fees was the product of a contentious and hard-fought negotiation between the parties. The obligation of Navy Federal to pay attorneys' fees is not based on any fee-shifting provision nor is the amount reducing the relief to be provided to the Class Members under the Settlement Agreement. Rather, it is based on the agreement of the parties.

Parties to a class action settlement agreement often agree that a defendant will pay a sum certain in attorney's fees to plaintiff's counsel. Such an arrangement poses no obstacles to court approval when the amount of the fee is reasonable under the circumstances. Indeed, Rule 23(h) embodies this principal:

> In an action certified as a class action, the court may award reasonable attorney's fees and non-taxable costs authorized by law ***or by agreement*** of the parties.

> Fed.R.Civ.P. 23(h)  [emphasis supplied]

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible and such agreements are generally entitled to deference. As the United States Supreme Court explained, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see also, Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 720 (5th Cir.1974) ["In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees"]. Accordingly, courts are permitted to award attorney's fees and expenses where all parties have agreed to the amount, subject to court approval, especially where the amount is in addition to and separate from the defendant's settlement with the class. See, e.g., Local 56 United Food &

-21-

Commercial Workers Union v. Campbell Soup Co., 954 F.Supp. 1000, 1005 (D.N.J. 1997) [granting class counsel the maximum amount of fees agreed to by defendant under the settlement agreement, where "class members ... retain all the settlement provides [and] do not lose any of the negotiated benefits on account of an attorney's fee and cost award that equals the "cap" for such award set forth in the settlement"]. Indeed, the Supreme Court has suggested that such agreements be encouraged as a matter of public policy. See, Hensley, 461 U.S. at 437.

### b. Bargained-For Terms for Reasonable Attorneys' Fees Should Be Adhered To

The benefit of the fee negotiated by the parties at arms' length is that is sets a market price for  work performed resulting from opposing interests based on real market conditions; defendants have an interest in minimizing the fee whereas plaintiffs have an interest in maximizing it. Negotiations that result in an agreement are informed by, among other things, the parties' knowledge of the work done and result achieved. In In Re Continental Illinois Security Litig., 962 F.2d 566 (7th Cir.1992), the Seventh Circuit endorsed such a market-type based approach to valuing fee requests. According to Judge Posner, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. Moreover, "[i]t is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by the court order." Id.  "The object of awarding reasonable attorney's fees ... is to give the lawyer what he would have gotten in the way of a fee in arms' length negotiation, had one been feasible." Id. at 572.

### c. The Requested Attorneys' Fees Will Not Cause a Reduction of Class Benefits

Additionally, as explained in McBean v. City of New York, 233 F.R.D. 377 (S.D.N.Y. 2006), a court need not review the application for attorney's fees at a heightened level of scrutiny

where, as here, the parties have contracted for an award of fees that would not be deducted from

the common fund. "If money paid to the attorneys comes from a common fund, it is therefore

money taken from the class," the McBean court reasoned, "then the court must carefully review

the award in order to protect the interest of the absent class members." Id. at 392 (citing Walmart

Stores, Inc. v. Visa USA, Inc., 392 F.3d 96, 123-24 (2nd Cir.2005) and Goldberger v. Integrated

Resources, Inc., 209 F.3d 43 (2nd Cir. 2000). The McBean court further stated that "[i]f, however,

money paid to attorneys is entirely independent of money awarded to the class, the court's

fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest

between the attorneys and the class members."  Id. The McBean court concluded the parties

agreement as to attorneys fees was objectively reasonable because it was the product of arms'

length negotiations. Id.

Like the case here, a true arms' length negotiation between competing interests indicate the

settlement was fair and reasonable. In In Re First Capital Holding Corporation Financial Products

Securities Litig., MDL No.901, 1992 WL226321, at 4 (C.D.Cal., June 10, 1992), *appeal

dismissed*, 33 F.3d 29 (9th Cir.1994), the district court approved a negotiated fee of $8 million.

That district court found:

> The fee was negotiated at arms' length with sophisticated defendants by the
> attorneys who were intimately familiar with the case, the risks, the amount and
> value of their time, and the nature of the result obtained for the class. Where there
> is such an arms' length negotiation and there is no evidence of self-dealing or
> disabling conflict of interest, the Court is reluctant to interpose its judgment as to
> the amount of attorney's fees in the place of the amount negotiated by the
> adversarial parties in litigation.
>
> Id.

The rationale espoused by the Seventh Circuit and other courts applies equally here. Navy

Federal sought to minimize the fees that it would agree to pay in addition to the benefits that Navy

Federal would provide to the Class. Therefore, Navy Federal had a keen interest in negotiating the smallest amount that Navy Federal would have to pay. Class Counsel, on the other hand, have negotiated the best settlement that Class Counsel could obtain for the Class, and wish to receive full compensation, as the law encourages undertaking this litigation based on results obtained and devoting the resources and skill necessary to bring the case to a successful conclusion.

### d.   Reduction of the Fee Application Will Not Increase Class Benefits

Finally, even if the Court were to approve less than the agreed-upon amount of attorneys' fees, such a ruling would not confer a greater benefit upon the Class but would, rather, only benefit Navy Federal. Thus, this Court should give the agreed-upon fee deference and approve the amount Navy Federal has agreed to pay under the Settlement Agreement.

## E.   THE CLASS REPRESENTATIVE INCENTIVE AWARD SHOULD BE APPROVED

Pursuant to the Settlement Agreement, Navy Federal has agreed to pay the sum of Five Thousand Dollars ($5,000) to Ms. Whitaker for her services as the Class Representative.

"Other courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation." Camp v. Progressive Corp., 2004 WL2149079 at*8 (E.D.La.2004); see, also Carrabba v. Randall Food Markets, Inc., 191 F.2d 815, 835 (M.D.Tex.2002). Moreover, under circumstances where a private class action suit serves the need to enforce laws "designed for the protection of the public," "[c]ourts have found it appropriate to especially reward named class plaintiffs for the benefits they have conferred."  M.W. Princess Cruise Lines, 513 F.Supp.2d 1334, 1344 (S.D.Fla.2007).

Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically rewarded in similar litigation. See, e.g., Camp, 2004 WL2149079 at*7

[awarding fees of up to $10,000 to each named plaintiff]; <u>In Re Lease Oil Antitrust Litig.II</u>, 186 F.R.D.403, 449 (S.D.Tex.1999)[$10,00 incentive award]; <u>In Re Granada Partnership Securities Litig.</u>, 805 F.Supp 1236, 1247 (E.D.Tex.1992)[service award of $5,000]. This Court has previously awarded an identical amount to the named plaintiff in class actions brought under CLEC as detailed above.

Ms. Whitaker has previously submitted her Declaration in Support of Motion for Preliminary Approval which details her involvement in the instant litigation. Her willingness to devoting her time and energy to prosecuting the representative action lead to substantial benefits for the Class she represents, and in consideration of the overall benefit, the Class Representative Incentive Award should be approved.

## V.   CONCLUSION

Based on the foregoing, Class Counsel respectfully requests this Court:

A.      Approve the payment by Navy Federal of $385,000 in attorneys' fees and costs to Class Counsel;

B.      Approve the payment by Navy Federal of an incentive award to the Class Representative in the amount of $5,000;

C.      And for such other and further relief as justice may require.

/s/ Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223 (*pro hac vice*)
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
rphyu@aol.com

THE KENNEDY LAW FIRM
Counsel for Plaintiff
Maryland Consumer Law Group
PO Box 657
Edgewater, Maryland 21037
Telephone: (443) 607-8901
Fax: (443) 607-8903
bernardtkennedy@yahoo.com

By:   /s/ Bernard T. Kennedy
        BERNARD T. KENNEDY
        Bar No. 26843

COUNSEL FOR PLAINTIFF


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 13, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Neil Gilman, Esquire, Hunton & Williams LLP, 1900 K Street, N.W., Washington, D.C. 20006 and to Bernard T. Kennedy, Esquire, The Kennedy Law Firm, Maryland Consumer Law Group, PO Box 657, Edgewater, MD 21037, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/  Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
rphyu@aol.com