IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


DONNA L. WHITAKER, *et al.*                    *

      Plaintiffs,                              *

      v.                                      *          Civ. No. RDB 09-cv-2288

NAVY FEDERAL CREDIT UNION,          *

      Defendant.                              *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Donna L. Whitaker ("Whitaker") filed the present action on behalf of herself and

all others similarly situated against Navy Federal Credit Union ("Navy Federal") for violation of

Article 9, Part 6 of the Uniform Commercial Code ("U.C.C.") with respect to the repossession of

automobiles.  The parties have reached a settlement agreement.  Now pending is the parties' joint

motion for approval of the class settlement and Whitaker's unopposed motion for attorneys' fees

and costs.  A fairness hearing was held on August 23, 2010, at the conclusion of which this Court

approved of the parties' proposed settlement.  For the following reasons, the parties' Joint

Motion for Final Approval of Class Settlement Agreement (Paper No. 59) will be GRANTED,

and Whitaker's Motion for Attorneys' Fees and Costs (Paper No. 67) will be GRANTED, but the

monetary amount will be reduced.  In the accompanying Order, this Court will award attorneys'

fees and costs in the amount of $146,846.83 to Robert W. Murphy and $54,160 to Bernard T.

Kennedy, for a total award of $201,006.83.

BACKGROUND

On or about October 24, 2007, Plaintiff Donna L. Whitaker entered into a finance

agreement with Navy Federal to finance the purchase of a used car.  On or about March 18,

2008, Navy Federal repossessed the car and sent her a Notice of Sale advising her of its intent to dispose of the car in compliance with Article 9 of the U.C.C.  Whitaker contends that the notice failed to include certain information required under the U.C.C.  Accordingly, she filed this action on behalf of herself and all others similarly situated seeking statutory damages and other relief against Navy Federal under the civil remedies provision of the U.C.C. §9-625.  Navy Federal denies liability and has raised defenses.  This Court has not made a decision concerning the merits of these claims.

On March 18, 2010, after several months of settlement negotiations, the parties jointly moved for preliminary approval of a settlement agreement and their proposed notice form. (Paper No. 48.)  For settlement purposes, the Parties proposed conditional certification of the following Class under Fed. R. Civ. P. 23(a) and (b)(3):

All individuals in the United States, including without limitation individuals who serve abroad in the Armed Forces of the United States, who during the four year period preceding the filing of this Action on July 7, 2009:

> (a) have or had a finance agreement held by Navy Federal;
> (b) had the motor vehicle pledged by that finance agreement repossessed; and
> (c) were sent a post-repossession notice under U.C.C. Article 9 with respect to a motor vehicle pledged by the finance agreement.

Individuals are excluded from the Settlement Class if they:

> (i)   obtained a discharge in bankruptcy;
> (ii)  filed a bankruptcy petition;
> (iii) entered into a post-repossession repayment agreement;
> (iv) had a final judgment entered in a collection action; or
> (v)  have been involved in a dispute in which they are represented by counsel.

A Settlement Class consisting of approximately 6,266 class members was preliminarily certified on April 1, 2010.  (Paper Nos. 51, 56.)

Under the proposed settlement, Whitaker and this class release their claims against Navy Federal for damages under the U.C.C.  In return, Navy Federal releases its counterclaims for the deficiency balances remaining on the class members' accounts.  Additionally, Navy Federal will contact the credit-reporting agencies and request that they rehabilitate the class members' credit report by deleting the information related to the loans at issue in this case.  The settlement agreement does not provide for the payment of any money to class members.  Finally, Navy Federal will pay $50,000 to the Army Emergency Relief, an organization that provides financial assistance to members of the armed forces.

Under the proposed settlement, Navy Federal has agreed not to oppose Class Counsel's request for attorneys' fees in the amount of $385,000, or its request for an incentive award to Whitaker, as class representative, of $5,000.  The cost of settlement administration, including but not limited to the cost of printing and mailing the notices to Class Members, shall be paid by Navy Federal.

On April 1, 2010, this Court held a hearing on and granted preliminary approval of the proposed settlement and notice to class members.  (Paper No. 51.)  On August 23, 2010, this Court held a Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e).

ANALYSIS

I.      **Motion for Final Approval of Settlement Agreement**

The parties jointly move for final approval of the settlement agreement, the Settlement Class and class notice.

      A.      **Fairness and Adequacy of the Settlement Agreement**

The United States Court of Appeals for the Fourth Circuit has held that a class action settlement should be approved if it is both "fair" and "adequate." *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-59 (4th Cir. 1991).

### 1.      Standard of Review

The "fairness" evaluation centers on the settlement process.  A settlement is fair if it "was reached as a result of good faith bargaining at arm's length, without collusion." *Id*. at 159.  In making this determination, a court should consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of … class action litigation." *Id.*

The "adequacy" evaluation is about substance of the settlement.  *Id*.  In assessing the adequacy of a settlement, a court should consider: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*.

### 2.      The Settlement is Fair and Adequate

The extensive record in this case shows that the proposed settlement is fair.  First, it was reached through non-collusive, arm's-length negotiations.  Second, though the parties began negotiating before lengthy formal discovery, they had already been through two rounds of motion-to-dismiss briefing and had conducted the related internal investigations that precede formal discovery.  Third, the parties' negotiations were adversarial, as they took place while the parties were actively litigating the case.  Fourth, both Whitaker's and Navy Federal's counsel

have significant experience in consumer class action litigation.  Attorneys Robert W. Murphy

and Bernard T. Kennedy have twenty-three and twenty-five years of litigation experience,

respectively, and both have substantial experience litigating actions brought under consumer

protection statutes.  Whitaker's lead attorney, Mark B. Bierbower, has over thirty years of

litigation experience.

The record also shows that the proposed settlement is adequate.  Though the class's

claims may be strong on the merits, Navy Federal's counterclaims and setoff defenses also seem

plausible.  The parties agree that if Whitaker were to prove her claims against Navy Federal, she

would still owe Navy Federal more money than she would collect in statutory damages, as would

the rest of the class members.  Furthermore, absent settlement, multiple stages of litigation

remain that would be time-consuming and costly in a case where the parties' claims and

counterclaims would likely offset each other.  Finally, there is virtually no opposition to the

settlement.  No class members have objected and only two chose to opt out.  Thus, the proposed

settlement terms are fair and adequate.

**B.      Class Settlement Certification**

To obtain class certification, the plaintiffs must meet all four requirements of Federal

Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b).  *Gunnells v.*

*Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).  The parties seek certification of the

proposed classes under Rule 23(b)(3), which requires that common questions of law or fact

predominate.

**1.      Rule 23(a)**

Rule 23(a) includes four requirements: numerosity, commonality, typicality and

adequacy of representation.  As to numerosity, the parties have put forth sufficient evidence that

the proposed classes will amount to over six thousand people and that joinder of all members is

thus impracticable.  (Paper No. 56.)  This Court considers the commonality and typicality

requirements together because they "[b]oth serve as guideposts for determining whether … the

named plaintiff's claim and the class claims are so interrelated that the interests of the class

members will be fairly and adequately protected…." *Stott v. Haworth*, 916 F.2d 134, 143 (4th

Cir. 1990) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13, (1982)).

The parties satisfy commonality and typicality because in each proposed class there are common

issues that are central to each of the named plaintiff's and proposed class member's claims: the

adequacy of post-repossession notice and Navy Federal's entitlement to unpaid balances on auto

loans.  Finally, the attorneys representing the class are qualified, experienced and able to conduct

the litigation, and the class representative's interests are aligned with those of the absent class

members.

        **2.**        **Rule 23(b)(3)**

In addition to meeting all four of Rule 23(a)'s requirements, a class-action plaintiff must

also satisfy the requirements of one of rule 23(b)'s categories.  *Amchem Prods.,* 521 U.S. at 614.

Here, Whitaker proceeds under Rule 23(b)(3), which is appropriate because her complaint

predominantly seeks money damages.  Rule 23(b)(3) requires the court to find (1) that "questions

of law or fact common to the members of the class predominate over any questions affecting

only individual members", and (2) that "a class action is superior to other available methods for

the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Since this

certification arises in the context of settlement, the parties agree that for the purposes of

settlement the common issues predominate and the settlement is manageable.

Accordingly, this Court certifies the Settlement Class under Rule 23(b)(3).

### 3.      Class Notice Satisfies Due Process

All potential Settlement Class members were mailed a notice of the lawsuit, the pending

settlement, and the final fairness hearing.  (Paper No. 56.)  This notice advised the Settlement

Class members of the specific relief provided through settlement and how to object.  There have

been no objections and only two potential class members have opted out.  Thus, this Court finds

that the form and method of notice given to class members satisfies all legal requirements of

Rule 23, as well as the constitutional due process requirements.

Accordingly, the parties' Joint Motion for Final Approval of Class Action Settlement

(Paper No. 59) is granted.

## III.     Motion for Award of Attorneys' Fees, Expenses and Incentive Payments

Having approved the Class Settlement Agreement, this Court must consider Class

Counsel's request for attorneys' fees, reimbursement of expenses and Whitaker's incentive

payment.

### A.      Methods of Fee Calculation

First, this Court must determine the best method of calculating attorneys' fees to

appropriately compensate Class Counsel.  There are two primary methods of calculating

attorneys' fees: the lodestar method and the "percentage of recovery" method. *See Jones v.*

*Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D. W.Va. 2009).  The lodestar method

requires the multiplication of the number of hours worked by a reasonable hourly rate, the

product of which this Court can then adjust by employing a "multiplier." *Id*.  The percentage of

the recovery method involves an award based on a percentage of the class recovery, set by the

weighing of a number of factors by the court. *Id*.

Counsel contends that the percentage of the recovery method is the appropriate way to

calculate the attorneys' fees in this case.  Though the settlement agreement does not provide for

payment of money to the class members, Counsel asserts that the "non-cash value" of the debt

forgiveness provided to the class members is the equivalent of a common fund.  At the fairness

hearing, Class Counsel suggested to this Court that the percentage of recovery method is

necessary to provide an additional incentive to class action lawyers to take cases such as this one,

where they "did not have the assurance of being paid a fixed hourly fee upon remittance of a

periodic bill."  (Paper No. 69 at 3.)  Class Counsel also emphasizes that this Court should

consider the intangible benefit provided to the class as a result of Navy Federal's promise to

contact the credit reporting agencies on their behalves.

Though the debt the class members owe to Navy Federal is being waived under the terms

of the settlement agreement, the members are not actually receiving a monetary payment.  Thus,

there is no actual common fund in this case, and this Court finds that debt forgiveness in this

case cannot be equated to the creation of a common fund.  Even if this Court were to consider

this a common fund case, this Court is not convinced that Class Counsel did not have a sufficient

incentive to take this case, or took a significant risk.  As the United States Court of Appeals for

the Second Circuit explained in a securities class action case: "[T]he principal analytical flaw in

counsel's argument lies in their assumption that there is a substantial contingency risk in every

common fund case." *Goldberger v. Integrated Resources, Inc., et al.,* 209 F.3d 43, 52 (2nd Cir.

2000).  Finally, despite Navy Federal's good faith promise to contact the credit reporting

agencies on behalf of the class members, Navy Federal admits that it does not have the power to

actually delete the adverse information from the consumer reports.  Therefore, this factor does

not influence this Court's analysis with respect to attorneys' fees.

Accordingly, this Court will use the lodestar method to determine the amount of attorneys' fees that will be paid to Counsel.  This Court has explained the calculation of the lodestar award, as follows:

> A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate. In assessing the reasonableness of the hours and rate claimed, the court considers the following twelve factors elucidated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir.1978): "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 764 (D. Md. 2001) (quoting *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) and citing, *inter alia, Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  The twelve-factor test is subsumed in the initial calculation of the lodestar award.  *Hensley*, 461 U.S. at 434 n.9.

**B.     Reasonableness of Attorneys' Fees**

As a general rule, the twelve factors enunciated in *Johnson* should be considered when determining the reasonable amount of attorneys' fees to be awarded.  *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994); *Austin v. AT&T Corp.*, 2004 U.S. Dist. LEXIS 7504, at *3 (D. Md. Apr. 15, 2004).  In every case the ultimate question, however, is whether the fees being requested by the plaintiff are "reasonable."  *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983); *Sheppard v. Riverview Nursing Ctr., Inc.,* 88 F.3d 1332, 1336 (4th Cir. 1996).  After having thoroughly reviewed Class Counsel's time sheets and itemizations on this matter, and having considered the arguments presented by counsel at the August 23, 2010,

hearing, this Court finds that Class Counsel's application for an award of attorneys' fees and reimbursement of expenses totaling $385,000 is not reasonable. Class Counsel reached this figure by using the percentage of the recovery method. This figure is almost twice the figure that would result from the application of the lodestar method.[1] Accordingly, this Court determines that Class Counsel will receive the lodestar figure which is calculated as follows:

As of August 18, 2010, Class Counsel Robert W. Murphy and Bernard T. Kennedy attest that they spent 256 and 126 hours respectively on this case. To conclude the case, Murphy anticipates he will require an additional 60 hours and Kennedy anticipates he will require an additional 8 hours. This Court finds this time expenditure to be reasonable. Class counsel submits that the reasonable hourly rate for their services is $450 for Murphy and $400 for Kennedy. This Court is guided by Appendix B of its own Local Rules, which is entitled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." Under the Rules and Guidelines for Determining Attorneys' Fees, both Murphy and Kennedy fall in the category of attorneys admitted to the bar for fifteen years or more, as to whom a range of $275 to 400 is presumptively reasonable. *See id.*, App. B at 3(b). Though Murphy's hourly wage is above the applicable range, his wealth of experience in litigating class actions under federal consumer protection statutes justifies his high rate. Accordingly, this Court finds that the suggested hourly rates are also reasonable.

Thus, Murphy's 316 total hours of work amount to $142,200 in legal fees and Kennedy's 134 total hours of work amount to $53,600 in legal fees. Additionally, Murphy's legal office advanced $4,646.83 in litigation expenses, and Kennedy's legal office advanced $560 in legal

[1] This Court notes that it performed a similar analysis in *In re Tyson Foods Inc.*, 2010 U.S. Dist. LEXIS 48518, at * 13 (D. Md. May 11, 2010), where the attorneys requested less than the lodestar amount.

costs.  Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorneys' fees -- should be allowed to the prevailing party."

The following chart summarizes the attorneys' fees awards:

| Attorney | Hours | Rate | Fees | Costs |
|---|---|---|---|---|
| Robert W. Murphy | 316 | $450 | $142,200 | $4,646.83 |
| Bernard T. Kennedy | 134 | $400 | $53,600 | $560 |

Accordingly, the total amount of attorneys' fees and costs that must be paid to Robert W. Murphy is $146,846.83 and to Bernard T. Kennedy is $54,160.00.  The total amount of attorneys' fees and costs to be paid is $201,006.83.

## C.     Reasonableness of Incentive Payment

As part of a class action settlement, "named plaintiffs ... are eligible for reasonable incentive payments." *Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003).  "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998).  To determine whether an incentive payment is warranted, a court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook,* 142 F.3d at 1016.  A $5,000 award is commensurate with the effort expended by Whitaker, and a benefit for all class members was obtained.  This incentive payment is appropriate.

**IV.     Conclusion**

For the reasons stated above, the parties' Joint Motion for Final Approval of Class Settlement Agreement (Paper No. 59) is GRANTED, and Whitaker's Motion for Attorneys' Fees and Costs (Paper No. 67) is GRANTED, but the monetary award is reduced to a total figure of $201,006.83.

A separate Order follows.

Dated:  October 4, 2010                                        /s/_____

                                                                        Richard D. Bennett
                                                                        United States District Judge